**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT BOUTO, | ) | 19-cv-2441 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Dow |
| GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT CITY OF CHICAGO'S**
**MOTION TO BIFURCATE AND STAY DISCOVERY**
**OF PLAINTIFF'S _MONELL_ CLAIM (Dkt. 83)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................i

INTRODUCTION AND BACKGROUND ......................................................................1

DISCUSSION ....................................................................................................................3

I.      The City's liability does not depend on individual liability.................................5

II.     Bifurcation will duplicate the proceedings, waste resources, and
        inconvenience witnesses .........................................................................................9

        A.      Bifurcation of discovery would massively waste resources ....................9

        B.      Bifurcation of discovery would generate discovery disputes.................11

        C.      The City greatly exaggerates the cost of *Monell* discovery....................12

        D.      The City's concerns about the "inefficiency" of *Monell*
                discovery are misplaced ...........................................................................15

III.    The balance of prejudice weighs against bifurcation ........................................16

        A.      The City will suffer no prejudice at trial................................................16

        B.      Plaintiff will suffer immediate and pronounced prejudice from bifurcation ...............17

IV.     Bifurcation would violate the Seventh Amendment .........................................17

V.      The City's "Limited Consent to Entry of Judgment" is procedurally improper .....................18

VI.     Meaningful non-economic interests weigh against bifurcation ........................19

CONCLUSION.................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

*A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911 (N.D. Ill. May 18, 2004) ................................ 4, 3

*Ackerman v. Allen*, No. 16 C 6199, 2017 WL 1536447 (N.D. Ill. Apr. 27, 2017) .................................... 7

*Almodovar & Negron v. Guevara*, Nos. 18 C 2341 & 18 C 2701 (N.D. Ill.) ........................................ 12,13

*Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999) ..................................................... 19

*Andersen v. Chicago*, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016) .................................................. 8

*Arrington v. Chicago,* 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018) .................................................. 8

*Awalt v. Marketti*, 2014 WL 1161500 (N.D. Ill. Apr. 9, 2012) ....................................... 4, 10, 15, 17

*Bell v. Chicago*, 2010 WL 432310, (N.D. Ill. Feb. 3, 2010) ........................................... 4, 9, 10, 14

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) ..................................................................... 18

*Bolden v. Chicago*, No. 17 C 417, 2019 WL 3766104 (N.D. Ill. Aug. 9, 2019) ................................... 8

*Bonds v. Chicago*, 2018 WL 1316720 (N.D. Ill. Mar. 14, 2018) ..................................................... 5

*Cadiz v. Kruger*, 2007 WL 4293976 (N.D. Ill. Nov. 29, 2007) ...................................... 10, 11, 14, 15

*Cadle v. Chicago*, 2015 WL 6742070 (N.D. Ill. Nov. 2, 2015) ................................................. 12, 14

*Cage v. Chicago*, 2010 WL 3613981 (N.D. Ill. Sep. 8, 2010) ............................................. 4, 5, 7, 9

*Carter v. Dart*, 09 C 956, 2011 WL 1466599 (N.D. Ill. Apr. l8, 2011) ...................................... 14, 19

*Castano v. American Tobacco*, 84 F.3d 734 (5th Cir. 1996) ......................................................... 18

*City of Los Angeles v. Heller*, 475 U.S. 706 (1986) ................................................................. 5

*Clarett v. Suroviak*, 2011 WL 37838 (N.D. Ill. Jan. 3, 2011) ....................................................... 7

*Clipco, Ltd. v. Ignite Design, LLC*, 2005 WL 2861032 .............................................................. 17

*Coleman v. Peoria*, 2016 WL 5497363 (C.D. Ill. Sep. 27, 2016) ............................................... 11, 12

*Estate of McIntosh v. Chicago*, No. 15 C 1920, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015) ................... 19

*Evans v. Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010) ...................................................... 5

i

*Fields v. Chicago*, 2017 WL 4553411 (N.D. Ill. Oct. 12, 2017) ............................................. 1, 2, 6, 9, 13, 15

*Giles v. Ludwig*, No. 12 C 6746, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013) .................................. 19, 20

*Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372 (7th Cir.) (en banc) ...................................................5

*Gomez v. Guevara*, No. 18 C 3335 (N.D. Ill.) ........................................................................ 6, 13

*Gomez v. Guevara*, No. 18 C 3335, Dkt. 65 (N.D. Ill. April 8, 2019) .......................................... 4, 6, 11, 19

*Harris v. Chicago*, 2016 WL 3261522 (N.D. Ill. 2016) ....................................................................7

*Haven v. Polksa*, 215 F.3d 727 (7th Cir. 2000) ...........................................................................18

*Horton v. Chicago*, No. 13 C 6865, 2016 WL 316878 (N.D. Ill. Jan. 26, 2016) .................................. 4, 17

*Houseman v. U.S. Aviation*, 171 F.3d 1117 (7th Cir. 1999) ............................................................ 3, 17

*Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008) .......................................................................11

*Krocka v. Chicago*, 203 F.3d 507 (7th Cir. 2000) ..........................................................................3

*Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293 (7th Cir. 1995) .......................................................18

*Maysonet v. Guevara*, No. 18 C 2342 (N.D. Ill.) ..................................................................... 12, 13

*McLaughlin v. State Farm*, 30 F.3d 861 (7th Cir. 1994) ................................................................16

*Medina v. Chicago*, 100 F. Supp. 2d 893 (N.D. Ill. 2000) ...............................................................19

*Mitchell v. Chicago*, No.18 C 7357, Dkt. 86 (N.D. Ill. Sept. 18, 2019) ..............................................7

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ......................................................15

*Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687 (1999) .....................................................19

*Ott v. Milwaukee*, 2010 WL 5095305 (E.D. Wis. Dec. 8, 2010) .................................................. 4, 11

*Owen v. City of Independence*, 445 U.S. 622 (1980) ...........................................................16, 19, 20

*Ratliff v. Chicago*, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012) ....................................................17

*Real v. Bunn-O-Matic*, 195 F.R.D. 618 (N.D. Ill. 2000) ...............................................................3

*Reyes & Solache v. Guevara*, Nos. 18 C 1028 & 18 C 2312 (N.D. Ill.) ........................................ 13, 14

*Reyes & Solache v. Guevara*, Nos. 18 C 1028 & 18 C 2312 (N.D. Ill.), Tr. of April 24, 2019 ............... 4, 7

*Reyes v. Guevara*, No. 18 C 1028, Dkt. 224 (N.D. Ill. Sept. 10, 2019) .................................................. 13, 14

*Richardson v. Chicago*, No. 12 C 9184, Dkt. 164 (N.D. Ill.) ...........................................................................12

*Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.) ..................................................................... 2, 6, 12, 13, 15

*Rivera v. Guevara*, No. 12 C 4428, Dkt. 443 (N.D. Ill. May 18, 2018) .........................................4

*Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), Dkt. 671 ............................................................... 6, 8

*Rivera v. Guevara*, No. 12 C 4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018) ........................................1

*Rodriguez v. Guevara*, No. 18 C 7951 (N.D. Ill.) ....................................................................................12

*Rodriguez v. Chicago*, No. 18 C7951, Dkt. 51 (N.D. Ill. Sept. 10, 2019) .............................. 4, 7, 13

*Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.) ................................................................................. 12, 13

*Sierra v. Guevara*, No. 18 C 3029, Dkt. 84 (N.D. Ill.) .............................................................................4

*Sierra v. Guevara,* No. 18 C 3029, Dkt. 88 (N.D. Ill.) ................................................................. 11, 13

*Sierra v. Guevara*, No. 18 C 3029, Dkt. 154 (N.D. Ill.) ..........................................................7, 13, 14

*Smith v. Burge*, No. 16 C 3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018) ......................................... 4, 19

*Swanigan v. Chicago*, 775 F.3d 953 (7th Cir. 2015) ..................................................................... 18, 19

*Taylor v. Chicago*, No. 14 C 737, Dkt. 331 (N.D. Ill. Feb. 3, 2017) ..........................................12

*Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) ...........................................7

*Terry v. Cook Cty. Dep't of Corr.*, No. 09 C 3093 (N.D. Ill. July 8, 2010) ........................... 4, 11, 12, 14, 17

*Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009) ................................................................. 4, 5, 9, 11

*Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626 (7th Cir. 2018) ......................................16

*United States v. Gomez*, 763 F.3d 845 (7th Cir. Aug. 8, 2014) (*en banc*) .....................................16

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ....................................................7

*Warren v. Dart*, No. 09 C 3512, 2012 WL 1866372 (N.D. Ill. May 22, 2012) ..................... 8, 11

*Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014) ..............................................................5

*Williams v. Chicago*, 2018 WL 2561014 (N.D. Ill. June 1, 2018) ...................................................8

*Wilson v. Warren Cty.*, 830 F.3d 464 (7th Cir. 2016) ..................................................................8

*Wyatt v. Cole*, 504 U.S. 158 (1992) ......................................................................................19

## INTRODUCTION AND BACKGROUND

Plaintiff Robert Bouto was wrongfully convicted of a heinous murder due to constitutional violations by the City of Chicago and its officers. Compl., Dkt. 1, at ¶¶ 1-9, 19-129. Incarcerated at the age of 17, Mr. Bouto spent his entire young adulthood—23 years—behind bars, before finally winning back his freedom. *Id.* at ¶¶ 1-9. Mr. Bouto is just one of a long line of men who suffered the same fate, and who have been exonerated after new evidence surfaced that Defendant Reynaldo Guevara and detectives in Area Five of the Chicago Police Department ("CPD") framed them for crimes they did not commit. *Id.* at ¶¶ 130, 132, 135-136, 149. Mr. Bouto has alleged that these cases are intertwined, and that CPD policies and practices contributed to this pattern of misconduct.

Mr. Bouto's wrongful conviction would not have occurred but for the City's policies and practices. *Id.* ¶¶ 137-154. For example, he alleges that the City maintained a policy and practice of failing to discipline police officers such as Defendant Guevara, allowing them to operate with impunity. *E.g.*, *id.* ¶¶ 130-136, 146-149. There are no fewer than 70 documented, proven cases since 1986 in which CPD detectives amassed "evidence" against innocent persons for serious crimes— and "[t]here are undoubtedly many more such cases that have not yet been discovered." *Id.* ¶ 137.

Important for this motion, the City also had a practice of suppressing exculpatory information that was kept from criminal defendants and their attorneys. *Id.* ¶¶ 141-142, 138, 172, 192. Juries in two recent trials have found the City liable for maintaining this practice from 1984 until after Mr. Bouto's conviction. *Rivera v. Guevara*, No. 12 C 4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017). Discovery has only just begun, but Plaintiff is investigating whether, for example, the City suppressed an exculpatory 911 call and a photograph of Mr. Bouto that was impermissibly shown to witnesses prior to identification procedures—separate from additional evidence suppressed by the Defendant Officers.

The City seeks to bifurcate *Monell* claims in this case during discovery and trial, and thereby

prevent the truth about its unconstitutional policies and practices from ever seeing the light of day. Courts in this District have repeatedly rejected the City's bifurcation requests in wrongful conviction cases and those alleging street files theories of *Monell* liability. This Court should do the same.

First, under established law and contrary to the City's argument, Mr. Bouto's *Monell* claims do not depend on whether an individual Defendant is liable. Indeed, in both *Fields* and *Rivera*, juries recently found the City liable on the same *Monell* theory of systemically suppressing investigative materials in street files, and that finding was independent of liability for individual officers.

Second, bifurcation will not save time or resources. On the contrary, it would multiply the work of the Court and the parties, and it would cause inconvenience for witnesses. The *Monell* claims will be litigated regardless of the outcome of the individual case, and so bifurcation will serve only to duplicate the proceedings. That duplication would be particularly inefficient given that much of the evidence will be admissible and relevant both on the *Monell* claims and on the individual claims, such as the City's policies and practices that informed the defendant officers' conduct. The City's complaints about the scope of *Monell* discovery are greatly exaggerated, and as numerous courts have recognized, most of the required *Monell* discovery has been, or will be, produced in the many other Guevara cases previously tried to juries or currently progressing in this District.

Third, the City's argument that bifurcation of trial is necessary to avoid prejudice to Defendants at trial is premature and flawed. With respect to the individuals, most of the as-yet-undiscovered *Monell* evidence is likely to be admissible against the Defendant Officers at trial without any danger of unfair prejudice. Moreover, any concern that they might be prejudiced at trial can be managed with limiting instructions. And even if there were prejudice, it would not justify bifurcation at the start of the case. On the other hand, Mr. Bouto would suffer great prejudice if the City's motion was granted, and that prejudice must be considered.

Fourth, the City's position cannot be adopted because it violates the Seventh Amendment.

2

The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against individual defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial. But those two trials will necessarily require two separate juries to consider the same factual issues. The Seventh Amendment forbids that approach.

Fifth, the City proposes a "Limited Consent to Entry of Judgment," pursuant to which the City would deny liability but accept judgment if Mr. Bouto first establishes liability against the individual defendants. This proposal is procedurally improper and it cannot be used to eliminate Mr. Bouto's *Monell* claim without a trial. The City's proposal should be ignored.

Finally, there are important non-economic reasons for the *Monell* claims to proceed. The City's policies have been and remain terribly broken as evidenced by the repeated findings against it on this score. The cost, measured in decades of life lost, is beyond comprehension. Mr. Bouto has filed this litigation to ensure accountability, which the City's proposed course would evade.

## DISCUSSION

This Court has discretion to decide particular claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* Fed. R. Civ. P. 42(b), advisory cmts. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); 7 Fed. Prac. & Proc. § 2388 (2016) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."); *A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted

3

against bifurcation."). In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620.

Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored." *Awalt v. Marketti*, 2014 WL 1161500, at \*10 n.2 (N.D. Ill. Apr. 9, 2012). "*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force," because in such cases, liability for the municipality necessarily requires liability for the individual officer. *See Horton v. Chicago*, No. 13 C 6865, 2016 WL 316878, at \*2 (N.D. Ill. Jan. 26, 2016). In contrast, wrongful conviction cases are typically not bifurcated.[1] Thus, in five other cases involving claims of misconduct by Guevara and the same *Monell* claims against the City, judges have recently denied nearly identical bifurcation motions. Exh. A, *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.), Dkt. 84; Exh. B, *Gomez v. Guevara*, No. 18 C 3335, Dkt. 65; Exh. C, *Rodriguez v. Guevara*, No. 18 C 7951, Dkt. 51; Exh. DX, *Reyes* & *Solache v. Guevara*, Nos. 18 C 1028 & 18 C 2312 (N.D. Ill.), Trans. of April 24, 2019. To be sure, Judge Shah reached a different conclusion in *Montanez/Serrano*, but that litigation was in a starkly different procedural posture, in which discovery on the individual claims was nearly complete when the plaintiffs first served *Monell* discovery. City's Exh. 5, Dkt. 83-1 (Trans. of Mar. 19, 2019), at 4-5, 9. Here, bifurcation should be denied.

---

[1] *Rodriguez v. Chicago*, No. 18 C 7951, Dkt. 51 (N.D. Ill. Sept. 10, 2019); *Gomez v. Guevara*, No. 18 C 3335, Dkt. 65 (N.D. Ill. April 8, 2019); *Prince v. Kato*, No. 1:18 C2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); Exh. A, *Sierra*, No. 18 C 3029, Dkt. 84; Exh.E, *Smith v. Burge*, No. 16 C 3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Rivera v. Guevara*, No. 12 C 4428, Dkt. 443 (N.D. Ill. May 18, 2018); *Hood v. Chicago*, No. 16 C 1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Ott v. Milwaukee*, 2010 WL 5095305, at \*2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at \*2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook Cty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 2720754, at \*1-3 (N.D. Ill. July 8, 2010); *see also, e.g.*, *Bell v. Chicago*, 2010 WL 432310, at \*2-4 (N.D. Ill. Feb. 3, 2010).

## I.    The City's liability does not depend on individual liability.

The City's central argument is that its own liability depends on a jury first finding individual liability. That is incorrect on the law and the facts. "The actual rule," the Seventh Circuit stated in *Thomas*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d at 305; *see also Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir.) (en banc). Judges in this District analyze bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual officers not liable. *Bonds v. Chicago*, 2018 WL 1316720, at *4-5 (N.D. Ill. Mar. 14, 2018); *Cage*, 2010 WL 3613981, at *1; *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Evans v. Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). Cases like this one, where a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind those in which municipal liability is premised on a particular officer's use of excessive force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

Even prior to nearly all the discovery in this case, Plaintiff's *Monell* theories include that the City had a policy or practice of concealing documentary, exculpatory evidence from criminal defendants, commonly referred to as a "street files" theory. *See* Dkt. 83 at 2; *see also* Compl., Dkt. 1, at ¶¶ 141-142, 138, 172, 192. Plaintiff has long sought discovery on this matter. *See, e.g.*, Exh.F, City's Resp. to Pl.'s Sept. 2019 Requests for Prod., at Nos. 40(e) & 43 (requesting the City's policies and training on "disclosing exculpatory evidence to suspects, criminal defendants, or prosecutors, including through the subpoena response unit"). A jury might find that the individual defendants put investigative materials where they were supposed to in police department files, but that the City had no mechanism for ensuring those files were turned over to Plaintiff or his criminal defense attorneys. One example illustrates the point: during the relevant time period, the City responded to requests for documents from prosecutors and to subpoenas sent by criminal defendant attorneys

through the Subpoena Service Unit, which sometimes would (but sometimes would not) gather investigative materials from the detective Areas and other units of the Chicago Police Department where files were kept. No written policies governed that unit, and the civilian personnel working there received no training. As a result, one systemic problem in the relevant time frame was that the City failed to produce important investigative materials to the criminal justice system. The jury might find this City policy prevented Mr. Bouto from receiving investigative materials, even if individual Defendants did not intentionally suppress evidence or have any personal responsibility for constitutional violations. This is particularly so because the Defendant Officers have specifically denied that they deliberately suppressed exculpatory evidence. *See,* Def. Officers' Answer, Dkt. 62 at ¶¶ 40, 58, 71, 141, 142, 167, First Aff. Defense. The jury could credit their denials but still find that City policy caused evidence suppression, and in turn, Bouto's injuries. *Id.*

In such a case, a *Monell* verdict reflecting that the City's file-keeping system prevented disclosure of exculpatory investigative materials to Plaintiff would be consistent with a verdict that no individual Defendant bore personal responsibility for evidence suppression. Indeed, the City lost a *Monell* verdict recently in *Rivera*, which presented the same street-files theory, even though the jury found that no individual defendant detective was liable for suppressing evidence. The due process verdict against the City in *Rivera* was independent of the jury's findings on individual defendant liability. *Rivera*, No. 12 C 4428 (N.D. Ill.), Dkt. 671 at 26 (jury instructions); *see also*, e.g., Exh.B, *Gomez*, Dkt. 65 at 6-7. Similarly, the jury returned a *Monell* street-files verdict against the City in *Fields* that was independent of liability against any individual officer. *See Fields*, 2017 WL 4553411, at *3-4; *Fields v. Chicago*, No. 10 C 1168, Dkt. 1169 at 14-15 (jury instructions). Mr. Bouto intends to pursue this same theory, as evidenced by his discovery requests—particularly given the Defendant Officers' defenses that they did not knowingly suppress exculpatory information. Def. Officers' Answer, Dkt. 62 at ¶¶ 40, 58, 71, 141, 142, 167, First Aff. Defense.

Courts have denied bifurcation on this basis in other street files cases. As *Gomez* recognized:

[T]he jury could presumably find that the Defendant Officers put the evidence in its proper place . . . , but that the City had no mechanism for guaranteeing that those files were turned over in the litigation process. This finding would not be contingent on the jury determining that the individual officers intentionally suppressed evidence.

Exh. B at 6. Likewise, the court in *Cage* reasoned:

The Plaintiff's theory of *Monell* liability is that the City had a policy of not providing exculpatory lab evidence to the defense and that evidence that was inconsistent with the prosecution's theory of the case was also not explored. It is early in discovery and too early to determine who was aware of this alleged practice and who may have followed it unwittingly. For example, under this theory, it might be possible that a prosecutor and law enforcement officer continued to press charges not knowing that they were not being provided such exculpatory evidence. In such a circumstance, it might be possible for a jury to find that the officer and prosecutor acted unknowingly while in turn finding that the City's lab policy was unconstitutional.

*Cage*, 2010 WL 3613981, at *2; *see also, e.g.*, Exh. D, *Reyes*, Trans. of April 24, 2019, at 4 ("[A]t this point I can't make a determination that the *Monell* liability is necessarily dependent on the individual liability. I think there are theories that would not make that the case, . . . [and] there should be an opportunity to suss that out . . ."); Exh. G, *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.), Dkt. 154 ("Success on the *Monell* theory is possible without succeeding on other legal claims, or the City might be found liable for violating constitutional rights while individual Defendants enjoy qualified immunity.") (quotations and alteration omitted); Exh. C, *Rodriguez*, No. 18 C 7951, Dkt. 51, at 3-4 n.1.

Thus, Mr. Bouto's case differs from most of the cases cited by the City on this point, such as *Veal v. Kachiroubas*, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014), and *Mitchell v. Chicago*, 18 C 7357, Dkt. 86 (N.D. Ill. Sept. 18, 2019), which addressed coerced confessions; *Taylor v. Kachiroubas*, 2013 WL 6050492, at *1, 4 (N.D. Ill. Nov. 15, 2013), and *Harris v. Chicago*, 2016 WL 3261522, at *3 (N.D. Ill. 2016), which addressed coerced confessions and the fabrication of evidence; *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011), which concerned a traffic stop and false arrest (and actually denied the motion to bifurcate); and *Ackerman v. Allen*, No. 16 C 6199, 2017 WL 1536447

(N.D. Ill. Apr. 27, 2017), and *Arrington v. Chicago,* 2018 WL 3861552, at *1 (N.D. Ill. Aug. 14, 2018), which addressed excessive force.

The sole cases cited by the City addressing street files theories of *Monell* liability—Judge Kendall's decisions in *Andersen v. Chicago*, 2016 WL 7240765, at *3-4 (N.D. Ill. Dec. 14, 2016), and *Williams v. Chicago*, 2018 WL 2561014, *11-12 (N.D. Ill. June 1, 2018), and Judge Shah's decision in the *Montanez/Serrano* litigation—misunderstand the street-files theory. In those cases, Judges Kendell and Shah believed that the *Monell* street-files theory depended on an individual defendant intentionally and knowingly suppressing the street file. As explained above, the theory does not depend on individual misconduct. Instead, the City's failure *to transmit* street files to the criminal justice system was a matter of City policy, which deprived criminal defendants of needed investigative materials, even in the absence of knowing individual misconduct. While individual police officers always create the documents that end up in a suppressed street file, constitutional violations occurred because the City had no mechanism to ensure that the street files were handed over to the defense. Accordingly, a finding that individual officers did not suppress evidence would not foreclose *Monell* liability.

To duck the force of this argument, the City has in the past cited the objective standard for a *Brady* claim. Yet the City ignores that an individual officer may not be held liable under Section 1983 for evidence suppression unless the officer was "personally responsible for the constitutional deprivation": "the defendant must have himself committed the violation, directed it, or at least have known about and acquiesced to it." *Bolden v. Chicago*, No. 17 C 417, 2019 WL 3766104, at *7 (N.D. Ill. Aug. 9, 2019) (citing, e.g., *Wilson v. Warren Cty.*, 830 F.3d 464, 469 (7th Cir. 2016)). This Circuit's pattern jury instructions, too, make clear that evidence suppression must at least be "knowing" by an individual officer. *See* 7th Cir. Civil Pattern Instruction 7.14; *see also Rivera*, No. 12 C 4428, Dkt. 671

at 23; *Fields*, No. 10 C 1168, Dkt. 1169 at 10. Thus, as in *Thomas*, City policy could have caused Plaintiff's wrongful conviction even if no Defendant Officer is liable for knowing misconduct.

Moreover, the City can be liable for constitutional violations caused by municipal policies even if individual officers are afforded qualified immunity. Though that argument is not necessary to deny bifurcation, it has force here, as the Defendant Officers have asserted immunity defenses. *See, e.g.*, Dkt. 62 at pg. 66. If immunity is available to the individuals, then that, too, is a way that the City might be liable even if the individuals are not, creating the possibility of inconsistent verdicts and complicating the jury instructions. *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Cage*, 2010 WL 3613981, at *1; *see also* City's Exh. 5, Dkt. 83-1, at 11 (*Montanez/Serrano* Hrg. Trans.).

## II. Bifurcation will duplicate the proceedings, waste resources, and inconvenience witnesses.

Because the *Monell* claims will be tried no matter what, the City's proposal means there would be two separate cases tried consecutively. That approach would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. These factors also weigh heavily in favor of denying bifurcation.

### A. Bifurcation of discovery would massively waste resources.

If the City's proposed bifurcation were to be adopted, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the individual case, and the second to supplement that record with evidence necessary for the *Monell* claims. That would mean two depositions of Defendants and most other fact witnesses (one to ask them about their role in the individual case, and a second to ask questions relevant to City policies and practices). These witnesses would have to be produced for their depositions on two separate occasions, months (or likely years) apart. There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions (because some topics on which City testimony is necessary will pertain to both the individual and *Monell* cases and other topics will relate solely to *Monell*). Two rounds of expert

9

reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties.

Following each round of discovery, there would be dispositive motions for the Court to resolve. Perhaps without municipal claims in the case, the individual Defendants would decide to slow the process down further by taking a qualified-immunity appeal from the denial of their motions for summary judgment. After that, there would be two rounds of *Daubert* briefing, two separate filings of motions *in limine* (with responses and replies), two pretrial orders, and two jury instruction conferences. All of this double work would be avoided entirely with unitary discovery.

Perhaps most importantly, the City's plan would require two trials. This would impose a huge burden on the Court, witnesses, and parties. Each witness would be called twice—once to talk about the facts of the individual case, and a second time to talk about the City's policies, and the way those policies impacted the individual case. Experts would have to fly to Chicago twice to testify, at great expense to the parties. Exhibits would be introduced against the individual Defendants and then re-introduced against the City in the second trial. There would be two rounds of opening and closing arguments. Separate rounds of motion practice would accompany each trial. Courts have decided that bifurcation makes little sense in these circumstances. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007); *Awalt*, 2014 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants at the first trial, and much of the evidence relevant to the individual claims at the first trial must also be presented at the second trial. On the former point, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion, and departures from policy bear on the Defendants' state of mind, as well as the

10

appropriateness of punitive damages. *See, e.g., Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"); *Warren v. Dart*, No. 09 C 3512, 2012 WL 1866372, at *3 (N.D. Ill. May 22, 2012). And on the latter point, *Monell* requires proof that a policy was the moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require evidence about the underlying crime, investigation, and wrongful conviction. *See Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008) (affirming a decision not to sever claims against two defendants because those claims entailed "an overlap in the facts, evidence, and witnesses required").

The City's proposal would increase the burden on the Court and parties, multiply the litigation costs, and inconvenience third-party witnesses. *See Terry*, 2010 WL 2720754, at *3 ("a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date") (discussing *Cadiz*, 2007 WL 4293976, at *5). These burdens would be imposed without any offsetting benefit.

### B. Bifurcation of discovery would generate discovery disputes.

Bifurcation would generate numerous unnecessary discovery that would otherwise not exist, about whether discovery relates solely to Plaintiff's *Monell* claim or is also needed for litigation of Plaintiff's individual claims. Exh. B, *Gomez*, Dkt. 65 at 8 ("[I]n my experience, bifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery.") (quoting *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.), Dkt. 88); *Ott*, 2010 WL 5095305, at *3 (denying bifurcation where it was "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"); *Terry* 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010); *Cadle v. Chicago*, 2015 WL 6742070 (N.D. Ill. Nov. 2, 2015), at *2. As but a

11

few examples, courts were forced to wade into discovery disputes regarding the difference between *Monell* and non-*Monell* discovery in the following instances. Exh. H, *Richardson v. Chicago*, No. 12 C 9184 (N.D. Ill.), Dkt. 164, at 1-2; Exh. I, *Taylor v. Chicago*, No. 14 C 737, Dkt. 331(N.D. Ill. Feb. 3, 2017), at 1-3; Exh. J, *Coleman v. Peoria*, No. 15 C 1100, Dkt. 58 (C.D. Ill.), at 2.

This is precisely the type of case in which bifurcation will "add unnecessary complexity and confusion to the discovery process." *Terry*, 2010 WL 2720754, at *3. The City has already used its *Monell* bifurcation motion as a basis to decline to respond substantively to, for example, Plaintiff's requests relating to the City's policies and the individual Defendants' training. Exh. F, City's Resps. to Pl.'s First Requests for Prod., at Nos. 31, 38-40, 42-44. That production, however, is required to litigate Plaintiff's individual claims and pursue punitive damages. Bifurcation will create disputes that would not otherwise exist, at a significant cost to the parties and judicial economy.

### C. The City greatly exaggerates the cost of *Monell* discovery.

The City greatly exaggerates the burden of discovery necessary to try the *Monell* claims. Much of what the City will have to produce here—whether written policies, training records, Rule 30(b)(6) testimony, homicide files, or Complaint Register ("CR") files—has already been (or will be) produced in other cases addressing homicide investigations undertaken by Guevara and his Area 5 colleagues during similar timeframes as the 1993 investigation at issue here. These cases include:

- *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.) (*Monell* claim addressing 1988 homicide investigation found to be meritorious at trial)
- *Maysonet v. Guevara*, No. 18 C 2342 (N.D. Ill.) (*Monell* claim pending that addresses 1990 homicide investigation; bifurcation not yet adjudicated)
- *Almodovar & Negron v. Guevara*, Nos. 18 C 2341 & 18 C 2701 (N.D. Ill.) (*Monell* claim pending that addresses 1994 homicide investigation; bifurcation not yet adjudicated)
- *Rodriguez v. Guevara*, No. 18 C7951 (N.D. Ill.) (*Monell* claim pending that addresses 1995 homicide investigation; bifurcation denied)
- *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.) (*Monell* claim pending that addresses 1995 homicide investigation; bifurcation denied)
- *Gomez v. Guevara*, 18 C 3335 (N.D. Ill) (*Monell* claim pending that addresses 1997 homicide investigation; bifurcation denied)

- *Reyes* & *Solache v. Guevara*, Nos. 18 C 1028 & 18 C 2312 (N.D. Ill.) (*Monell* claim pending that addresses 1990 homicide investigation; bifurcation denied).

There is no doubt that materials from other cases can be used here. The City complains about discovery into its policies, training materials, homicide files, and CR files. However, *Rivera* (also a Guevara case) and *Fields* already necessitated thorough discovery on the City's written policies and training materials as well as materials required for an "'in depth analysis of street files claims from 1983-1991 and 1999-2006,'" including a large sample of Area 5 homicide files from 1985-1991. *See* Exh. K, *Reyes*, No. 18 C 1028 (N.D. Ill.), Order of Sept. 10, 2019 (Dkt. 224), at 17-18 (quotation omitted). The City is under Court order in *Sierra* to produce "all CRs opened from 1991-95 against Area Five detectives," as well as all homicide files for Area 5 from the same time period. Exh. G, *Sierra*, No. 18 C 3029, Dkt. 154, at 3-4. In *Solache/Reyes*, the City is under Court order to produce all CR files for those detectives who worked at Area Five at any time from 1995-1998. (Exh. K, at 23).

Additional policy documents, training materials, and homicide and CR files will likely be produced in other pending Guevara cases, such as *Maysonet*, *Almodovar/Negron*, and *Gomez*, which address investigations of 1990, 1994, and 1997 homicides, respectively. The City has not provided any basis, let alone an affidavit under oath from a City representative with knowledge, upon which this Court could conclude that the incremental burden of conducting *Monell* discovery in *this* case warrants bifurcation given the extent of production in prior and pending Area 5 cases. *See, e.g.*, Exh. C, *Rodriguez v. Guevara*, No. 18 C 7951, Dkt. 51 at 3 & 3-4 n.1 ("the City should have already done much of the necessary groundwork for *Monell* discovery in the other similar cases that are progressing through other courts in this district, which will cut the time, burden, and expense on the City to produce *Monell* discovery."); *see also Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.), Dkt. 88, Trans. of Nov. 7, 2018, at 5 ("[T]he city has been engaged in *Monell* discovery in similar cases. . . . [T]he city certainly has a good start on how it would go about searching for discovery that would be

the subject of plaintiff's *Monell* claims."); *Cadle*, 2015 WL 6742070, at *2 ("[T]he Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."); *Bell*, 2010 WL 432310, at *4.

The City's complaints about Plaintiff's specific discovery requests, moreover, are premature, as the parties have not yet even conferred about those requests. Plaintiff's counsel intends to work in good faith to confer with opposing counsel and pursue efficient *Monell* discovery required to meet Plaintiff's burden of proof. As one example, Plaintiff's counsel's firm has repeatedly offered to agree with the City on an appropriate sampling methodology of homicide and Complaint Register files required for *Monell* expert review, provided the City stipulates to the representativeness of the sample. *See Reyes*, No. 18 C 1028, Dkt. 224 at 22; Exh. G, *Sierra*, No. 18 C 3029, Dkt. 154, at 3. Plaintiff extends the same offer in this case, as Plaintiff's counsel made clear back in October. Should the parties not be able to reach agreement after conferring about Plaintiff's requests, such issues should be handled through normal discovery procedures. *See, e.g.*, *Carter v. Dart*, 09 C 956, 2011 WL 1466599, at *5 (N.D. Ill. Apr. l8, 2011) (declining to bifurcate because "[t]o the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary"); *Terry*, 2010 WL 2720754, at *3 (same); *Cadiz*, 2007 WL 4293976, at *3 (same). The City's complaints about individual discovery requests upon which the parties have not yet conferred do not warrant resort to the radical relief of bifurcation.[2]

Importantly, the discovery will have to be completed at some point, and the City's proposal of bifurcated discovery will increase, not decrease, the total work required.

---

[2] The City has been able to produce files quickly when courts have not permitted it to delay. In *Kluppelberg v. Chicago*, No. 13 C 3963 (N.D. Ill.), the City produced 660 investigative files in three and a half months, under court order. *See* Exh. L (July 23, 2015 Order); Group Exh. M (Correspondence). Similarly, the City has been afforded four months by Judge Harjani to produce approximately 343 investigative files and 533 CR files, in *Solache/Reyes*, following briefing by both sides on the appropriate production timeline. Exh. K, *Reyes*, Dkt. 224, at 24.

### D. The City's concerns about the "inefficiency" of *Monell* discovery are misplaced.

The City should not be permitted to duck accountability by characterizing discovery into its misconduct as inefficient or "wasteful." Dkt. 83 at 14.

First, the *Monell* claims will have to be tried no matter what. *See supra* at 4-9.

Second, the City's judicial-economy argument—which it raises routinely in nearly all civil rights cases—is nothing more than an argument that *Monell* discovery is time consuming and expensive for the City to face. The City would undoubtedly prefer the effective dismissal of Plaintiff's *Monell* claims without any discovery, and thereby, avoidance of any judicial scrutiny over the City's violations, in direct contravention of *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny. But the expense of defending against weighty *Monell* theories is not a legitimate justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he plaintiff is the master of her complaint, and so the (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."); *Cadiz*, 2007 WL 4293976, at *3 (if the additional burden of discovery on a *Monell* claim was sufficient to require bifurcation, "courts always would bifurcate *Monell* claims (but they do not do so)"). The City does not contend that Plaintiff's theories are meritless—nor can it, as the City has recently been found liable twice (*Rivera* and *Fields*) for causing wrongful convictions. Plaintiff's claims raise important and serious constitutional claims arising from *decades* of wrongful incarceration. *Monell* discovery will entail no more expense than many other complex cases on this Court's docket and Plaintiff has paid his filing fee like any other litigant.

Relatedly, the City argues that eliminating the *Monell* claims will conserve judicial resources because adjudication of discovery, motions, and a trial of those claims will no longer be necessary. Not only is that flatly incorrect, for the reasons explained already, but it is also perverse to argue that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to

15

bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims. This is particularly so when one considers that section 1983 is designed to ensure municipal accountability for violations of civil rights. *Owen v. City of Independence*, 445 U.S. 622 (1980).

## III. The balance of prejudice weighs against bifurcation.

### A. The City will suffer no prejudice at trial.

The City also seeks bifurcation on the basis that Defendants will suffer prejudice from a unitary trial. This argument is without merit and provides no justification for bifurcation at this early stage. The only potential prejudice here is to Mr. Bouto if the *Monell* claims are bifurcated.

First, the argument that *Monell* evidence will prejudice the individual Defendants at trial should be rejected. As discussed already, a substantial portion of the *Monell* evidence will be directly relevant to Mr. Bouto's claims against the individuals, and it is therefore not unfairly prejudicial at all. The same is true here, where the City's policies and training on such matters as the suppression of exculpatory evidence are required to evaluate the individual officers' conduct and whether they deviated from or conformed to City policy in causing the constitutional violations alleged here.

Moreover, even if there was a concern about prejudice to the individual defendants at trial, that would not justify holding two separate trials. Instead, limiting instructions are the established mechanism for managing prejudice. Fed. R. Evid. 105 (directing district courts to provide instructions to the jury "restrict[ing] the evidence to its proper scope"); *United States v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (*en banc*) (limiting instructions sufficient to manage any prejudice caused by the admission of other-acts evidence, and commenting that "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons."); *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018) (courts assume jurors follow limiting instructions); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to avoid prejudice where it is presumed jury could follow limiting

16

instruction on how to consider the evidence); *Awalt*, 2014 WL 1161500, at *13. At best, the City's argument is premature given that the Court cannot, at this early stage, assess "what the evidence is and the actual prejudice being faced." *Horton*, 2016 WL 316878, at *5.

### B. Plaintiff will suffer immediate and pronounced prejudice from bifurcation.

Any hypothetical prejudice avoided by bifurcation at trial must be weighed against the immediate, obvious, and pronounced prejudice to Mr. Bouto throughout the entire course of the case. *Houseman*, 171 F.3d at 1121. First, because the "claims asserted by Plaintiff are interwoven," bifurcation would result in "an unreasonable hardship" on Plaintiff as it would be "completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). Second, bifurcation would cause delays in the resolution of Mr. Bouto's claims and drive up the cost of the litigation. *Clipco, Ltd. v. Ignite Design, LLC*, 2005 WL 2861032, at *3 (bifurcation inappropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice"); *Terry*, 2010 WL 2720754, at *2 ("[J]udges in this district have echoed Plaintiff's concerns about delay of the case and possible prejudice to Plaintiff from that delay."). Third, if the case was bifurcated, there would be numerous unnecessary discovery disputes about what is "*Monell*-only" discovery and what discovery properly pertains to policies and practices that are relevant to Mr. Bouto's claims against the individual Defendants. *Supra* at 11-12. Given these considerations, the balance of equities favors a unitary proceeding.

## IV. Bifurcation would violate the Seventh Amendment.

The City's proposal would require two separate trials, in front of two separate juries, which would both consider the same issues. Most importantly, both juries would be required to consider whether and how Mr. Bouto's constitutional rights were violated by the suppression of evidence— the first to assess whether the individual Defendants violated his right to due process, and the second to assess whether the City's policies were the moving force behind that same violation. The

Seventh Amendment prohibits dividing issues in way that requires a second jury to reexamine an issue decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) (under the Seventh Amendment, "a given issue may not be tried by different, successive juries"); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues. Thus, the Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first."); 9A Fed. Prac. & Proc. § 2391 (2016). The City's proposal violates the Seventh Amendment as well.

## V.     The City's "Limited Consent to Entry of Judgment" is procedurally improper.

To avoid the problems its proposed bifurcation creates, the City submits a "Limited Consent to Entry of Judgment" to its motion, by which it states it would accept a judgment against it if the individual Defendants were found to have violated Mr. Bouto's constitutional rights but were also entitled to immunity. City's Exh. 6, Dkt. 83-1. As the Seventh Circuit has observed recently, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure, and it is therefore procedurally deficient. *Swanigan v. Chicago*, 775 F.3d 953, 959-62 (7th Cir. 2015). It is not a Rule 68 offer of judgment, because it does not satisfy Mr. Bouto's demands. *Id.* It is not an agreed Rule 16 stipulation, because it does not stipulate to any facts and Mr. Bouto rejects it. (That might be different if the City stipulated to a policy and practice of suppressing exculpatory information in street files—but instead, the City's stipulation expressly *disavows* liability). Finally, it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the Court should disregard the City's proposed consent entirely—it is not something that can be imposed on Plaintiff to remove the City from the case.

## VI.     Meaningful non-economic interests weigh against bifurcation.

Finally, this Court should reject the City's self-serving argument that litigation of the *Monell* claim provides no gain to Plaintiff. The *Monell* claim will establish an important basis—independent of individual liability—on which the verdict could be upheld on appeal. In addition, Mr. Bouto has a weighty non-economic interest in securing accountability for the City's constitutional violations. Section 1983 litigation against municipalities forces recognition of systemic municipal practices that cause constitutional harm, requires the municipality and public to reckon with the harm caused, and deters future abuses. *See Owen*, 445 U.S. at 651 (section 1983 "was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations"); *Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999) ("A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue."); *Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 727 (1999) (section 1983 actions "deter future violations"); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992); *Swanigan*, 775 F.3d at 962. Numerous courts in this District weigh these non-monetary considerations in their bifurcation analysis. *See* Exh. B, *Gomez*, No. 18 C 3335, Dkt. 65; *Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000); *Carter,* 2011 WL 1466599, at *4 (N.D. Ill. Apr. 18, 2011); *Giles v. Ludwig*, No. 12 C 6746, 2013 WL 6512683, at *3 (N.D. Ill. Dec. 6, 2013); *Estate of McIntosh v. Chicago*, No. 15 C 1920, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015).

Lawsuits, such as Mr. Bouto's, that allege wrongful convictions as the result of misconduct at the hands of notorious repeat-offender officers—differ "from other lawsuits against the City in which district courts have bifurcated *Monell* claims." Exh. E, *Smith*, No. 16 C 3404, Dkt. 205, at 2. The City's policies deprived Mr. Bouto and countless other men of fair trials and allowed Defendant Guevara and his co-conspirators to terrorize the community with impunity, generating hundreds of

19

years of wrongful incarceration. The stakes in a civil rights lawsuit will rarely be higher, and Mr. Bouto's *Monell* claims are of profound importance to accountability and reform. The meaningful non-economic objectives of Mr. Bouto's lawsuit thus weigh heavily against bifurcation.

To establish otherwise, the City argues that Plaintiff's *Monell* claim serves no non-monetary purpose whatsoever. The City's sole justification is an unsupported, single-sentence argument that "many" unspecified "changes" have occurred in City policy. Dkt. 83 at 11. This argument is too vague and devoid of supporting evidence to justify bifurcation. Plaintiff strenuously disagrees that the City has meaningfully reformed its failure to discipline and supervise abusive officers and comply with *Brady*. And even if the City were correct (which it is not), important benefit would still flow to Mr. Bouto and others from acknowledgment of the constitutional injury inflicted upon him by the City and from the notice to the public, general accountability, and deterrence that such a verdict would advance. *Giles*, 2013 WL 6512683, at *3 ("mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs") (collecting cases).

The City's contrary position is disproved by its own proposed Limited Consent, in which the City expressly denies liability. City's Exh. 6, Dkt. 83-1, at ¶¶3-4; *see also Owen*, 445 U.S. at 650 (addressing situations such as this one in which a municipality seeks to "disavow liability"). The City would not insist on expressly denying accountability if an admission of liability had no significance.

## CONCLUSION

The City cannot avoid litigation over its role in the alleged misconduct. It is responsible, as much as the other Defendants, for Plaintiff's wrongful conviction and his 23 years of imprisonment. Plaintiff has paid his filing fee like any other litigant, and he is entitled to discovery on all well-pled claims. The City's motion should be denied.

**DATED: December 10, 2019**

RESPECTFULLY SUBMITTED,


By:     /s/ Ruth Brown
        *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Debra Loevy
Ruth Brown
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900


## CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, hereby certify that on December 10, 2019, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record. Plaintiffs will also serve a copy of this motion on Defendant Marron upon effecting service upon him.


/s/ Ruth Brown
*One of Plaintiff's Attorneys*