IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BOUTO, | ) |
| | ) Case No. 19-cv-2441 |
| Plaintiff, | ) |
| | ) |
| v. | ) District Judge John F. Kness |
| | ) |
| GUEVARA, et al., | ) Magistrate Judge Susan E. Cox |
| | ) |
| | ) |
| Defendants. | ) |
| | ) JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO COMPEL POLICIES AND OTHER OUTSTANDING
DOCUMENTS FROM PLAINTIFF'S SEPTEMBER 2019 DOCUMENT REQUESTS**

Plaintiff Robert Bouto, by his attorneys, respectfully moves this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling Defendant City of Chicago to produce documents in response to Plaintiff's First Set of Requests for Production.

**PROPOSED PROCEDURE FOR RESOLUTION**

The parties propose that this Court permit briefing on this discovery motion pursuant to the following briefing schedule: 21 days for the City's response, and 10 days for Plaintiff's reply.

**INTRODUCTION**

Plaintiff Robert Bouto brings this Section 1983 action against the City of Chicago, notorious Defendant Reynaldo Guevara, and other police and prosecutor defendants who caused him to be wrongfully imprisoned for 23 years for the tragic murder of Salvadore Ruvalcaba. Dkt. 1, Compl., at ¶¶ 1-8. Mr. Bouto is just one of a long line of men who suffered the same fate and who have since been exonerated after new evidence surfaced that Defendant Guevara and others from Area Five of the Chicago Police Department framed them for crimes they did not commit.

*Id.* at ¶¶ 130, 132, 135-136, 149. Plaintiff alleges that the Defendants manipulated and coerced false eyewitness identifications (*id.* at ¶¶ 30-52), suppressed exculpatory evidence (*id.* at ¶¶ 53-58), and intentionally fabricated an inculpatory statement against Mr. Bouto by incentivized jailhouse accuser and heroin addict Francisco Vicente—who Defendants Guevara and Halvorsen also used to "solve" two other unrelated murders over the span of just a few months, claiming three separate times that the perpetrators had supposedly confessed murder to Vicente and revealed details of the crimes to him (*id.* at ¶¶ 59-118). For his part, Defendant Guevara has universally taken the Fifth about his activities as a Chicago police officer in the face of over 100 incidents of his misconduct. *Id.* at ¶ 6.

In this motion, Mr. Bouto asks the Court to compel the City of Chicago to produce the following critical materials in response to his September 30, 2019 requests for production:

I. Documents reflecting the City's policies and procedures (Request Nos. 39 & 40).
II. Documents relating to investigations into misconduct committed by Defendant Guevara (Request No. 9)
III. Documents reflecting the activities of the Defendant Officers (Request Nos. 51 & 11)
IV. Additional agreed-upon documents not produced despite many months of delay (Request Nos. 20, 29, 28, 10, 21, 12, 3, 59)

*See generally* Exh. A, Group Correspondence, at 47-63.

While Plaintiff's counsel is mindful of the delays occasioned by the coronavirus pandemic since mid-March, Plaintiff has been seeking responsive documents for *eight months* and cannot afford to allow the City continued latitude to produce materials and respond on its own unspecified timelines. The parties have a firm upcoming fact discovery deadline of April 2021 (Dkt. 123), and Plaintiff needs responsive documents to conduct depositions and ensure adequate time for follow-up discovery. Plaintiff thus moves this Court to compel the City to provide timely responses by a date certain.

**BACKGROUND**

Long before the coronavirus pandemic, the City's document production in this case has been characterized by unwarranted delay. The City produced only 151 pages of documents with its mandatory initial disclosures in September 2019. By comparison, Plaintiff produced nearly 37,000 pages of documents, commensurate with its discovery obligations in a case concerning nearly three decades of criminal, post-conviction, and civil proceedings and addressing serious constitutional violations. The City's disclosures included, for example, no documents reflecting its applicable policies or procedures and no personnel or other employment documents relating to the Defendant Officers or investigations into their misconduct.

Promptly after receiving the City's disclosures, on September 30, 2019, Plaintiff issued his first set of discovery requests. *See* Exh. B, City's Resps. to Pl's. First Requests for Production; Exh. C, Applicable Definitions and Instructions. The City requested nearly six weeks of extensions in which to respond.

When the City finally responded in December 2019, it produced just 53 pages of documents, bringing its total to 205 pages of production. It does not appear that the City conducted any investigation into the vast majority of Plaintiff's requests; the City produced no additional documents in response to most requests, declined to confirm that no additional responsive documents existed, and simply stated "investigation continues." *See, e.g.*, Exh. B. Nor did the City specify the timeline for conclusion of its "investigation" as required by Rule 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."). *Id.*

Plaintiff promptly sent correspondence in December 2019 outlining the many deficiencies in the City's barebones responses and set up two lengthy conferences. *See* Exh. A at 1-12, 14, 28. However, the City continued to delay its production.

In mid-February 2020—five months after the discovery requests had been served—the City finally provided a single limited supplement of documents, primarily consisting of CR and personnel files for the Defendant Officers. Again, the supplement contained no applicable policies or procedures. Nor did the City provide responses to the many agreed-upon matters that it had promised in late December to investigate. The City also continued to decline to provide a date certain by which it would provide its supplemental responses, in violation of Rule 34(b)(2)(B). *See, e.g.*, Exh. A at 14, 16, 47-63.

Now, nearly three months later—eight months after service of the discovery requests—the City still has yet to produce even agreed-upon materials, or, alternatively, to confirm that no responsive materials exist following a diligent investigation. Plaintiff cannot afford to wait indefinitely pursuant to the City's unspecified timeline to receive basic documents. This Court should therefore compel production of the requested materials by a date certain.

**LEGAL STANDARD**

Federal discovery rules are liberal to assist in preparation for trial and aid the search for truth. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). A party responding to a Rule 34 request must "state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R.

Civ. Pl. 34(b)(2)(B). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Parvati Corp v. City of Oak Forest*, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010) (quoting *Kodish*, 235 F.R.D. at 450).

## DISCUSSION

### I. Written policies and procedures (Request Nos. 39 & 40)

The City has not produced a single written policy or procedure document in this case in the eight months since Plaintiff's September 2019 requests. Plaintiff has yet to receive such documents even on topics and timeframes that the City has long agreed fall within the scope of discovery. In addition, the parties dispute the appropriate temporal scope of policy and procedure discovery as well as discoverability of policies on reporting, investigating, identifying, tracking, or reviewing rates by which detectives clear or close investigations and receive complaints of misconduct. This Court should thus compel production by a date certain.

### A. Outstanding agreed-upon policies and procedures

The City agreed in December 2019 to produce documents relating to the City's policies and procedures between the date of Plaintiff's May 14, 1993 arrest through his July 29, 1996 trial relating to "the discipline of police officers or to disciplinary proceedings" (Exh. B, Request No. 39), and the following additional topics:

> a. documenting or memorializing the various developments in an investigation in such a way that they would become part of the official file as the investigation proceeded, and filing, retaining, storing, or destroying police investigative material, including witness statements, reports, and notes, during the course of an investigation;
>
> b. conducting, documenting, or memorializing photo or in-person lineups, show-ups, clothing line-ups, or any other type of identification procedures, including for adults and juveniles;
> c. conducting, documenting, memorializing or recording interviews, questioning, or interrogations of witnesses, including of juvenile witnesses;
>
> d. using incentivized accusers and/or jailhouse informants in criminal investigations;

5

  e. disclosing exculpatory evidence to suspects, criminal defendants, or prosecutors, including through the subpoena response unit;

  f. providing, qualifying for, authorizing, and/or documenting overtime hours and/or overtime compensation, including for detectives.

Exh. B, Request No. 40. *See* Exh. A at 16, 48. Five months later (eight months after Plaintiff's requests), these agreed-upon policies and procedures still have not yet been produced.

  To accommodate the City's expressed lack of understanding as to which of its policies and procedures were responsive to Plaintiff's requests, Plaintiff agreed in December 2019 that the City would first produce indexes of its policies and procedures and then the parties would confer on production of the policies. Exh. A at 16. It has become apparent that that procedure is not tenable due to the City's delays. The City's counsel declined to provide a timeline for production of the indexes in December 2019, instead stating that the City would later provide that information. *Id.* It did not, however, and after Plaintiff followed up (e.g., Exh. A at 30), in mid-February, the City again declined to produce the indexes, stating only that it would produce them at some unspecified date. Exh. A at 48.

  Now, in late May, Plaintiff has yet to receive the indexes, let alone the applicable written policies or procedures, *eight* months after issuing his requests. Plaintiff thus asks this Court to compel both production of all underlying responsive policies and procedures on the agreed-upon topics that are identified in good faith by the City's counsel, as well as the applicable indexes, by a date certain.

6

### B. Disputed policies and procedures

Plaintiff also asks this Court to compel two categories of disputed materials relating to written policies and procedures.

First, Plaintiff asks this Court to compel production of documents relating to the City's written policies and procedures on the topics below, which the City has refused to produce:

> g. reporting, investigating, identifying, tracking, or reviewing rates by which detectives clear or close investigations, including homicide investigations;
>
> h. reporting, investigating, identifying, tracking, or reviewing allegations of officer misconduct.

Exh. B, Request No. 40 (g), (h); Exh. A at 48.

Plaintiff needs the City's written policies and practices regarding the tracking of homicide close rates (subsection 40(g)) and officer misconduct (subjection 40(h)) to support his individual claims and 404(b) allegations. Plaintiff alleges that Defendant Guevara, along with his colleagues at Area Five, intentionally framed dozens of people to close cases. Compl., Dkt. 1, at ¶¶ 130-36. The Defendant Officers' experiences with these policies and procedures informed their actions in Plaintiff's case and those of his 404(b) witnesses, including whether Defendants felt that they could act with impunity in framing dozens of innocent men and would be rewarded for closing cases, regardless of the means by which they did so. Responsive policy and procedure documents also bear on Plaintiff's *Monell* allegations, including his allegations that the City's failure to supervise and discipline officers accused of repeated wrongdoing caused the constitutional violations here (Dkt. 1, Compl., ¶¶ 130-36), and that an "institutional desire to close cases through abusive tactics regardless of actual guilt or innocence, in order to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice" (*id.* ¶ 193).

Second, for all policies and procedure discovery discussed in Section I (both agreed and disputed), Plaintiff asks this Court to compel production of all responsive policy and procedure documents created during the 7-year period leading up to Plaintiff's arrest (May 1986 to May 1993), and the 7-year period that followed (May 1993 to May 2000).[1] The City has agreed to produce responsive documents only in the narrow timeframe from Plaintiff's May 1993 arrest through his July 1996 trial.

The City's proposed timeframe for policy and procedure documentation is prejudicially short. The context of how key policies and procedures changed (or did not change) in the 7-year period leading up to the Defendant Officers' investigation of Plaintiff bears on the Defendant Officers' understanding of the applicable policies and procedures at the time of the investigation. Plaintiff is entitled to discover whether the applicable policies and procedures were new or well-established; when the Defendant Officers began following key policies; and when and whether they were trained on those policies. And if the Defendant Officers justify a deviation from policy or procedure based on newness or a lack of training, Plaintiff is entitled to discovery to challenge such a defense. The ways in which the applicable policies and practices changed both before and after Plaintiff's arrest also bear on Plaintiff's *Monell* claims, including by reflecting notice to the City of the need for policy change to avoid constitutional violations, and an opportunity by the City to enact constitutional policies and procedures. For example, a policy or procedure change after the Defendants' investigation of Mr. Bouto may rebut a contention by the City that it had no notice of the problems with its policies and procedures at the time of Defendants' investigation, as well as rebut the City's claim that policy alternatives were infeasible. Policies and procedures

---

[1] Plaintiff's Request for Production on disciplinary policies and procedures, No. 39, seeks such policies only through 1996, but the City's disciplinary policies and procedures in the time period of 1996-2000 are covered by Plaintiff's Request for Production No. 40(i).

in the May 1986-May 2000 timeframe also bear on the Defendant Officers' conduct with respect to 404(b) witnesses, which are a central focus of Plaintiff's discovery in this case given Defendant Guevara's history of framing innocent men using repeated tactics. *See, e.g.*, Dkt. 1 at ¶¶ 130-36.

Production of these limited policy and procedure documents is proportionate to discovery obligations in a case in which Plaintiff seeks redress for 23 years of wrongful imprisonment and serious constitutional violations. Moreover, all or most of the policy and procedure documents that Plaintiff is seeking have been (or will be) produced in other civil rights cases against the City, including in the many cases against Defendant Guevara, which span investigations in the 1980's and 1990's. This Court should compel the City to produce responsive policy and procedure documents dated 7 years before and 7 years after Plaintiff's 1996 arrest.

II. **Investigations into misconduct committed by Defendant Guevara (Request No. 9)**

In his September 2019 requests, Plaintiff requested documents relating to any City of Chicago investigation or internal investigation into the wrongdoing alleged in his complaint. *See* Exh. B, Request No. 9. In the City's responses, it agreed to produce only CR files for the Defendant Officers and ignored the remainder of Plaintiff's request. *Id.* Plaintiff clarified during a December 2019 conference that he sought documents reflecting prosecutions and investigations into misconduct committed during the Ruvalcaba homicide investigation, specifically, and by Defendant Guevara generally. Exh. A at 16. The City agreed in December to search for all categories of responsive documents (Exh. A at 16, 48-49). However, the City has failed to produce responsive documents and/or affirm that no additional responsive documents exist in the *five* months that have followed. *See, e.g.*, Exh. A at 48-49.

9

Responsive documents bear on Plaintiff's individual claims against Defendant Guevara of misconduct resulting in Plaintiff's prosecution; Plaintiff's 404(b) allegations against Defendant Guevara; Plaintiff's request for punitive damages against Defendant Guevara; and Plaintiff's *Monell* theories against Defendant City of Chicago, including Plaintiff's allegation that the City's failure to discipline and supervise repeated wrongdoers such as Defendant Guevara was a moving force behind Plaintiff's wrongful conviction. In light of the City's unwarranted delay, this Court should compel production of all documents responsive to Request No. 9 by a date certain.

### III.   Activities of the Defendant Officers (Request Nos. 51 & 11).

In Request Nos. 51 & 11, Plaintiff seeks documents reflecting the actions, activities, or communications of Defendant Richard Maher, Defendant L. Marron, and Officer Lupe Pena, on May 14-16, 1993; and reflecting the locations, movements, assignments, or contacts made by the Defendant Officers between February 1, 1993 through June 15, 1993. Exh. B, Request Nos. 51 & 11. Plaintiff requires these documents to better understand the Defendant Officers' conduct and interactions with one another and witnesses during key events that Plaintiff did not observe firsthand, including the Defendant Officers' use of incentivized jailhouse accuser and heroin addict Francisco Vicente to "solve" three separate, unrelated murders that took place between February and June 1993—all in cases investigated by Defendants Guevara and Halvorsen. *See* Dkt. 1, Compl., at ¶¶ 59-118. Specifics about the activities and communications of Maher, Marron, and Pena from May 14-16 are particularly important, as those are the dates on or about which one of those officers supposedly claimed to have heard from Vicente about Mr. Bouto's supposed confession to the Ruvalcaba homicide, and reported that matter to the investigating

10

detectives, Guevara and Halvorsen (*id.* at ¶¶ 72-75)— a tactic Defendants Guevara and Halvorsen commonly used to mask evidence of their wrongdoing.

Although it is the City that knows best what responsive documents were created and retained, Plaintiff identified a non-exclusive list of potential responsive documents, such as police reports, arrest lists, daily activity reports, contact cards, and supervisor management logs. Exh. B, Request Nos. 51 & 11. Plaintiff further asked the City to use any available City databases to conduct a search into the Defendant Officers' activities for the dates specified. Exh. A at 3-4, 49-50.

When the City tendered its discovery responses, its sole[2] objection to Request No. 11 was an objection to Plaintiff's definition of the term "Document." Exh. B at Request No. 11; Exh. C at Definition No. 19. That objection lacks merit. *See e.g.*, Fed. R. Civ. P. 34(a)(1)(A); *Melgoza v. Rush Univ. Med. Ctr.*, No. 17 C 6819, 2019 WL 2504094 (N.D. Ill. June 14, 2019) (finding appropriate a similar definition). The City objected to Request No. 51 again only on the basis of definitions – faulting Plaintiff for his definitions of the terms "Document" and "Communication," and simultaneously faulting him for declining to define the common terms "activities" and "actions." Exh. B at Request No. 51. The City failed to abide by Plaintiff's instruction requiring that, should it disagree with any of Plaintiff's definitions, that it produce all documents that it felt reasonably fall within the scope of discovery pursuant to its own reasonable interpretation of Plaintiff's terms, as well as provide its own reasonable counter-definition. Exh. C at Instruction No. 8 (discussing Fed. R. Civ. P. 34(b)(2)(C)).

After a conference on these responses, the City's counsel agreed to determine which, if any, of the categories of documents identified by Plaintiff in his requests had been retained by

---

[2] The City also objected to the term "relate to," but that term is not used in the request.

11

the City, and to see whether any City databases provided any responsive information. *See* Exh. A at 32-33, 50. Nonetheless, well over four months later, the City has still failed to do so. Due to the City's continued delay, this Court should thus compel the City to complete its investigation and produce complete responses by a date certain.

**IV.     Outstanding agreed-upon document production**

Plaintiff finally asks the Court to compel the City to produce additional outstanding agreed-upon documents, or alternatively, to confirm, following a diligent production, that no responsive documents are in the City's possession, custody, or control, so that Plaintiff can commence depositions. The City agreed to investigate and produce the documents identified below in December 2019 and January 2020, and its continued non-production of materials long agreed upon over four months ago lacks any justification. The materials have been outstanding for many months and are critical to Plaintiff's ability to prove his case.

a. **Maps, floor plans, and photographs of key CPD facilities** (Request No. 20). The City agreed to produce all maps, floor plans, and photographs of the Chicago Police Department facilities in which Plaintiff, Francisco Vicente, or Edwin Maldonado were detained, held, interrogated, or questioned in May 1993, including the 25th district lockup, as those facilities existed in or around May 1993. *See* Exh. A at 33, 51. The City has produced only a single responsive document and has not confirmed that no other responsive documents exist despite months of delay. Exh. A at 51.

b. **Documents relating to prisoner transport vans between May 14, 1993, and June 15, 1993**, including those reflecting transportation of key witnesses Francisco Vicente, Edwin Maldonado, or Lydell Williams who interacted regarding Mr. Bouto's supposed confession (Request No. 21). The City has declined to confirm for many months whether any responsive documents exist after agreeing to produce all responsive documents. Exh. A at 51-52.

    c.    **Documents relating to the Defendant Officers** (Request No. 29). The City long ago agreed to investigate the existence of the employment documents for the Defendant Officers specified in Plaintiff's Request No. 29 (including, for example, performance evaluations, Behavior Intervention System (BIS) history or documents, extraordinary occurrence (e/o) history, INFO history, Non-Disciplinary intervention (NDI) history, personnel concerns program (PCP) records, and psychological testing records, and excepting deconfliction reports). *See* Exh. A at 53-54. The City then agreed in February 2020 to produce them upon receipt. *Id.* However, the City has neither produced the requested documents nor confirmed that responsive documents do not exist.

    d.    **Criminal investigation of Individual Defendants** (Request No. 10). The City agreed to confirm that it had no documents reflecting criminal investigations into the conduct of any Individual Defendants, including but not limited to conducting a CLEAR database search to determine whether the Defendants had been arrested. The City has not done so despite months of delay. *See* Exh. A at 36, 54.

    e.    **Complaints against the Defendant Officers** (Request No. 28). The City agreed to produce all CR files and SPARS against the officers and to confirm that no police board records exist but has not yet completed its production or, alternatively confirmed that no additional responsive documents exist. *See* Exh. A at 35, 53; *see also* Exh. A at 5-6, 20.

    f.    **Documents related to the questioning, interview, or interrogation of key witnesses) (**Request No. 12). After agreeing to produce these documents, the City has produced only "the documents it has located to date" and refused for months to confirm that no other responsive documents exist following a diligent investigation. Exh. A at 57; *see also id.* at 22, 39.

    g.    **Documents regarding the Ruvalcaba homicide investigation and Plaintiff's prosecution** (Request No. 3). After agreeing to produce these documents, the City has produced only "the documents it has located to date" and refused for months to confirm that no other responsive documents exist following a diligent investigation. Exh. A at 58; *see also id.* at 40, 8, 23.

    h.    **Felony review notes regarding Ruvalcaba investigation** (Request No. 59). After agreeing to produce responsive documents, the City has refused to confirm that no additional felony review materials exist that have not yet been produced, despite repeated inquiries and months of delay. Exh. A at 62; *see also id.* at 12, 26, 45.

In light of the City's continued delays, this Court should compel production by a date certain.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Compel and order production by Defendant City of Chicago by a date certain, of the documents described herein.

**DATED: May 27, 2020**

                                                      RESPECTFULLY SUBMITTED,

                             By:    /s/ Ruth Brown
                                          *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Debra Loevy
Ruth Brown
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2

Pursuant to L.R. 37.2 and the Case Procedures for Discovery Motions issued by Judge Cox, the undersigned counsel attests to the following, to the best of her knowledge and belief:

The Parties have complied with the requirements of Local Rule 37.2 but have reached impasse on the discovery requests that are the subject of the motion to which this certificate of compliance is attached. Counsel for Plaintiff (represented by the undersigned counsel) and Defendant City (represented by Eileen Rosen) have conferred extensively in and in good faith regarding the requests. This includes exchanging correspondence on dates including December 16, 2019; January 6, 2020; February 11, 2020; and February 18, 2020. *See* Exh. A. These counsel discussed the discovery disputes orally during a meet and confer on December 30 (conducted over the phone due to the parties' counsel being out of town), with a follow-up call on January 14. However, counsel have been unable to resolve these discovery matters. Counsel notes the Court's requirement that counsel meet and confer in-person unless it is impracticable to do so, and respectfully submits that in light of the counsel's travel schedules in December 2019 and the current COVID-19 pandemic, an in-person meet and confer was impracticable.

/s/ Ruth Brown
*One of Plaintiff's Attorneys*

## CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, hereby certify that on May 27, 2020, I caused the foregoing PLAINTIFF'S MOTION TO COMPEL to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Ruth Brown
*One of Plaintiff's Attorneys*