## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICARDO BOUTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 19-cv-2441 |
| | ) | Judge John F. Kness |
| | ) | Magistrate Judge Susan E. Cox |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed herein, Plaintiff's Motion to Compel the Production of Complaint Register and Homicide Files (dkt. 126) is granted in part and denied in part. Defendant City of Chicago is ordered to produce: 1) all Area Five homicide files, including Records Department files, for the years 1989-1993; and 2) all Complaint Register files for Area Five detectives for the years 1989-1993.

## BACKGROUND

Plaintiff Ricardo Bouto brings this case pursuant to 42 U.S.C. § 1983, alleging that several Chicago Police Officers framed him for murder in 1993, leading to his wrongful conviction and incarceration. (Dkt. 126 at 1.) Plaintiff alleges his conviction resulted from fabricated and manipulated identifications and confessions, and that Defendants fabricated and suppressed other evidence. (Dkt. 126 at 2-3.) In addition to his claims against the individual Defendants, Plaintiff alleges the City of Chicago's (the "City") policies and practices led to his wrongful conviction, including: 1) allowing for eyewitness and identification procedure manipulation; 2) causing evidence fabrication; 3) causing routine evidence suppression, "including burying documents in clandestine street files;" and 4) leaving officers without adequate training supervision, and

discipline. (Dkt. 126 at 4.) After this Court denied the City's motion to bifurcate and stay *Monell* discovery, the parties have engaged in discovery on all Plaintiff's claims. (*See* Dkt. 105.)

In the process of seeking *Monell* discovery, Plaintiff requested homicide investigation files and Complaint Register ("CR") files from the City; following some negotiation, Plaintiff's requests are honed down to: 1) CR files for all Chicago police detectives in Area Five from 1987-1993, and 2) complete homicide investigation files of Chicago police detectives at Area Five for homicides taking place from 1987-1993. (Dkt. 126 at 1.) The parties have reached impasse on these two sets of files, and Plaintiff filed the instant motion to compel, which is fully briefed and ripe for disposition.

## DISCUSSION

### I.  *MONELL* DISCOVERY GENERALLY

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issue at stake in the action, the amount of controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). However, this permission is not boundless; courts "must limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694 (1978), municipal liability attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury." *Monell* liability can be proven in three ways: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 844 (7th Cir. 2004).

Plaintiff contends he needs all the *Monell* discovery he seeks in order to "prove a widespread custom, over a sufficiently long time period, to establish liability." (Dkt. 126 at 9.) As to the homicide files, Plaintiff maintains that "[t]hey are the linchpin of any theory about the City's widespread customs in homicide cases, and they are essential to assess any *Monell* theory regarding systematic defects in those investigations" because they "represent perhaps the only document the City possesses documenting Area Five homicide investigations during the relevant timeframe." (Dkt. 126 at 11.) The City argues the homicide files are not relevant to any of Plaintiff's *Monell* theories, and that seven years of homicide files are not proportional to the needs of the case. If the Court does find the homicide files relevant to Plaintiff's *Monell* claims, the City asks that the temporal scope be limited and that the Court prohibit Plaintiff from using the files to "reinvestigat[e] hundreds of murder cases in effort undermine more convictions." (Dkt. 16-17.) The City also argues that open homicide files and so-called Records Department files should not be included in any production of homicide files. As for the CR files, the parties agree that CR files are relevant to the case, but argue over the appropriate temporal scope and the burden that producing those files entails; Plaintiff seeks seven years of CR files, whereas the City argues that production should be limited to files from 1990-1993. For the reasons discussed below, the Court

orders the City to produce all Area Five homicide files and CR files for Area Five detectives between 1989 and 1993.

## II.    HOMICIDE FILES

This case is not the first of its kind being litigated in this district, and the Court is guided by the well-reasoned opinion of its colleagues.  One of the Defendants in this matter, Detective Reynaldo Guevara, is alleged to have violated the rights of several other individuals who have brought suit levying similar allegations as Plaintiff in the instant suit.  Those cases also include *Monell* claims based on the same policies or procedures identified by Plaintiff here.  In several of the parallel cases, plaintiff has sought seven years' worth of homicide files and CRs from Area Five detectives, and the presiding judges have allowed discovery to move forward, but whittled the time period down to four or five years.  The Court believes those decisions were mostly correctly decided and that their analysis applies with equal force to the motion before the Court.

Although he was careful to explain that his opinion only applied to the cases before him, the Court finds the opinion issued by Judge Harjani in the *Reyes v. Guevara* (18-cv-1028) and *Solache v. City of Chicago* (18-cv-2312) to be particularly instructive.[1]  *See Reyes v. Guevara*, 2019 WL 4278043, at *2 (N.D. Ill. Sept. 10, 2019).  In that opinion, Judge Harjani had "no trouble concluding that the Area Five homicide files in question are relevant to Plaintiffs' *Monell* claims," reasoning:

> Plaintiffs intend to use the homicide files to prove that the City maintained a number of unconstitutional policies and practices, including that the City suppressed evidence, fabricated evidence, including witness statements, used against them, and coerced confessions from suspects. . . . For example, with respect to their suppressed evidence theory, Plaintiffs state that the Area Five homicide investigative files can be: (1) examined themselves and (2) compared to other files concerning the same investigation and

---

[1]    *Reyes* and *Solache* are separate cases that were consolidated for purposes of discovery.  Judge Harjani issued one opinion in both cases on the relevant issue presently before the Court.

> prosecution. . . . Homicide investigative files could also contain evidence supporting allegations of coercion. For example, the homicide files will contain arrest reports indicating when the individual was arrested, and when the individual gave a statement, information about the length of an interrogation, the participants in the interrogation, and a copy of the handwritten confessions. Finally, Plaintiffs state that homicide investigative files can reveal evidence of fabricated police reports.

*Reyes*, 2019 WL 4278043, at *3.

The Court believes the analysis in *Reyes* also applies to this case. Like *Reyes*, Plaintiff has alleged *Monell* claims based on witness coercion and evidence suppression, and the homicide files may very well contain relevant information for those claims, as explained by Judge Harjani in *Reyes*. The City's arguments to the contrary are more akin to merits arguments (*i.e.*, that the information Plaintiff seeks would not be persuasive) than relevance arguments (*i.e.*, that the evidence would not have "any tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401(a)). As such, the Court rejects the City's assertion that the homicide files are not relevant, and agrees with the other courts in this district that have found that such files are relevant. *See also*, *Sierra v. Guevara*, 18-cv-3029, Dkt. 154 (N.D. Ill. Dec. 3, 2019) ("To prove a policy or practice led to the violation of plaintiff's rights, plaintiff must have access to enough other homicide investigations to demonstrate that any violation of his constitutional rights was part of a larger practice").

Having determined that the homicide files are relevant, the Court next turns to the issue of burden. In other cases, the Plaintiff's have sought seven years' worth of files, and each time the Court has shaved several years off the time frame. In *Sierra*, the plaintiff sought homicide files for 1989-95, but was granted files from 1991-95, because the court found that "five years of files . . . strikes the right balance between plaintiff's need for the discovery and the burden production imposes on the City." *Sierra*, 18-cv-3029, Dkt. 154 at 3. In *Reyes*, the plaintiff requested homicide

5

files from 1992-1998, but the court ruled that "a production of all Area Five homicide files from 1995 through 1998 strikes the proper balance between the value of the material sought and the burden and time that production would place on the parties and the Court." *Reyes*, 2019 WL 4278043, at *8. Like the other courts in this district, this Court finds that seven years of homicide files would be unduly burdensome to produce – Plaintiff has not persuaded the Court he needs such a large sample of files to prove the *Monell* claims. The Court believes five years' (1989-1993) worth of Area Five homicide files balances the importance of the production against the burden to the City. As the Court noted in its ruling on the motion to bifurcate, there is significant overlap in the *Monell* production in this case and the other cases. (Dkt. 105 at 3.) The court in *Sierra* already ordered the production of some of these same homicide files (1991, 1992, and 1993); the Court does not believe an additional two years (1989 and 1990) will be unduly burdensome to the City and orders that it produce all Area Five homicide files from 1989-1993.

There are two other issues the parties need the Court to decide relating to production of the homicide files. First, Defendant asks that any production be for a limited use and that the Court enter an order preventing Plaintiff from using the homicide files to "reinvestiag[e] hundreds of murder cases in effort to undermine more convictions." (Dkt. 142 at 17-18.) Recognizing that Judge Weisman granted a similar prohibition *Sierra*, the Court declines to do so here for several reasons. Primarily, there is a practical limitation to the ways in which Plaintiff can use the homicide files, based on the limited time he will have to conduct discovery. The Court fails to see how allowing the Plaintiff to interview hundreds of witnesses he gleans from the homicide files would burden the City at all. While the City seems to be concerned about whether such discovery could be adequately managed, that seems like a greater concern for Plaintiff than the City. The Court does not intend to grant endless extensions if the Plaintiff chooses to use his limited fact

discovery time on a frolic and detour chasing every witness named in the homicide files. If Plaintiff wants to use his limited resources and time to do so, he is certainly allowed to, but it does not strike the Court as the most efficient plan. To the extent the City is worried about discovery being extended because Plaintiff files supplemental disclosures on the eve of the close of discovery that require additional investigation by the City, the City can move to strike any supplemental disclosure or affidavits if they are not disclosed in a timely manner and prejudice the City. *See Lopez v. Sheriff of Cook County*, 2020 WL 1530739, at *11 (N.D. Ill. Mar. 31, 2020). Additionally, there is a legal limitation to the use of the homicide files. The Court recently entered a Confidentiality Protective Order, which states that "Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons . . . for any purpose whatsoever other than in this litigation, including any appeal thereof." (Dkt. 137 at ¶ 4(a).) Therefore, assuming the homicide files would be confidential information, Plaintiff would not be allowed to use them for anything other than this litigation. Finally, the Court does not find that undermining convictions that may have been wrongfully secured is an outcome that should necessarily be avoided. If, in the course of discovery, Plaintiff discovers that additional individuals may have been wrongfully convicted due to unconstitutional actions by Defendant Guevara or other Area Five detectives, the best possible outcome for the interests of justice is to have those convictions rightly undermined, not protected.[2] For all these reasons, the Court rejects the City's proposed limitations on the homicide files.

Lastly, the City argues it should not have to produce Records Division ("RD") files or any open homicide files. According to the City, the RD files are the "permanent retention file"

---

[2] Of course, any legal proceedings related to those findings would take place in separate cases, and Plaintiff's counsel would have to be careful to thread the needle with the obligations in the aforementioned Confidentiality Protective Order.

containing original copies of reports and notes that are in the broader homicide files; the documents contained in the RD file should, therefore, be duplicative of the documents contained in the larger homicide files. (Dkt. 142 at 17.) However, neither Plaintiff nor the Court needs to take the City at its word that they are duplicative. Plaintiff has the right to verify that claim. If they are duplicative, Plaintiff will have wasted his time. If they are not, it may be relevant to Plaintiff's evidence suppression theory. Again, if Plaintiff chooses to use his limited time and resources chasing that particular theory, it is up to him, and the Court will not stand in his way.

As to the open files, the Court believes they should also be produced. Although the likely relevance of an open homicide investigation is arguably weaker than closed files, open files may still tend to show that witness coercion, improper identification procedures, and evidence were suppression were "a common practice that [was] so widespread and well settled as to constitute a custom or usage with the force of law," even in cases where a suspect was not convicted of the murder. *See Lawrence*, 391 F.3d at 844. As such, they are relevant materials, and the City has not made any argument that producing the open files along with the closed files will constitute an undue burden. Therefore, the open files must be produced. In sum, the City is ordered to produce all Area Five homicide files, including RD files, from 1989-1993.

## III.  CR FILES

The City is ordered to produce CR files for Area Five detectives from 1989-1993. The parties have stipulated that the CR files are relevant. The only issue before the Court is the appropriate burden on the City. The City seeks to limit the production to CR files from 1990-1993, and Plaintiff seeks files from 1987-1993. As above, the Court believes that five years (1989-1993) strikes the right balance between Plaintiff's need to have a large enough sample size to make meaningful analyses and the City's burden in producing CR files that are not maintained

electronically and require a fairly heavy lift to locate, review, and produce. As the CR files for 1991-1993 are already being produced in *Sierra*, the Court finds that two additional years of CR production would not be unduly burdensome. Therefore, the Court orders that the City produce all CR files of Area Five detectives from 1989-1993.

<u>**CONCLUSION**</u>

For the reasons discussed above, Plaintiff's Motion to Compel the Production of Complaint Register and Homicide Files [126] is granted in part and denied in part. Defendant City of Chicago is ordered to produce: 1) all Area Five homicide files, including Records Department files, for the years 1989-1993; and 2) all Complaint Register files for Area Five detectives for the years 1989-1993.

**ENTERED: 8/3/2020**

_____
U.S. Magistrate Judge, Susan E. Cox