**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARDO RODRIGUEZ, ) | |
| ) | Case No. 18-cv-07951 |
| Plaintiff, ) | |
| -vs- ) | |
| ) | |
| REYNALDO GUEVARA, et al., ) | |
| ) | |
| Defendants. ) | |
| ------------------------------ ) | |
| ROBERT BOUTO, ) | |
| ) | Case No. 19-cv-02441 |
| Plaintiff, ) | |
| -vs- ) | Chicago, Illinois |
| ) | September 22, 2021 |
| REYNALDO GUEVARA, et al., ) | 9:37 a.m. |
| Defendants. ) | |

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE SUSAN E. COX, MAGISTRATE JUDGE

TELEPHONIC APPEARANCES:

For the Plaintiffs:　　MR. RUSSELL R. AINSWORTH
　　　　　　　　　　　　MS. RACHEL E. BRADY
　　　　　　　　　　　　MS. RUTH Z. BROWN
　　　　　　　　　　　　Loevy & Loevy
　　　　　　　　　　　　311 N. Aberdeen Street, 3rd Floor
　　　　　　　　　　　　Chicago, IL  60607
　　　　　　　　　　　　(312) 243-5900
　　　　　　　　　　　　Russell@loevy.com
　　　　　　　　　　　　Brady@loevy.com
　　　　　　　　　　　　Ruth@loevy.com

**PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
NOTE:  USE OF A SPEAKERPHONE MAY MAKE PORTIONS
UNINTELLIGIBLE AND INAUDIBLE

Transcriber:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 1426
Chicago, Illinois  60604
Telephone:  (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

```
 1  APPEARANCES:  (Continued)

 2  For the Defendant
    Guevara:                    MR. MICHAEL J. SCHALKA
 3                              Leinenweber Baroni & Daffada, LLC
                                120 N. LaSalle Street, Suite 2000
 4                              Chicago, IL  60602
                                (312) 786-3705
 5                              Mjs@ilesq.com

 6  For Individual
    Defendants other
 7  Than Guevara:               MR. JOSH M. ENGQUIST
                                The Sotos Law Firm, P.C.
 8                              141 W. Jackson Boulevard
                                Suite 1240A
 9                              Chicago, IL  60604
                                (630) 735-3303
10                              Jengquist@jsotoslaw.com

11  For Defendant City
    Of Chicago:                 MS. EILEEN E. ROSEN
12                              Rock Fusco & Connelly, LLC
                                321 North Clark Street, Suite 2200
13                              Chicago, IL  60654
                                (312) 474-1000
14                              Erosen@rfclaw.com

15  For Defendant Hughes
    And Cook County
16  In Bouto case:              MR. EDWARD M. BRENER
                                Cook County State's Attorney
17                              50 W. Washington
                                5th Floor
18                              Chicago, IL  60602
                                (312) 603-5971
19                              Edward.brener@cookcountyil.gov

20

21

22

23

24

25
```


1  (Proceedings heard in open court:)
2          THE COURTROOM DEPUTY:  Case No. 18-cv-7951, Rodriguez
3  versus Guevara, and 19-cv-2441, Bouto versus Guevara.
4          THE COURT:  Good morning.  If you could state your
5  appearances, starting with the plaintiff, please --
6  plaintiffs.
7          MR. AINSWORTH:  Good morning, your Honor.  This is
8  Russell Ainsworth appearing on behalf of both Ricardo
9  Rodriguez and Robert Bouto.
10         MS. BRADY:  Good morning, your Honor.  This is Rachel
11 Brady appearing on behalf of plaintiff Ricardo Rodriguez.
12         MS. BROWN:  Good morning, your Honor.  Ruth Brown on
13 behalf of the plaintiff Robert Bouto.
14         MR. ENGQUIST:  Good morning, your Honor.  Josh
15 Engquist on behalf of in both cases the individual defendant
16 officers with the exception of Reynaldo Guevara.
17         THE COURT:  Good morning.
18         MR. SCHALKA:  Good morning, your Honor.  Michael
19 Schalka on behalf of Defendant Guevara.
20         MS. ROSEN:  Good morning, your Honor.  Eileen Rosen
21 on behalf of Defendant City of Chicago in both Bouto and
22 Rodriguez.
23         MR. BRENER:  Good morning, your Honor.  Edward Brener
24 on behalf of defendant Kevin Hughes and Cook County in the
25 Bouto matter only.

1  THE COURT: Have we got everybody? Okay.
2  All right. Well, I have in front of me the City's
3  motion for protective order, and I want to start with this.
4  I have told the plaintiffs on at least three
5  occasions that I do not allow responses to discovery motions
6  without leave of court, and yet, once again, at 11:00 in the
7  evening, you file a response. And I'm really struggling to
8  understand why you don't think these rules apply to you. So I
9  kind of want to start there.
10  MR. AINSWORTH: Your Honor, our apologies.
11  THE COURT: Well, I've heard your -- here's the
12  thing. I've heard your apologies before, but it doesn't seem
13  to ever make a difference. You just go ahead and do exactly
14  what it is you want to do.
15  MR. AINSWORTH: Your Honor, we -- we made a mistake.
16  We didn't replicate that in the Rodriguez case. Our apologies
17  to the Court.
18  It's a filing that we had drafted in several
19  different cases, and as a clerical matter, we started filing
20  them in some of those cases, and we realized that it should
21  not be filed in the Rodriguez case. We did not file it in the
22  Rodriguez case because of this Court's stated preference that
23  the Court has stated repeatedly.
24  We apologize for the -- you know, putting it on the
25  docket. It should not have been, and I hope that you can

1  understand that we were dealing with a number of cases, and we
2  got it wrong, and --
3      THE COURT: Well, I do understand, but, you know
4  what? Like I said, I've understood the previous three times
5  you've done this. If you do this again, I'm going to sanction
6  your law firm is what's going to happen monetarily because,
7  look, I understand you're dealing with a lot of cases. I'm
8  dealing with two of them myself, but I don't understand why I
9  should make continuing exemptions from the rules for that
10 reason.
11     MR. AINSWORTH: You shouldn't, Judge, you're right.
12     THE COURT: You know, here's the thing. The reason
13 the rule -- the reason the rule exists is so that I can guide
14 the briefing as to questions that I have, and, frankly, what
15 you filed doesn't help me with this dispute at all. It's not
16 particularly helpful in terms of deciding what to do here.
17     So -- but that's what you filed, so that filing will
18 stand, and we'll go from there.
19     I have a number of questions that I'd like to start
20 out with. The first is back when I agreed with the plaintiffs
21 over the City's objection not to bifurcate *Monell* discovery
22 from the individual discovery in this case, I did so because
23 the plaintiffs represented, really in no uncertain terms, that
24 the discovery that would be required to be produced by the
25 defendants on the *Monell* allegations would essentially be

1  duplicative and not really expand the scope of the discovery
2  in the case, and if you review my opinion in both the Bouto
3  case and the Rodriguez case, that's exactly what the Court
4  said.
5  　　　　　But what I'm seeing in this particular dispute is a
6  fairly big expansion of discovery, which frankly was preceded
7  by a fairly big expansion of discovery on the homicide files,
8  which the Court granted, over the City's objection, your
9  access to those files, but did so really worrying, frankly,
10  about how that was expanding the discovery in the case beyond
11  what you originally represented would happen.
12  　　　　　And now we're looking -- as I said, now we're looking
13  at an even bigger expansion, and I'm sort of struggling to
14  understand why the plaintiffs would have represented that the
15  discovery was duplicative when they moved to or they opposed
16  bifurcation when it clearly is not.
17  　　　　　MR. AINSWORTH: Your Honor, this is Russell Ainsworth
18  responding to that.
19  　　　　　So in the Bouto case and in Rodriguez, frankly, the
20  City is producing the same homicide files in -- from the
21  Maysonet case and the Sierra case that covers just about every
22  single homicide file that it's produced -- it's been ordered
23  to be produced in the Bouto case, so --
24  　　　　　THE COURT: But that's not what I'm talking about. I
25  mean, what you represented early on was what would be required

1  in this case what had already been produced in the two
2  previous cases that have been resolved. That's what you said.
3      I understand that the homicide files have been
4  produced in other cases. I know the date ranges are
5  different, but I understand that.
6      What I'm sort of questioning is the underlying
7  premise for my decision on bifurcation does not seem to be
8  true anymore.
9      MR. AINSWORTH: I'm -- I don't believe that we ever
10 represented that the discovery sought in Bouto would be the
11 same discovery --
12     THE COURT: Not the same, but substantially so.
13     MR. AINSWORTH: Well, we do -- there is a savings in
14 terms of the process and the procedure that was employed in
15 the Jacques case, and frankly, your Honor, the issue of the
16 burden is exacerbated because the City refused to stipulate
17 and --
18     THE COURT: You know what? Let's -- we're not going
19 into that right now. That's not what I want to talk about.
20     I am seriously considering, and I've discussed this
21 with at least one of the district judges in this case,
22 revisiting the bifurcation issue here.
23     MR. AINSWORTH: And, you know, the Court's orders are
24 always subject to --
25     THE COURT: It was without prejudice, both --

1     MR. AINSWORTH: Yeah, but I think it would be a
2  terrible idea here when we've gotten to the end of the road of
3  producing these homicide files from the City.
4     THE COURT: Except you're not nearly done. You're
5  not nearly done. How long is it going to take to get through
6  discovery, assuming, you know, we continue with these
7  expansive *Monell* allegations and the discovery you believe are
8  required to show those? What are we talking about? Because I
9  already saw that the deadline I've set is not going to be met.
10    MR. AINSWORTH: That's true. It's going to require
11 more time, and I'm not -- but you know --
12    THE COURT: Well, can you tell me how much time? I
13 mean, surely you guys have thought about it.
14    MR. AINSWORTH: Yes, Judge. So we -- I think the
15 homicide files will all be produced. The question is, you
16 know, we're going to be getting Public Defender files, and
17 those will take some time to be produced, and it will be on
18 the order of several months.
19    THE COURT: Well, I mean, I'm not sure -- I mean, are
20 you going to seek those Public Defender files in my two cases?
21 Because I'm not sure I'm going to allow you to do that.
22    MR. AINSWORTH: And so the Court might, you know --
23    THE COURT: Frankly, I'm not sure I understand why
24 what's in those files is particularly relevant.
25    MR. AINSWORTH: Well, we would need to compare what

the City has produced in its homicide files to ensure that the information in the -- you know, one of our theories is that the information in the homicide files that's exculpatory is not necessarily getting to the criminal defendant, and so --

THE COURT: Well, the *Brady* violation in the first instance is what Chicago police told the State's Attorneys, correct? So I mean, what --

MR. AINSWORTH: Right.

THE COURT: It's sort of circular in a way because there's no way that you can skip that intermediary step of the City having to look at what was produced to the State's Attorney. And it sounds like what's in the Public Defender files isn't necessarily -- they're not necessarily complete anyway. So it's not at all -- you can't draw the conclusion because something's not in that particular file that it was never disclosed to the State's Attorney and then to the Public Defender. I mean, that seems -- that seems to be kind of a loop to me.

MR. AINSWORTH: But that's certainly an inference that we can draw.

THE COURT: Well, you can draw whatever --

MR. AINSWORTH: Yeah.

THE COURT: -- you can argue whatever inference you want, but in the first instance, the Court has to decide whether the discovery is proportional and necessary to the

1    case, and I have serious doubts about that.

2       I mean, have you been able to establish in either the
3    Bouto case or the Rodriguez case that there was a *Brady*
4    violation with respect to them?

5       MR. AINSWORTH:  In, for example, in the Rodriguez
6    case, there is material, we have a witness who told
7    information to the officers at the scene.  That information
8    was never produced in any report to Mr. Rodriguez, and so --

9       THE COURT:  And is that in a Chicago police file?

10      MR. AINSWORTH:  It's not in Chicago police files.

11      THE COURT:  Hmm, okay.  So I'm not sure how that
12   really advances your argument with respect to these files.

13      MR. AINSWORTH:  Well, that's information that --

14      THE COURT:  Yeah, that shows that a witness may have
15   said something to the police that's not in the police file.
16   Okay.

17      MR. AINSWORTH:  Judge, in these cases, we've been
18   able to be successful to demonstrate that *Brady* evidence has
19   been withheld from the plaintiff, and this *Monell* piece, where
20   we are seeking files to be able to prove our claim, and the
21   Seventh Circuit has repeatedly said that plaintiffs should be
22   allowed to amass the evidence that they need to prove these
23   claims --

24      THE COURT:  No, look, I understand all that.  The
25   Seventh Circuit has also said the needs of the -- the

1  discovery needs to be proportional to the claims in the case,
2  and what I'm really struggling with is whether it really makes
3  sense, given what you are asking, assuming I even found it to
4  be appropriate -- and as I said, I have some serious questions
5  about that to begin with which I need to think through -- but
6  even assuming that -- so let's say I agree with you that some
7  of this production should be done.
8      Then I'm sort of questioning why -- whether it's
9  really the best way to go forward in this case to allow that
10 huge expansion of discovery, as opposed to just allowing the
11 individual cases to go forward, whether that's not a better
12 way to proceed here.  That's what the Court is really
13 struggling with because it just seems to me --
14      MR. AINSWORTH:  And I know --
15      THE COURT:  -- that what you originally represented
16 to me and what I relied on to overrule the City's objection to
17 bifurcation -- which, by the way, not all the judges have
18 ruled the way I have.  There's a split in our district as to
19 whether bifurcation is appropriate in these cases or not, but
20 the underlying rationale that drove my thinking was your
21 representations that this was not going to be a massive
22 expansion of discovery beyond what had been produced in other
23 cases, and I can find that in your briefs because I went back
24 and looked.
25      MR. AINSWORTH:  And --

1   THE COURT: I went back and looked, and I went back
2   and looked at my order, too. So that's what I'm kind of
3   struggling with. It's just -- it just seems --
4   MR. AINSWORTH: But, Judge --
5   THE COURT: Yes?
6   MR. AINSWORTH: I'm so sorry to interrupt, and I
7   don't mean to be disrespectful. I'm just wanting to let the
8   Court know that we -- the same files had been produced in
9   Maysonet and in Sierra, and so when we make the representation
10  that this is not an expansion of discovery beyond what's being
11  done in other cases, that is true.
12  The same files are being produced in Maysonet and
13  Sierra that cover the years that have been ordered to be
14  produced in Bouto, and that is a factually true statement.
15  And so I just have to push back against the suggestion that
16  we've misled the Court in any way about what we're doing or --
17  there is overlap between the cases, and that's why the burden
18  imposed on this particular case is lessened because it's being
19  spread out among nine or ten cases, and that includes --
20  THE COURT: Yeah --
21  MR. AINSWORTH: -- for example --
22  THE COURT: -- I think that the burden is on the same
23  entities. I mean, I'm not sure that really makes a lot of
24  sense.
25  But let me hear from the defendant. I'm not going to

1  rule on this today. I'm going to take it under advisement,
2  but I'd like to hear whatever thoughts or whatever response
3  you would like.
4      I mean, I'll allow you to file a reply to this
5  response, but I'd like to know some of your thoughts now.
6      MS. ROSEN: Sure, Judge. This is Eileen Rosen on
7  behalf of the City in both of those cases.
8      And I guess where I'll start with is the last
9  statement Mr. Ainsworth made about what has happened in the
10 other cases.
11     THE COURT: Uh-huh.
12     MS. ROSEN: And while it's true that the City already
13 has produced files in the Sierra matter that it does to the --
14 the City has produced its files, so the homicide files --
15     THE COURT: Right, right.
16     MS. ROSEN: -- for the years 1991 through 1995.
17     THE COURT: Uh-huh.
18     MS. ROSEN: Magistrate Judge Weisman just on Monday
19 or yesterday, the days are blending together a little for me
20 this week, but in any event this week granted the Cook County
21 Public Defender's motion to quash.
22     THE COURT: Yeah, I know.
23     MS. ROSEN: Okay. So those files are not already in
24 play.
25     And then with respect to the representation about

1  Maysonet, while Judge Rowland issued an order a month or two
2  ago ordering the City to produce its files, the City has not
3  produced any files yet and has filed this same motion in front
4  of Judge Rowland, and that's now been referred for briefing to
5  Magistrate Judge Valdez.

6  So, again, every judge -- the thing that this Court
7  has picked up on is that every judge in these set of cases
8  that has denied the City's motion to bifurcate has done it
9  based on that same representation that this is no big deal.

10  And so while it is true that in the Solache/Reyes
11  cases and the Sierra cases we were further along just by
12  timing and how far along when the cases were filed, and the
13  City has produced those files, those homicide files, we do not
14  yet in either of those cases have a single Cook County Public
15  Defender file or a single Cook County State's Attorney's
16  Office file.

17  And the point that you raised about the only possible
18  relevance to this endeavor on obtaining files from these other
19  entities is to prove the *Brady* claim that is tied to whether
20  or not police reports in police files were produced to either
21  the State's Attorney's Office --

22  THE COURT: Right.

23  MS. ROSEN: -- or the Cook County Public Defender.
24  As Mr. Ainsworth just conceded, there is no such document,
25  so --

1  THE COURT: Exactly. So it's not going to be in
2  either set of files.
3  MS. ROSEN: Correct. So if it's not in the police
4  file in the first instance, then what difference does it make
5  what's in the other files?
6  THE COURT: It makes absolutely no difference, as far
7  as I can see. It's a whole different kind of allegation.
8  MS. ROSEN: Correct, and that doesn't mean they can't
9  make that allegation --
10  THE COURT: No, exactly.
11  MS. ROSEN: -- but it's just different.
12  And so that's the City's point, and that's the thing
13  that caused the City to file this motion across all the cases
14  because as things progressed in Solache/Reyes and in Sierra,
15  as we made clear in our briefing, the burden now is not only
16  on the City, which the City is a party and the City
17  understands it has different obligations and the
18  proportionality cuts differently, but now we've moved -- it
19  has to necessarily, based on this theory, move to the other
20  entities, and it's proving unworkable.
21  THE COURT: Uh-huh.
22  MS. ROSEN: The Cook County Public Defender's Office
23  is buckling under the pressure of this discovery. The
24  subpoena that was issued in Sierra was issued in December of
25  2020 for 500 files -- 550 files, I think, and we don't have

1 any of those files, and then in March, they were -- a subpoena
2 issued to them in the Solache/Reyes matters for another
3 350-something files.
4 So we have been navigating that with both Magistrate
5 Judge Weisman and Magistrate Judge Harjani.
6 THE COURT: Yeah.
7 MS. ROSEN: And that's what prompted the City to file
8 this motion in an effort to bring it to all the -- each judge
9 that has already ruled on bifurcation to get (inaudible) to
10 deal with it in what we hope is a more efficient manner and
11 less burdensome and proportional to the case as well.
12 THE COURT: So have any of the other magistrate
13 judges ruled on the issue of the Public Defender files other
14 than Judge Weisman?
15 MS. ROSEN: Magistrate Judge Harjani, after multiple
16 hearings over the course of multiple months, ordered
17 plaintiffs to consult with an expert --
18 THE COURT: Right.
19 MS. ROSEN: -- to provide the smallest statistically
20 significant sample from the universe of found files.
21 THE COURT: Uh-huh.
22 MS. ROSEN: So in Solache/Reyes, the City produced
23 something like 300 -- oh, 344 files. The PD's office found
24 less -- found boxes for -- where files might be found in less
25 than half the cases, and now they have gone through the

1  process of opening all the boxes to find whatever files they
2  have, and what they have identified is I believe 105. And
3  Magistrate Harjani had ruled that the appropriate sample size
4  was 132, so he hasn't dealt with that disparity yet because
5  those files were just finally scanned and accounted for in the
6  last couple days.
7        THE COURT: And has the City then obtained the
8  corresponding files from the State's Attorney's Office?
9        MS. ROSEN: We have not yet. Magistrate Judge
10 Harjani ordered the City to issue a subpoena -- the City is
11 only interested in companion files, so companion files to the
12 found files.
13       THE COURT: Yes.
14       MS. ROSEN: But we were waiting because we wanted to
15 reduce the burden on the CCSAO. So we waited -- we were
16 waiting for a final list, which we now just have, right? It's
17 only in the last couple days that we now know what the found
18 files are, and then we will give that list to the CCSAO, who
19 has been all along pulling files, so that -- but they, too,
20 are objecting and will come in in the next cases, right,
21 because that timeframe, the Solache/Reyes timeframe, only
22 covers 1995 to 1998, and so your cases are much earlier in
23 time.
24       So there's no cost savings to those entities for
25 what are -- ultimately, because we filed this same motion in

1  front of Magistrate Judge Harjani, too, and he's taken it
2  under advisement.
3          THE COURT: Right.
4          MS. ROSEN: But assuming he doesn't change course
5  because of where we are in the process, and it's dwindled down
6  now to a hundred files, that doesn't help in either Bouto or
7  Rodriguez or any of the other -- quite frankly, Solache/Reyes
8  is the outlier. In terms of timeframe, it is the latest in
9  the series of Guevara cases.
10         So it's not helpful -- that discovery won't be
11 helpful to the cases that predate 199- (inaudible).
12         THE COURT: And so Magistrate Judge Weisman has this
13 under advisement as well?
14         MS. ROSEN: Well, he denied the City's motion for
15 protective order but then --
16         THE COURT: Quashed the --
17         MS. ROSEN: -- within a day quashed the subpoena --
18         THE COURT: Yes.
19         MS. ROSEN: -- and said we're not doing this and
20 you'll have to figure out a different way. So that -- we have
21 that written order, and then I also have the transcript.
22         THE COURT: Yeah, yeah, and the rest of the judges
23 haven't made any ruling.
24         MS. ROSEN: That is correct.
25         THE COURT: Okay.

1     All right. Well, I will -- I'm going to allow the
2 City to respond in writing to what the plaintiffs have filed.
3 I'll give you -- how long would you like?
4     MS. ROSEN: If we could just get until October 1st.
5     THE COURT: Sure.
6     MR. AINSWORTH: And, Judge, in Rodriguez, we haven't
7 filed a response. Can we file a response in Rodriguez?
8     THE COURT: I'll take this response that you filed in
9 all the other cases.
10    MR. AINSWORTH: Well, if the Court would like us to
11 address something --
12    THE COURT: No, I don't think so. I think you
13 forfeited that right, frankly, you know. You got a response,
14 we'll take your response. If there's something really
15 important that you think you have to respond to in the City's
16 reply to your response, well, you can approach me again, okay?
17    MR. AINSWORTH: All right.
18    THE COURT: Thank you.
19    MS. ROSEN: Thanks, Judge.
20    (Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital-recording system.

/s/Kathleen M. Fennell          September 22, 2021
_____         _____
Kathleen M. Fennell             Date
Official Court Reporter