1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
3                        EASTERN DIVISION

4    ROBERT BOUTO,                    )
                                      )
5                     Plaintiff,      )  Case No. 19-cv-2441
     -vs-                             )
6                                     )  Chicago, Illinois
     REYNALDO GUEVARA, et al.,        )  November 10, 2021
7                                     )  9:27 a.m.
                     Defendants.      )
8

9                   TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN E. COX, MAGISTRATE JUDGE
10
     TELEPHONIC APPEARANCES:
11
     For the Plaintiff:      MR. RUSSELL R. AINSWORTH
12                           Loevy & Loevy
                             311 N. Aberdeen Street
13                           3rd Floor
                             Chicago, IL  60607
14                           (312) 243-5900
                             E-mail:  Russell@loevy.com
15
     For the Defendant
16   Guevara:                MS. MEGAN KELLY McGRATH
                             Leinenweber Barone & Daffada, Ltd.
17                           120 North LaSalle Street
                             Suite 2000
18                           Chicago, IL 60602
                             (866) 786-3705
19                           E-mail: Megan.mcgrath@cookcountyil.gov
          **PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
20           NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
                PORTIONS UNINTELLIGIBLE AND INAUDIBLE
21   Transcriber:

22            KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                     Official Court Reporter
23                United States District Court
             219 South Dearborn Street, Suite 1426
24                Chicago, Illinois  60604
                  Telephone:  (312) 435-5569
25            Kathleen_Fennell@ilnd.uscourts.gov

1 | APPEARANCES:   (Continued)

2 | For Defendants Halvorsen,
3 | Pang, Pergande,
    | Maher and Marron:          MR. JOSH MICHAEL ENGQUIST
    |                            The Sotos Law Firm, P.C.
4 |                            141 W. Jackson Boulevard
    |                            Suite 1240A
5 |                            Chicago, IL  60604
    |                            (630) 735-3303
6 |                            E-mail: Jengquist@jsotoslaw.com

7 | For Defendants Hughes
    | And Cook County:           MR. EDWARD M. BRENER
8 |                            Cook County State's Attorney
    |                            Civil Litigation Bureau
9 |                            50 W. Washington Street
    |                            5th Floor
10 |                           Chicago, IL  60602
    |                            (312) 603-5971
11 |                           E-mail: Edward.brener@cookcountyil.gov

12 |                           MR. SEAN JOSEPH O'CALLAGHAN
    |                            O'Mara & O'Callaghan, LLC
13 |                           230 W. Monroe Street
    |                            Suite 2620
14 |                           Chicago, IL  60606
    |                            (312) 600-5588
15 |                           E-mail: Sean.ocallaghan@ogolawyers.com

16 | For Defendant City
    | Of Chicago:                MS. EILEEN ELLEN ROSEN
17 |                           Rock Fusco & Connelly, LLC
    |                            321 North Clark Street
18 |                           Suite 2200
    |                            Chicago, IL  60654
19 |                            (312) 474-1000
    |                            E-mail: Erosen@rfclaw.com

20 |

21 |

22 |

23 |

24 |

25 |

1    (Proceedings heard in open court:)

2         THE COURTROOM DEPUTY:  If you're not speaking, please

3    mute your phone.

4         Case 19-cv-2441, Bouto versus Guevara, et al.

5         THE COURT:  Good morning.  If you could state your

6    appearances, starting with the plaintiff, please.

7         MR. AINSWORTH:  Good morning, your Honor.  This is

8    Russell Ainsworth, appearing on behalf of the plaintiffs.

9         THE COURT:  Good morning.

10         MR. ENGQUIST:  Good morning, your Honor.  Josh

11    Engquist on behalf of defendants Halvorsen, Pang, Pergande,

12    Maher and Marron.

13         THE COURT:  Good morning.

14         MS. McGRATH:  Good morning, your Honor.  Megan

15    McGrath on behalf of defendant Guevara.

16         THE COURT:  Good morning.

17         MR. BRENER:  Good morning, your Honor.

18         MR. O'CALLAGHAN:  Good morning, your Honor.

19         MR. BRENER:  Sorry.

20         Edward Brener on behalf of Kevin Hughes and Cook

21    County.

22         THE COURT:  Good morning.

23         MR. O'CALLAGHAN:  And good morning, your Honor.  Sean

24    O'Callaghan on behalf of Kevin Hughes and Cook County.

25         THE COURT:  Good morning to you.

1          MS. ROSEN:  Good morning, your Honor.  Eileen Rosen
2   on behalf of defendant City of Chicago.
3          THE COURT:  Good morning to you as well.
4          So as I take it, this motion only pertains to
5   non-*Monell* fact discovery, correct?
6          MR. ENGQUIST:  Yes, your Honor.
7          THE COURT:  Okay.  So let me just -- indulge me for a
8   minute.
9          Assuming we get through the next 45 days or what have
10  you, should the Court grant the City's motion for protective
11  order which is currently in front of me, what would the rest
12  of *Monell* discovery look like?
13         MR. AINSWORTH:  Your Honor, this is Russell Ainsworth
14  speaking on behalf of the plaintiff.
15         THE COURT:  Uh-huh.
16         MR. AINSWORTH:  So what we have is we have the -- for
17  *Monell*, there's a number of claims that we can pursue with the
18  discovery we have to date --
19         THE COURT:  Mm-hmm.
20         MR. AINSWORTH:  -- like a failure to discipline --
21         THE COURT:  Mm-hmm.
22         MR. AINSWORTH:  -- or train based on the CR files
23  that have been produced.
24         THE COURT:  Yeah.
25         MR. AINSWORTH:  We also -- we could also ask the

1    Court to order the parties to, you know, as Judge Ellis did

2    yesterday in the Johnson case, to use the files that were

3    produced in the Reyes case as the sample of files for

4    plaintiff's *Brady* claim and not require any additional

5    discovery to be produced.

6            THE COURT:  Mm-hmm.

7            MR. AINSWORTH:  And thirdly, we would ask for a

8    30(b)(6) deponent, and the parties among the various Guevara

9    cases are negotiating the scope of that 30(b)(6) --

10           THE COURT:  Mm-hmm.

11           MR. AINSWORTH:  -- deponent so that it's not being

12    duplicated in other cases.  We're happy to, you know, have one

13    deponent or how many ever deponents the City produces be used

14    for each of the cases and not, you know, re-do it.

15          And then lastly, if the -- the City has produced, for

16    the homicide files, was ordered back in August of 2020 to

17    produce five years.  The City -- from '89 to '93.  The City

18    has produced in Sierra files from '91 to '93 of the closed

19    homicide files, and so if the City would simply produce the

20    remaining two years, the '89 to '90, and the open files from

21    '91 to '93, we wouldn't require any additional discovery for

22    *Monell* purposes whatsoever.

23           THE COURT:  Okay.  And would the defendants care to

24    comment on any of that?

25           MS. ROSEN:  Sure, Judge.

1          I guess I would agree that the CR files have already
2    been produced.
3          THE COURT:  Mm-hmm.
4          MS. ROSEN:  So then the only thing that would be left
5    is to the extent that plaintiff wants a 30(b)(6) witness from
6    the City, obviously the City would do that.  There would be
7    whatever expert discovery that's tied to that.
8          THE COURT:  Mm-hmm.
9          MS. ROSEN:  With respect to the Reyes files, the City
10   is objecting to the Reyes files in Reyes in terms of whether
11   or not they're statistically significant, but -- and it is
12   true that Judge Ellis ordered them to be relied on -- ordered
13   them to be produced in the Johnson case but did not force the
14   City to stipulate to their statistical significance or
15   anything like that.
16         Judge Ellis, though, also said that then that would
17   stop only additional production by the --
18         THE COURT:  Mm-hmm.
19         MS. ROSEN:  -- City of Chicago of any additional
20   files --
21         THE COURT:  Mm-hmm.
22         MS. ROSEN:  -- because if we're using Reyes, which
23   sometime in January we will have the CCSAO files --
24         THE COURT:  Mm-hmm.
25         MS. ROSEN:  -- that would be the full set.  So CPD

1  files, Cook County Public Defender files, Cook County State's

2  Attorney Office files.  Then there's -- if that's -- if

3  plaintiff is content with that, then there's no reason for the

4  City to be producing more files because then we're back in the

5  same predicament.  We have to get CPD files -- CCPD files

6  and --

7              THE COURT:  Mm-hmm, yeah.

8              MS. ROSEN:  -- CCSAO files.

9              THE COURT:  So what was the motion in front of Judge

10  Ellis in which she issued this ruling?

11             MS. ROSEN:  It's the same motion that was in front

12  of -- is in front of you, Judge.

13             THE COURT:  It's the motion for protective order.

14             MS. ROSEN:  Correct.

15             THE COURT:  And so basically what she's saying is you

16  already have the Reyes files, I'm not going to allow you to

17  obtain any additional files, and left open the question of

18  whether the number of files that were produced in Reyes is

19  statistically significant to establish a *Brady* violation, is

20  that the sum of it?

21             MS. ROSEN:  To establish a *Monell* claim based on the

22  street files *Brady* violation claim, yes.

23             THE COURT:  I'm sorry.  I missed the first part of

24  what you said.

25             MS. ROSEN:  Sure.  She left open the question of

1    whether or not the Reyes files would be statistically
2    significant to prove a *Monell* claim --
3              THE COURT:  Yeah.
4              MS. ROSEN:  -- based on a *Brady* street file claim.
5              THE COURT:  Yeah, that's -- that's what I meant.  I
6    mean, I think that's what I thought I was saying, but maybe
7    not.
8              So essentially she granted your motion.
9              MS. ROSEN:  Correct.  We did not ask for the relief
10   of simply using the Reyes files, but that's how she disposed
11   of the motion.
12             THE COURT:  Mm-hmm, mm-hmm, mm-hmm.
13             But, you know, I thought that last time we were
14   together that the defendants didn't believe that those --
15   there was some -- there was some issue with the timeframe that
16   you talked about.
17             MS. ROSEN:  Correct, Judge, and we still have that
18   issue, and we explained that to Judge Ellis.  There's the same
19   problem in the Johnson case.  That's a '91 case, and the Reyes
20   files are '95 to '98.
21             THE COURT:  Mm-hmm.
22             MS. ROSEN:  So she simply said, well, you know, for
23   whatever her reasons were, that we're just going to use the
24   Reyes files because plaintiff was saying they're good enough.
25             THE COURT:  Mm-hmm.

1    MS. ROSEN:  And from the City's perspective, we don't
2  think they are good enough, but she said, well, then you can
3  bring it to me on summary judgment.
4    THE COURT:  So she basically punted on that part of
5  the issue.
6    MS. ROSEN:  I'm sorry, I didn't hear you.
7    THE COURT:  She basically punted on that part of it,
8  you know.
9    MS. ROSEN:  That's correct, Judge, yes.
10   THE COURT:  And isn't it true basically in any of
11  these cases, I mean, the plaintiffs have those files or will
12  have, I don't know what the state is, I guess.  Are they
13  actually in their possession?
14   MS. ROSEN:  So right now, the parties have the CPD
15  files --
16   THE COURT:  Mm-hmm.
17   MS. ROSEN:  -- and the Cook County Public Defender
18  files.  The State's Attorney's Office files are ordered to be
19  produced in the first or second week of January.  I don't
20  recall precisely.
21   THE COURT:  Okay, okay.
22   MS. ROSEN:  And I will say, Judge, that Magistrate
23  Judge Harjani -- the City also filed the motion for protective
24  order in front of Magistrate Judge Harjani, and he hasn't
25  ruled yet.  This production has been going along, and he

1  didn't want it held up by the City's motion, but I suppose

2  there is a chance that he could grant the motion, and then I

3  don't know what that would do to the -- how that would impact

4  it, but we can --

5  THE COURT:  Well, that motion is currently pending in

6  front of him, in front of me, in front of Judge Valdez,

7  correct?

8  MS. ROSEN:  That's correct.

9  THE COURT:  And Judge Weisman?

10  MS. ROSEN:  Judge Weisman denied the motion --

11  THE COURT:  Yeah.

12  MS. ROSEN:  -- but he's also trying to figure out

13  some manner in which to deal with the *Monell* claim.  He also

14  granted the Cook County Public Defender's Office --

15  THE COURT:  Right.

16  MS. ROSEN:  -- motion to quash the subpoena.

17  THE COURT:  Right, yeah.  I'm aware of that.

18  MS. ROSEN:  Yes.

19  THE COURT:  So what is he still dealing with then?

20  MS. ROSEN:  So he had the parties submit position

21  papers last week regarding proposals to proceed on the *Monell*

22  claim.  In those position papers, plaintiff articulated a --

23  two options:  That the City should simply stipulate to the

24  Reyes files, which the City is saying they won't --

25  THE COURT:  Right.

1    MS. ROSEN:  -- or Magistrate Judge Weisman could

2  order the production of the Reyes files.

3    THE COURT:  Mm-hmm.

4    MS. ROSEN:  The City's position is there's no need

5  for the -- for the Court to order it.  If plaintiff wants to

6  simply produce the Reyes files in the other cases, they can.

7  They produce documents back and forth across all the cases all

8  the time to the tune of --

9    THE COURT:  Right --

10   MS. ROSEN:  -- a couple hundred thousand pages of

11 documents --

12   THE COURT:  Mm-hmm.

13   MS. ROSEN:  -- so obviously there's some protective

14 order issues, but that really wouldn't stop the reproduction

15 of these files across the cases if that's what they wanted to

16 do.

17   THE COURT:  Mm-hmm.

18   MS. ROSEN:  And then there would be no court order

19 that, you know, put some kind of validation on the files.  And

20 certainly then the City could preserve all of its objections

21 to the files.

22   THE COURT:  Uh-huh.

23   MS. ROSEN:  And then the City's other proposal was

24 that in Sierra, plaintiffs actually have the Chicago files,

25 the CPD files, and so to the extent that there's *Brady*

1  material in there that they think wasn't produced, they could
2  do targeted discovery.

3          THE COURT:  Mm-hmm.

4          MS. ROSEN:  Plaintiffs are objecting to that and
5  saying it's unworkable, but -- so that's what Magistrate Judge
6  Weisman is dealing with.  I think we're back in front of him
7  next week.

8          THE COURT:  Mm-hmm.  Okay.

9          All right.  Well, thank you.  Thank you for that.

10          On the request for an extension, I think there's been
11  enough happening in this case to justify a 45-day extension,
12  and I'm not going to -- I'm not going to say, you know, it's
13  45 days, and, you know, that's it no matter what happens
14  because it seems to me, you know, having spent more than a
15  little time on these cases, that things are fairly fluid,
16  especially when you're talking about litigation across --
17  discovery across cases.

18          And I just think that the parties have had -- have
19  been pulled off of the individual discovery dealing with all
20  of these other *Monell*-related issues, and it just -- and given
21  sort of the fluidity of things, I think it would be foolish
22  for me to say, okay, you have this amount of time and after
23  that, no matter what happens, and there's a lot of things that
24  could happen, you're done.  I'm not inclined to do that.  I'm
25  very rarely inclined to do that, and I'm definitely not

1    inclined to do that here.

2          So I'm going to grant the extension, which takes us

3    to the end -- basically December 20th and, you know, we'll see

4    where that -- we'll see where that gets us.

5          And I will issue my ruling on the protective order, I

6    hope, fairly soon, okay?

7          MS. ROSEN:  Thank you.

8          MR. AINSWORTH:  Your Honor --

9          THE COURT:  Yeah.

10         MR. AINSWORTH:  -- this is Russell Ainsworth.

11         THE COURT:  Mm-hmm.

12         MR. AINSWORTH:  May I make one comment --

13         THE COURT:  Sure.

14         MR. AINSWORTH:  -- in regards to Ms. Rosen's

15   statement?

16         Ms. Rosen is, I think, in her statements focused on

17   the *Brady Monell* claim, and I just want to alert the Court

18   that plaintiff has other *Monell* claims --

19         THE COURT:  Yeah, you already --

20         MR. AINSWORTH:  -- identification procedures.

21         THE COURT:  Yeah, you already said that, right?  I

22   mean, you said there's a failure to discipline, failure to

23   train.

24         MR. AINSWORTH:  Right, but --

25         THE COURT:  I mean, what I was trying to get -- what

1  I was trying to get from you is what I've tried to get without

2  success many times from the plaintiff here is what timeframe

3  do you think that that discovery will take?  And I've never

4  yet heard that.

5          MR. AINSWORTH:  Let me address that, your Honor.

6          THE COURT:  Well, that's what I asked you to address

7  initially actually, but go ahead.

8          MR. AINSWORTH:  I'm sorry, your Honor.  I didn't hear

9  you were asking for a timeframe, but I would like to address

10  the Court's concerns, and what we're asking for is if the City

11  would produce the *Monell* -- the homicide files, which we

12  estimate to be about 275 files remaining, we expect the City

13  could do that in less than 60 days based on the fact that in

14  the Velez case before Judge Cole, the City produced over 800

15  homicide files in four months, and in that case, they had to

16  redact a number of medical information, which, in this case,

17  they wouldn't have to do under the Court's protective order.

18          And we would not require any Cook County Public

19  Defender files or any Cook County State's Attorney's files or

20  any files from any other entity in order to pursue and, you

21  know, present our claims on eyewitness procedures based solely

22  on the homicide files that the City has in its possession that

23  were ordered to be produced in August of 2020.

24          THE COURT:  Uh-huh.

25          MR. AINSWORTH:  And their Rule 72 objection was

1    overruled in September of 2020, and they still haven't been
2    produced.
3          And so I'm -- what I'm saying to the Court is those
4    files can be produced in I would expect 45 days --
5          THE COURT:  Mm-hmm.
6          MR. AINSWORTH:  -- 60 days at the outside, and we
7    will copy them.  Like we'll scan them if that --
8          THE COURT:  I get it.  What else -- okay, so
9    assuming --
10          MR. AINSWORTH:  That's it.
11          THE COURT:  -- that that happens, that's it?  Okay.
12          MR. AINSWORTH:  That's it, and the 30(b)(6)
13    deposition which has been coordinated --
14          THE COURT:  Yeah.
15          MR. AINSWORTH:  -- that's all we're -- that's all we
16    have.  That's the timeframe.  You know, it can be done in that
17    timeframe.
18          THE COURT:  Ms. Rosen?
19          MS. ROSEN:  Yeah, if I could just address that.
20          So, first of all, I'm happy that Mr. Ainsworth can
21    estimate how long it will take the Chicago Police Department
22    to do the production, but --
23          THE COURT:  Well, I just multiplied that by two in my
24    head, so --
25          MS. ROSEN:  Okay, great.  I appreciate that.

1    THE COURT:  Well, I'm not doing you any favors.  I

2  just know, I've been doing this job now for 14 years, and I

3  know that it never -- when it comes to the Chicago Police

4  Department, nothing ever happens quickly.

5    MS. ROSEN:  I agree, Judge.  I also have been doing

6  this a long time and know my client pretty well.

7    THE COURT:  Yeah.

8    MS. ROSEN:  So with respect to the production, so

9  obviously it's not going to take 45 days, but separate and

10  apart from that, plaintiff is asking for more files from the

11  Chicago Police Department, which is different than what Judge

12  Ellis ordered yesterday.  It's different than what Magistrate

13  Judge Weisman is contemplating.

14    But if that's what plaintiff is pursuing, then we

15  need to defend on those files, so, okay, I'm happy to hear, I

16  guess, that plaintiff isn't going to pursue the CPD -- the

17  Cook County Public Defender files and isn't going to

18  produce -- pursue the CCSAO files, but the City might,

19  depending on what it is that plaintiff thinks he's going to be

20  doing with those files.

21    So, you know, this is the first I've sort of heard of

22  now this new hybrid approach about we'll rely on the Reyes

23  files for some part of the *Monell* claim but we still want the

24  CPD files, which then doesn't obviously cure all of the issues

25  raised by the City's motion.

1          So it's not clear to me that that ends it on the

2   *Monell* front if the City's ordered to produce more files.

3          THE COURT:  Well, I heard him to be saying, and maybe

4   I'm just misunderstanding, that the files that he's talking

5   about are the files that were already ordered to be produced

6   over your objection.

7          MS. ROSEN:  Right, Judge, and then that's what

8   precipitated the motion for protective order, right?

9          THE COURT:  Right, right.

10         MS. ROSEN:  So, yeah.  So, but the proposal had been

11  to -- the proposal on the plaintiff's side -- you know, and

12  part of this is complicated by I'm having different

13  conversations with different lawyers at Loevy and Loevy --

14         THE COURT:  Yeah.

15         MS. ROSEN:  -- on this issue, so maybe they all have

16  a different take on this.  I don't know.  But the idea had

17  been that the City would stipulate to the Reyes files.  So now

18  what we're talking about is the Reyes files plus.

19         And so with, I guess, a representation by Mr. Bouto's

20  counsel or Mr. Bouto here that they still want the remaining

21  four years of files or three years of files or whatever it is

22  in this particular case, but they're making a commitment not

23  to obtain the PD files or the CCSAO files.

24         All I'm saying is that the City isn't necessarily

25  content with that.  We might need those files to defend.

1    MR. AINSWORTH:  May I respond, your Honor?

2    THE COURT:  Briefly.  I've got something else I need

3 to take up.

4    MR. AINSWORTH:  Just that if the City wanted to have

5 other files to defend itself --

6    THE COURT:  Mm-hmm.

7    MR. AINSWORTH:  -- they knew in September of 2020 we

8 were seeking these, and we are not -- the claims that we're

9 pursuing is about the eyewitness identifications, which is

10 based on the documents in the homicide files themselves and

11 not having anything to do with outside entities or whether

12 documents were produced to the Public Defender or withheld

13 from plaintiff or the defendants in those cases.  It's not a

14 *Brady* theory.

15    THE COURT:  Well, in this case at our last hearing,

16 you identified the only *Brady* violation to be, you know, on

17 the part of the police failing to include in their file

18 contrary eyewitness and other testimony that would tend to

19 exonerate your client, correct?

20    MR. AINSWORTH:  Yeah, I believe that's correct based

21 on what I was saying then.

22    The only other thing I can think of in the Bouto

23 case, and I think I was talking about the Rodriguez case at

24 the last hearing, was -- in addition to that was the

25 photographs that were shown to witnesses at the police station

1   before the lineup.  Those photographs were never produced, so

2   they existed, they were withheld from the file, and that

3   prevented Mr. Bouto from being able to show that the witnesses

4   saw photos of him --

5           THE COURT:  Right, I understand.

6           MR. AINSWORTH:  -- before the lineup.

7           THE COURT:  But neither of those things has anything

8   to do with the Public Defender or the State's Attorney.  I

9   mean, essentially what you're saying is that the police on the

10  front end failed to include information that had it been in

11  the file, and, you know, been basically moved through the

12  process to defense counsel would have helped your client,

13  right?

14          MR. AINSWORTH:  Yes.  They removed it in the front

15  end, that's correct.

16          THE COURT:  They removed it in the first instance.

17          MR. AINSWORTH:  Yes.

18          THE COURT:  Okay.  So really in this case to prove --

19  in Bouto to prove a *Monell* violation, you really -- the

20  State's Attorney's files and the Public Defender's files are

21  essentially irrelevant to you.

22          MR. AINSWORTH:  I disagree, and this is only on the

23  *Brady* claim, the *Brady Monell* theory.

24          THE COURT:  Right.

25          MR. AINSWORTH:  And on the *Brady Monell* theory, if we

1   can demonstrate, as we've done in Jacques Rivera and other

2   cases, that there is a systematic suppression of evidence from

3   the Chicago --

4           THE COURT:  But you're not -- no, but the violation

5   in this case, the individual violation is completely

6   different.

7           MR. AINSWORTH:  Whether it's on the -- whether it's

8   something that was withheld from the file on the front end or

9   was -- remained in the file and then was produced to the --

10  only portions were produced to the prosecution, it's still a

11  *Brady* violation --

12          THE COURT:  It might be, it might be, but you haven't

13  sufficiently in this case alleged that to be the case.

14          MR. AINSWORTH:  I think we have.  We've said that

15  there's a *Brady* violation --

16          THE COURT:  No, I've looked at your complaint.

17  You have an incredibly broad *Brady* claim, I get it.  But the

18  claim that you're litigating here from which you're trying to

19  extrapolate a custom and practice is very specific.  It's

20  essentially the police covered up eyewitness testimony, and

21  the police also didn't -- I think I'm hearing you say, you

22  know, screwed around with the lineup in a way that prejudiced

23  your client.

24          That is a very specific *Brady* violation if, in fact,

25  that's the case, but it has nothing to do with any of the

1    other stuff.

2         MR. AINSWORTH:  They withheld documents from the

3    file.

4         THE COURT:  You have to -- you have to actually

5    litigate the case that you're in.  I mean --

6         MR. AINSWORTH:  But that's what we are.  With all

7    respect, we are litigating a case where they withheld

8    documents from the file.

9         THE COURT:  No, from the police --

10        MR. AINSWORTH:  That's what *Brady* means, they

11   withheld documents from the file.

12        THE COURT:  No, the -- what you're -- what you're

13   talking about here is the police suppressed the evidence.  In

14   other words, the police file didn't include this.  So even if

15   it had been transmitted to the State's Attorney and the Public

16   Defender, it wouldn't have mattered because it was left out --

17        MR. AINSWORTH:  But that's what happens in --

18        THE COURT:  Hold on.  It was left out in the first

19   place, correct?

20        MR. AINSWORTH:  It was left out in the first place,

21   correct.

22        THE COURT:  Okay.  All right.  Then --

23        MR. AINSWORTH:  It's a *Brady* violation.

24        THE COURT:  Well, right, but it's not a *Brady*

25   violation that has anything to do with these other files --

1    MR. AINSWORTH:  It does though because if the other

2    files show that documents were withheld by the police in other

3    instances, that proves not only that was the practice --

4    THE COURT:  But that would be -- but that would be

5    clear from the police files.  It's a completely different --

6    MR. AINSWORTH:  It wouldn't necessarily --

7    THE COURT:  It's a completely different *Brady*

8    violation to say that something that was in the police files

9    didn't get disclosed to the State's Attorney and then the

10   Public Defender than what you are alleging in this case

11   happened.

12   MR. AINSWORTH:  That's not true.  We are saying that

13   there are photographs that were withheld from the police file

14   that was produced to the prosecution, and that -- those

15   photographs were part of the file, but they selectively sent

16   part of the file to the prosecution that did not include the

17   photographs.  That's withholding of evidence.  That's *Brady* --

18   THE COURT:  I get that.  But what would -- but what

19   would the -- I'm trying to understand -- we're getting -- I

20   think we're getting too far afield here.

21   MR. AINSWORTH:  I'm happy to file a response on this

22   issue.

23   THE COURT:  No, I'm not going to allow you to file a

24   response.  There's been enough paper in this case already, and

25   I've got to tell you, part of the problem is that you're

1   litigating these issues across several different -- it's not

2   this is just the way it is, but across many courtrooms, and --

3   which complicates things, I think, considerably.

4           And I always -- you know, in this case, I always go

5   back to the first -- the first thing, you know, that happened

6   here, which was that I bifurcated the *Monell* claim thinking --

7   thinking based on your representation that it wouldn't create

8   a huge amount of additional discovery from what had already

9   been produced in another case, which is what you said.  And we

10  went back and looked at the pleadings, so I don't want to get

11  in an argument about this.

12          So in any event, the motion here is granted, and

13  non-*Monell* discovery will be extended to December 20th.

14          Thanks everybody.

15          MS. ROSEN:  Thanks, Judge.

16          MR. ENGQUIST:  Thank you, your Honor.

17          MR. AINSWORTH:  Thank you, Judge.

18          MS. McGRATH:  Thank you, your Honor.

19      (Which were all the proceedings heard.)

20                          CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the digital recording of proceedings in the above-entitled
22  matter to the best of my ability, given the limitations of
    using a digital-recording system.
23
    /s/Kathleen M. Fennell              November 11, 2021
24  _____        _____
    Kathleen M. Fennell                      Date
25  Official Court Reporter