UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICARDO BOUTO,                         )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          Case No: 19-cv-2441
                                       )          Judge John F. Kness
                                       )          Magistrate Judge Susan E. Cox
REYNALDO GUEVARA, *et al.*,             )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

Defendant City of Chicago's Motion for Protective Order [252] is granted.[1]  The parties

are ordered to file an updated joint status report regarding the status of fact discovery on December

21, 2021.

## BACKGROUND

Plaintiff Ricardo Bouto brings this case pursuant to, *inter alia*, 42 U.S.C. § 1983, alleging

that several Chicago Police officers, including Defendants Reynaldo Guevara and Ernest

Halvorsen, framed him for murder in 1993, leading to his wrongful conviction and incarceration.

The main thrust of Plaintiff's Third Amended Complaint (the "Complaint") is that Defendants

violated his constitutional rights by coercing false statements from a jailhouse informant claiming

that Plaintiff confessed to the murder and using suggestive line-up tactics that tainted witnesses'

identification of Plaintiff. [Dkt. 256 at ¶¶ 57-88, 108-220.]  Plaintiff also claims that Defendants

violated his due process rights by suppressing or withholding exculpatory evidence in violation of

*Brady v. Maryland*, 373 U.S. 83 (1963).  Plaintiff's Complaint also seeks to prove municipal

---

[1] The Court is simultaneously entering an order on the identical motion in *Rodriguez v. Guevara*, 18-cv-7951 (N.D.
Ill.)  Given the identical nature of the motions and the similarities of the allegations in *Rodriguez* and the instant
case, there is significant overlap in the substance of the two opinions.

1

liability against the City of Chicago (the "City), alleging "employees and agents of the Chicago Police Department, including Defendants in particular, regularly failed to disclose exculpatory evidence to criminal defendants, fabricated false evidence implicating criminal defendants in criminal conduct, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process." [Dkt. 256 at ¶ 414.] These alleged violations "were so well-settled as to constitute the *de facto* policy of the Chicago Police Department, [and] were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it." [*Id.* at ¶ 416.]

For the purposes of the instant motion, the Court must carefully examine the precise nature of the potentially exculpatory evidence and the manner of its alleged suppression to determine the contours of Plaintiff's individual *Brady* claims and any *Monell* violations that might flow therefrom; those contours will determine the proper scope of discovery. Regarding the nature of the evidence Defendants allegedly suppressed, Plaintiff claims that Defendants: 1) "withheld and suppressed their contemporaneous documentation of exculpatory witness statements and other identification procedures conducted during the . . . homicide investigation;" 2) withheld and suppressed documentation that Plaintiff was a witness to a misconduct investigation involving some of the Defendant officers; 3) omitted from their police reports that they had removed the battery from Plaintiff's beeper when he offered to retrieve his alibi witness's phone number, thereby erasing the number from the beeper; 4) denied Plaintiff's requests for a gunshot residue test and a polygraph examination, and then "intentionally declin[ed] to document [Plaintiff's] requests for testing;" 5) failed to document any attempts to locate alibi witnesses after Assistant State's Attorney Sally Bray directed Defendants Guevara and Halvorsen to do so; and 6) "withheld documentation of their actions to coerce [the jailhouse informant] to acquiesce to the scheme,

2

including their supplying him with details of the crime, to keep such exculpatory information from [Plaintiff's] defense." [*Id*. at ¶¶ 89-107, 119, 146.]

That is the type of evidence Defendants allegedly suppressed or withheld, but the manner of that suppression is also crucial to determining the nature of the alleged *Brady* violation. On that issue, Plaintiff alleges as follows:

> At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. **As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants**, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file.

(*Id.* at ¶ 357 (emphasis added).)

This secret "street file" scheme constitutes both the alleged *Brady* violation and the basis for the accompanying *Monell* violation, as Plaintiff reiterates in the next paragraph: "[c]onsistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, concealed exculpatory evidence from Plaintiff." [*Id.* at ¶ 358.] In the claim for a *Brady* violation in his Complaint, Plaintiff states "the Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from the prosecution, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff." [*Id.* at ¶ 383.]

This is one of several cases that are being (or have been) litigated against Defendants Guevara and Halvorsen, as well as several other Chicago Police Department officers, for similar alleged constitutional violations, and an identical version of the instant motion has been filed in all

cases currently pending in this district.[2]  Plaintiff in this suit is represented by the same firm as the vast majority of the plaintiffs in those other similar cases.  As part of the discovery in these suits, several courts (including this Court) ordered the City to produce years of Area Five homicide files and Complaint Register files.  [*See, e.g.*, Dkt. 153.]  Upon receiving the homicide files in two of the other cases, those plaintiffs served subpoenas on the Cook County Public Defender's Office (the "CCPDO") "for all its files related to the prosecution of the criminal defendants charged with the homicides identified in the City files."  [Dkt. 252 at 5.]  Plaintiff maintains that the CCPDO files are necessary to prove his claim that the City had a policy or practice of suppressing exculpatory evidence by comparing the City's homicide files against the CCPDO files to demonstrate that supposedly exculpatory evidence contained in the homicide files was not in the CCPDO files.  For its part, the City notes that this plan would also require it to subpoena the Cook County State's Attorney's Office (the "CCSAO") to ensure that any missing evidence was not the result of an issue between the CCSAO and the CCPDO rather than the City.  [Dkt. 252 at 6.]

This extreme expansion of *Monell* discovery comes as quite a shock to the Court.  In its brief in opposition to the City's motion to bifurcate *Monell* discovery, Plaintiff assured the Court that two similar cases that had been tried before a jury had "already necessitated thorough discovery on the City's written policies and training materials as well as materials required for an 'in depth analysis of street files claims from 1983-1991 and 1999-2006,' including a large sample of Area 5 homicide files from 1985-1991."  [Dkt. 85 at 19.]  The Court found that argument persuasive in denying the City's motion to bifurcate, ruling:

> This is not the first case in which this discovery has been produced.
> As noted, it is one of several cases alleging the same pattern and
> practice of fabricating incriminating evidence and hiding

---

[2] The other cases include: *De-Leon-Reyes v. Guevara* (18-cv-1028); *Solache v City of Chicago* (18-cv-2312); *Maysonet v. Guevara* (18-cv-2342); *Sierra v. Guevara* (18-cv-3029); *Gomez v. Guevara* (18-cv-3335); *Rodriguez v. Guevara* (18-cv-7951); *Iglesias v. Guevara* (19-cv-6508); and *Johnson v. Guevara* (20-cv-4156).

exonerating evidence against a similar group of Chicago Police Officers that is currently being litigated in several courts in the Northern District of Illinois. At least one of these cases, *Rivera*, has already been tried to a jury, and gone through *Monell* discovery. As such, much of the discovery on *Monell* liability has already been done by the City at least once, and it will not need to expend significant time or resources to complete it.

[Dkt. 105 at 2-3 (quoting *Rodriguez v. City of Chicago*, 2019 WL 4278501, 18-cv-7951, at *2 (N.D. Ill. Sept. 10, 2019)).]

Considering the discovery Plaintiff now seeks, the Court wonders whether Plaintiff's prior statements regarding bifurcation were misrepresentations or simply belied a fundamental misunderstanding of how counsel planned to litigate this case. In either case, the Court's reasoning for its refusal to bifurcate no longer holds. At this late stage, it makes little sense to revisit that decision now. But the Court also is mindful of its obligation to advance this case to its conclusion without unnecessarily expanding *Monell* discovery beyond what is relevant to the allegations in this case. The City has now filed the instant motion for protective order seeking a finding that the aforementioned third-party discovery from the CCSAO and CCPDO "is disproportional to the needs of the case" and requesting the Court to "enter a protective order prohibiting it." [Dkt. 252 at 17.] For the reasons discussed below, the Court agrees and grants the City's motion.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) permits the discovery of all relevant, non-privileged material, provided it is "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Federal Rule of Civil Procedure 26(c) allows the Court to enter a protective order to protect a party from undue burden, expense, or annoyance. The Court believes that allowing the massive amount of discovery Plaintiff intends to seek from

the CCPDO and the accompanying discovery the City would need from the CCSAO would have almost no benefit in resolving any of the issues in this case and would cause undue burden or expense on Defendants.

The *Brady* violation that Plaintiff alleges in his Complaint is very specific and cannot be proven with documents from the CCSAO or CCPDO. Plaintiff alleges that Defendants suppressed and withheld exculpatory evidence in "clandestine files" "that were maintained solely at the police department" and were "withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file." [Dkt. 256 at ¶ 357.] Given the nature of the *Brady* allegations in the Complaint, the Court fails to see how the discovery Plaintiff seeks will be in any files maintained by the CCSAO or CCPDO. The allegation is that evidence did not even get from the "street files" to the official Chicago Police Department retention files, let alone the prosecutors or defense attorneys. In fact, Plaintiff is specifically claiming that the exculpatory evidence was never divulged to prosecutors or criminal defendants. There will not be any relevant information in the files of the CCSAO and CCPDO for purposes of the alleged *Brady* violation in this case. The relevant information will be gleaned by comparing the clandestine "street files" to the official homicide files, or through witness testimony regarding the City's pattern and practice of suppressing evidence in "street files," none of which involves the CCSAO or the CCPDO. Because the likely benefit of the discovery Plaintiff seeks is, generously, infinitesimal as it relates to his *Monell* claim based on *Brady* violations, any burden would be too much; here the burden would be quite large and significantly outweighs the benefit, thereby necessitating a protective order.

While the Court is granting the motion for protective order at this time, Plaintiff may file a motion to reopen discovery or modify the protective order should discovery come to light that indicates that materials from the CCSAO or the CCPDO may be relevant to his claims. Here, the *Monell* violation alleged would likely first require a finding that the individual Defendants committed a *Brady* violation.[3] Plaintiff should be able to access his individual Chicago Police Department file, CCSAO file, and his defense file.[4] As noted above, if the suppression of evidence occurred between the "street file" and the permanent retention file, the CCSAO and CCPDO never come into play at all. However, if he can use his individual files to point to a *Brady* violation that demonstrates suppression between the Chicago Police Department and the CCSAO or Plaintiff's criminal defense attorney, the Court would consider allowing broader *Monell* discovery later. However, Plaintiff has not shown how the *Monell* discovery he seeks would lead to any benefit that outweighs the burden that would be placed on Defendants and two third-party public entities should the discovery go forward.

## CONCLUSION

Defendant City of Chicago's Motion for Protective Order [252] is granted. The parties are ordered to file an updated joint status report regarding the status of fact discovery on December 21, 2021.

---

[3] The Court does not make a finding on this issue. However, while the Court is aware of the Seventh Circuit's holding in *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 292, 305 (7th Cir. 2010), that a municipality *may* be held liable under *Monell* even when the individual defendants are not liable for a constitutional violation, most suits based on similar allegations in this district have found that individual liability is a requirement for *Monell* liability. *See, e.g., Williams v. City of Chicago*, 315 F. Supp. 3d 106, 108 (N.D. Ill. 2018); *Harris v. City of Chicago*, No. 14 C 4391, 2016 WL 32615222, at *3 (N.D. Ill. June 14, 2016)); *Kitchen v. Burge*, No. 10 C 4093, Dkt. 399, at 6, (N.D. Ill. Nov. 2, 2012).

[4] It is unclear whether Plaintiff is able to access his private defense attorneys' files, as they have been disbarred and the subpoena served on them was returned to sender. [Dkt. 252 at 15.] However, as noted above, his failure to show an individual *Brady* violation (*i.e.*, that exculpatory evidence was withheld from his defense attorneys) would likely also doom any analogous *Monell* claim.

ENTERED:   11/19/2021

_____

U.S. Magistrate Judge
Susan E. Cox