1    <u>TRANSCRIBED FROM DIGITAL RECORDING</u>

2         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
3                 EASTERN DIVISION

4   ROBERT BOUTO,                    )
                                     )
5                  Plaintiff,        )   Case No. 19-cv-2441
                                     )
    -vs-                             )
6                                    )   Chicago, Illinois
    REYNALDO GUEVARA, et al.,        )   April 5, 2021
7                                    )   9:42 a.m.
                   Defendants.       )
8

9                  TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SUSAN E. COX, MAGISTRATE JUDGE
10

    TELEPHONIC APPEARANCES:
11

    For the Plaintiff:      MS. RUTH Z. BROWN
12                          Loevy & Loevy
                            311 N. Aberdeen Street
13                          3rd Floor
                            Chicago, IL  60607
14                          (312) 243-5900
                            E-mail:  Ruth@loevy.com
15
    For the Defendant
16  Guevara:                MS. MEGAN KELLY McGRATH
                            Leinenweber Barone & Daffada, Ltd.
17                          120 North LaSalle Street
                            Suite 2000
18                          Chicago, IL 60602
                            (866) 786-3705
19                          E-mail: Megan.mcgrath@cookcountyil.gov
        **PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
20        NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
              PORTIONS UNINTELLIGIBLE AND INAUDIBLE
21  Transcriber:

22          KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                    Official Court Reporter
23              United States District Court
            219 South Dearborn Street, Suite 1426
24              Chicago, Illinois  60604
                 Telephone:  (312) 435-5569
25          Kathleen_Fennell@ilnd.uscourts.gov

1    APPEARANCES:   (Continued)

2    For Defendants Halvorsen,
     Pang, Pergande, Mingey
3    Maher and Marron:        MR. JOSH MICHAEL ENGQUIST
                              The Sotos Law Firm, P.C.
4                             141 W. Jackson Boulevard
                              Suite 1240A
5                             Chicago, IL  60604
                              (630) 735-3303
6                             E-mail: Jengquist@jsotoslaw.com

7    For Defendants Hughes
     And Cook County:         MR. JOSEPH ANTHONY HODAL
8                             Cook County State's Attorney's Office
                              50 W. Washington Street
9                             5th Floor
                              Chicago, IL  60602
10                            (312) 603-5971
                              E-mail: Joseph.hodal@cookcountyil.gov
11
                              MR. SEAN JOSEPH O'CALLAGHAN
12                            O'Mara & O'Callaghan, LLC
                              230 W. Monroe Street
13                            Suite 2620
                              Chicago, IL  60606
14                            (312) 600-5588
                              E-mail: Sean.ocallaghan@ogolawyers.com
15
     For Defendant City
16   Of Chicago:             MS. EILEEN ELLEN ROSEN
                              Rock Fusco & Connelly, LLC
17                            321 North Clark Street
                              Suite 2200
18                            Chicago, IL  60654
                              (312) 474-1000
19                            E-mail: Erosen@rfclaw.com

20

21

22

23

24

25

1      (Proceedings heard in open court:)

2          THE COURTROOM DEPUTY: Case No. 19 CV 2441, Bouto

3  versus Guevara.

4          MS. BROWN:  Good morning, your Honor.  Ruth Brown for

5  the plaintiff.

6          THE COURT:  Good morning.

7          MR. ENGQUIST:  Good morning, your Honor.  Josh

8  Engquist on behalf of Defendants Halvorsen, Mingey, Pang,

9  Pergande, Maher, and Marron.

10          THE COURT:  Good morning.

11          MR. ENGQUIST:  Good morning.

12          MS. McGRATH:  Good morning, your Honor.  Megan

13  McGrath on behalf of Defendant Guevara.

14          THE COURT:  Good morning.

15          MS. ROSEN:  Good morning, your Honor.  Eileen Rosen

16  on behalf of Defendant City of Chicago.

17          THE COURT:  Good morning.

18          MR. O'CALLAGHAN:  Good morning, your Honor.  Sean

19  O'Callaghan on behalf of ASA Kevin Hughes and Cook County.

20          THE COURT:  Good morning.

21          MR. HODAL:  And Joseph Hodal, H-O-D-A-L, also on

22  behalf of Cook County and Kevin Hughes.  Good morning.

23          THE COURT:  Good morning.

24          Have we got everybody then?

25          Okay.

1    MR. ENGQUIST:  Yes, your Honor.

2    THE COURT:  Well, you guys saw how we're going to

3    handle the motion for protective order on the duplicate

4    third-party witness, so we're not -- I don't think I need to

5    address that further.  Many judges received the identical

6    motion, so we're ordering consolidated briefing on that.

7    So that gets us to the other two motions.  The first

8    is the plaintiff's motion to compel a defendant to sit for his

9    deposition.

10    Perhaps the defendant can respond to this motion

11    orally, please.  What's the holdup here?

12    MR. ENGQUIST:  Sure, your Honor.

13    If you -- plaintiff -- well, it starts off when

14    plaintiff's talking about the initial reason why it wasn't

15    going forward and it was around, if you look at it, it was

16    right before Thanksgiving, actually the Monday before

17    Thanksgiving she initially reached out.  Right after that

18    before the -- before the Christmas holiday season, we talked

19    about talking about really putting things off until after the

20    new year to see where things sat because everybody was talking

21    about it in all the different cases about waiting to see if

22    there was going to be another surge and when shots were coming

23    into place and things like that for travel.

24    After that point in January when we're talking about,

25    when they're saying we changed our gears or whatever it is on

1  the reasons why it wouldn't go forward, it's simply the fact

2  that we expected to have a ruling, we have a pending motion to

3  dismiss on the second amended complaint.  Plaintiffs have a

4  motion to amend the complaint to add a new claim against

5  Officer Pergande, and because Officer Pergande sits in that

6  position, we don't want to go forward with his deposition

7  until we know really all the legal claims against him and so

8  we have a chance to prepare our strategy for that.

9         Now, for everybody else, we're still going forward

10  on.  We just recently traveled to do the deposition of a third

11  party, Officer Day.  We did his deposition.  I produced

12  another defendant, Officer -- Sergeant Mingey.  His deposition

13  already went.  We have another officer traveling for his

14  deposition, which is Officer Pang who's a defendant.

15         We're going forward with depositions.  So I'm not

16  sure -- what we're doing right now, we're doing depositions

17  that don't impact that claim except for third parties, which

18  we don't have control over.  So we're doing all those

19  depositions.  We just want to be able to have an operative

20  complaint and what claims are against Pergande before he sits.

21         THE COURT:  Plaintiff?

22         MS. BROWN:  You know, the bottom line is that

23  Defendant Pergande is going to be questioned on the exact same

24  topics no matter whether the motion to amend is granted or

25  denied, you know, and there's no legitimate reason why his

1   testimony about the circumstances of his arrest of the

2   plaintiff should change depending on whether there's a

3   retaliation claim in the case or merely an explanation that he

4   had a motive to falsely arrest plaintiff.

5        You know, in either circumstance, the questioning is

6   going to be the same and the factual information that he

7   provides should be the same.  And, you know, we asked for

8   Defendant Pergande's deposition first because he's the most

9   important defendant who is able to give testimony.

10        THE COURT:  Uh-huh.

11        MS. BROWN:  And we need his deposition to inform our

12  questioning of the other defendants.  If he goes last, we

13  won't be able to redepose the other defendants to ask about

14  the explanations that he gives during his deposition.

15        We also need his deposition now to finalize our

16  Rule 30(b)(6) notice, and, you know, Rule 30(b)(6) notices

17  typically take some time, so if we don't get that out soon,

18  that could jeopardize the fact discovery cutoff that's

19  currently set in August.

20        And, you know, in this district, courts do not

21  typically stay discovery pending resolutions of motions to

22  dismiss.  You know, we don't typically wait so long as, you

23  know, the operative complaint is exactly as determined because

24  that causes all sorts of problems and delays, and there's no

25  reason for any different outcome in this case.

1    And with regard to the motion to dismiss, there's no

2  single argument that is specific to Defendant Pergande.  So,

3  you know, we've been seeking his deposition for going on five

4  months now, and we'd like to take it because we think if we

5  can't -- if we don't get a chance to take it, it's going to

6  inhibit our ability to, you know, to finish discovery and to

7  conduct follow-up discovery.  I guess that is --

8    THE COURT:  All right.

9    Defendants, do you have anything else you want to

10  say?

11    MR. ENGQUIST:  Well, your Honor, when she was talking

12  about the fact that he's the most important defendant, that's

13  kind of news to us the way the complaint is written, so we'd

14  be concerned about what the strategy is on their part about

15  having --

16    THE COURT:  Well, you don't really need to know what

17  their strategy is.

18    MR. ENGQUIST:  No, no, I don't, but I would like to

19  see the complaint.  I'd like to know what the operative

20  complaint is before I --

21    (Cross-talking.)

22    THE COURT:  You've seen the complaint.  You know what

23  the complaint says.  The only thing you don't know is whether

24  the complaint is going to be allowed, right?

25    MR. ENGQUIST:  And, your Honor, the other incident

1  that they're talking about, that's what Officer Day actually

2  testified to.  He was actually the person who was accused in

3  the CR.

4      So we're producing third-party witnesses involving

5  that incident now.  So for her to say that she doesn't

6  understand --

7      THE COURT:  Well, okay --

8      MR. ENGQUIST:  -- what he'll be saying --

9      THE COURT:  Well, let me just stop you here.

10     Other than the fact that you've got a pending motion

11  to -- the plaintiff's pending motion to amend, is there any

12  real substantive objection to this?

13     MR. ENGQUIST:  No.  That's the reason we're holding

14  off.

15     THE COURT:  That's the basis?  Well, then your

16  motion -- the plaintiff's motion is granted.

17     She's quite right.  In this district we do not -- we

18  don't stop discovery of some witnesses because there are

19  pending motions.  And in this case, it's (inaudible) -- you

20  know, because you have a -- you know, you're in kind of a

21  better position than if there was a motion to dismiss pending.

22  You have the amended complaint.  You know what it is they're

23  going to allege.  And maybe you're going to get lucky and some

24  counts are not going to be allowed, but I don't see any reason

25  why I should stop this discovery because of that.

1    I mean, it would be a first for me, frankly, in this

2  kind of situation.  So I think that the deposition should go

3  forward.  I mean, you've been talking about it for several

4  months, and now all of a sudden this is the reason that

5  you're -- you're putting forth?  Okay, I understand that, but

6  as I said, you know what the amended complaint is going to

7  say, and it just doesn't seem to me that that should stop --

8  the fact that you don't know what the judge is ruling, I don't

9  know that that should stop the deposition.

10    So that's the Court's ruling on that.

11    Let's get to the next motion, which is the motion to

12  limit 404(b) witnesses.  I did this in the other case, did I

13  not?

14    MS. BROWN:  Yes, your Honor.

15    THE COURT:  Did I?  Yeah.  Why wouldn't I do it here?

16    MS. BROWN:  We are certainly aware of the Court's

17  ruling in the Rodriguez matter.  There's three matters we'd

18  like to bring to the Court's attention that are specific to

19  this case, and we'd also like to ask for an opportunity to

20  brief the motion.

21    You know, the first is that the timing of this

22  motion.  You know, we would ask that if the Court is going to

23  limit us -- ask us to limit our 404(b) witnesses, that we

24  would not have to do so until 30 days from the date of the

25  final defendant deposition because, as the Court has just

1   heard, you know, the defendants have only produced one

2   defendant for deposition so far and, you know, my colleagues

3   have committed to producing the rest of the defendants this

4   month, but before the defendant depositions and also some key

5   witness -- third-party witness depositions, it's premature for

6   us to finalize a 404(b) witness list and explain the testimony

7   of each of those witnesses --

8          THE COURT:  Well, let me ask -- okay.  Let me ask you

9   a question about that.

10          Has that matter been brought up before any of the

11  other many judges that have presided over these cases where

12  this subject has come up?

13          MR. ENGQUIST:  No, your Honor.

14          MS. BROWN:  You know, your Honor --

15          THE COURT:  Yeah.

16          MS. BROWN:  -- I haven't been on any of those other

17  cases --

18          THE COURT:  Well, your firm -- well, that's a

19  little -- that's a little much of a non-response since your

20  firm is on all of them, I think, except maybe one.

21          So, you know, I'm just wondering why that's become an

22  issue in this case?  As far as I know, there isn't a single

23  judge that hasn't limited 404(b).  This is going to be across

24  these cases, you know, and you have --

25          MS. BROWN:  It's just the time -- the point that I

1  wanted to raise with you, your Honor, is just about the timing
2  when, you know, any limitation, any final list would have to
3  be provided.

4        THE COURT:  Well, then my question was have you
5  raised that with any of the other judges, and why are you
6  raising it here?

7        MS. BROWN:  I'm sorry, your Honor, I just can't speak
8  to that.  All I can speak to is whether -- you know, is that I
9  think it would be premature in this case because we have a
10 situation in which we don't know what the defendants are going
11 to say.  We don't know what Officer Pergande is going to say
12 that happened in the investigation.

13        THE COURT:  Hasn't that been -- isn't that the case
14 in most of these cases?

15        MS. BROWN:  I don't believe --

16        THE COURT:  I don't understand why this case is
17 different, but go ahead, get to your other two points.

18        MS. BROWN:  Sure.

19        You know, the second point I wanted to raise with
20 your Honor is that this case in particular is one in which
21 there are many different types of 404(b) evidence at play
22 because, you know, nearly every step that Guevara and
23 Halvorsen took during this investigation to frame Mr. Bouto
24 was, from our perspective, pursuant to a tactic they've used
25 in other cases.

1    So just as a few examples, we believe that those two

2 defendants had a *modus operandi* of telling eyewitnesses who to

3 identify in lineups; of undermining suspects' alibis to make

4 them look incredible when they were, in fact, truthful; of

5 intentionally feeding facts to witnesses to make fabricated

6 statements look more credible; of taking the source of which

7 false evidence in the case purportedly changed to Guevara and

8 Halvorsen to create a false (inaudible).

9    THE COURT:  Okay.  Let me stop you here.  Let me stop

10 you right there.

11    So you know what it is your 404(b) evidence pertains

12 to because you've just listed the sorts of instances that you

13 would be looking for, correct?

14    MS. BROWN:  I think that we -- we have -- we can

15 identify many such tactics now.  We do not have the complete

16 list until we depose some of the key defendants, but either

17 way --

18    THE COURT:  Now you're back to a timing -- a timing

19 argument.

20    I mean, I am highly disinclined to just open a broad

21 door to 404(b) witnesses that hasn't been opened in any other

22 case, including the other case that I'm presiding over.  And

23 so the number of witnesses I'm not inclined to, you know, to

24 change my mind on.  The timing is a different objection.

25    What's your third point?

1       MS. BROWN:  Just that the defendants, you know,

2   another reason this motion is a little premature in this case

3   is the defendants filed it without speaking to us about this

4   case in particular, and they filed it when we -- when I was on

5   vacation.

6       And I'm not suggesting that they did that on purpose.

7   However, because of that, I have not had any chance to speak

8   with the defendants about Rule 404(b) witnesses in this case.

9   And, you know, that's another reason we were going to ask if

10  the Court could just --

11      THE COURT:  We're not going to -- we're not going to

12  brief this motion.  We're not briefing this motion.

13      What I will do is I'll enter and continue the motion,

14  allow you the opportunity to talk to the defendants about the

15  404(b) witnesses and see if you can negotiate something with

16  them about -- about the timing.

17      It seems to me that the timing of these witnesses are

18  called not until after the last defendant is deposed doesn't,

19  I don't see -- I think that's the thing that the defendants

20  could possibly consider, but, you know, I just -- I feel that

21  because of the type of case this is and I think this has been

22  true across the board in these cases, the Court has to impose

23  limitations on this -- on this evidence because otherwise

24  we'll never get to the end of this case.

25      I mean, theoretically, as you said in other cases,

1 these witnesses can be in the 2- to 300-people range, and

2 that's not something proportionally that the judges of this

3 court have permitted, and I'm not going to permit it.

4 You know, if you're talking about -- if you're

5 talking about one or two more, if you're talking about, like,

6 as opposed to 10, maybe 12 or 13, that's one matter, and you

7 can talk to the defendants about that, and you could talk to

8 the defendants about the timing, but I'm not sure why this

9 case is any different than the other whatever number there is

10 where the judges uniformly have said you have to limit the

11 scope of this.

12 MS. ROSEN: Judge, this is Eileen Rosen. If I could

13 just speak to two of those points.

14 THE COURT: Yes.

15 MS. ROSEN: With respect to Rule 30 -- the point that

16 we didn't discuss it specifically with Ruth, we -- we had a

17 discussion with other people in plaintiff's counsel's office

18 at Loevy & Loevy in the other cases, and it was at that point

19 that they wanted to open up the discussion across the board

20 universally on 404(b) witnesses and told us that their policy,

21 their office policy, was the same across the board, they

22 weren't going to voluntarily limit the 404(b) witnesses --

23 THE COURT: Right.

24 MS. ROSEN: -- absent court order.

25 THE COURT: That was --

1    (Cross-talk.)

2         MS. ROSEN:  -- and it was after that conversation

3    that the serial motions on the motion to prevent defendants

4    from conducting duplicate depositions of 404(b) witnesses got

5    filed that the Court referenced earlier, and so part of the

6    issue, of course, is that -- and not to argue that motion

7    because we're going to brief it, but --

8         THE COURT:  Yeah.

9         MS. ROSEN:  -- it illuminates what plaintiff is

10   saying here.

11        If the 404(b) witnesses aren't the same across the

12   board for all the different cases, then this idea that the

13   depositions should count against all across the board

14   against -- in all of the cases --

15        THE COURT:  Uh-huh.

16        MS. ROSEN:  -- could necessarily inflate the number

17   of 404(b) witnesses beyond what the individual courts have

18   ordered.

19        THE COURT:  Uh-huh.

20        MS. ROSEN:  If that makes sense.

21        THE COURT:  So you're saying that those two motions

22   are related.

23        MS. ROSEN:  They are related.

24        THE COURT:  Right.  Yeah, I think I understand your

25   point.

1    MS. ROSEN:  And then the second point I was going to
2  make I've lost.
3           THE COURT:  Sorry.
4           MS. ROSEN:  That's all right.  My own fault for not
5  jotting it down.
6           But that's the issue on the issue about -- oh, and
7  the timing is the same, Judge -- that's the second point -- is
8  that that other motion impacts this idea that we should wait
9  some period of time because all of the deps are moving
10  forward.  In fact, there was one scheduled for next week in
11  one of the cases, in the Sierra matter, and then we got serial
12  dep notices across all the cases, including the Bouto case --
13           THE COURT:  Yeah, right.
14           MS. ROSEN:  -- so if plaintiff isn't forced to narrow
15  to 10 or whatever the number is --
16           THE COURT:  Yeah.
17           MS. ROSEN:  -- then the dep that is supposed to go
18  next week, which obviously can't go now because of these
19  motions, but that sort of -- that's sort of the thinking on
20  the defense side of it.  And, obviously, we'll set forth more
21  of our arguments in the briefs, but --
22           THE COURT:  Uh-huh.  I mean --
23           MR. ENGQUIST:  Your Honor, also --
24           THE COURT:  Yeah, go ahead.
25           MR. ENGQUIST:  Okay, your Honor, this is Josh

1 Engquist again.

2 Just on the issue of the timing again for the

3 individual officers, you know, we'd like to have a list --

4 we'd like to have an idea of what we're dealing with when it

5 comes to 404(b) also before their depositions.  We're going

6 forward with some depositions of the officers, and now we're

7 going to go forward with the deposition of Officer Pergande.

8 We'd like to know what's in play when it comes to

9 these 404(b) witnesses that they're planning on calling for

10 trial because it could actually --

11 THE COURT:  Well, you know --

12 (Cross-talking.)

13 MR. ENGQUIST:  -- the depositions.

14 THE COURT:  Well, you know, if there's something

15 that -- you know, that's always true in discovery, right?  I

16 mean, there are things that witnesses say that impact, you

17 know, other witnesses and other testimony, but you don't --

18 you know, we don't stage discovery that way.  So I don't want

19 to reargue a motion I've already ruled on.

20 MR. ENGQUIST:  No, I'm not -- your Honor, I'm

21 sorry --

22 (Cross-talking.)

23 THE COURT:  I'm not sure what your point is.

24 MR. ENGQUIST:  Well, my point was saying when

25 plaintiff was suggesting that we hold off on having to limit

1   anything until 30 days after all the defendants are done --

2            THE COURT:  Ah.

3            MR. ENGQUIST:  -- that's the timing issue I'm talking

4   about, not the fact that the depositions have to go forward

5   for the officers.

6            We're producing officers.  The issue is, you know,

7   being, you know, actually knowing what the -- what we're

8   dealing with here, what the scope of discovery would be when

9   it comes to 404(b)s would be something that may impact the

10  depositions, too.

11           THE COURT:  Uh-huh.

12           MR. ENGQUIST:  So they -- delaying it 30 days after

13  really doesn't do any good for that part of it.

14           THE COURT:  Uh-huh, uh-huh.

15           Is this the only -- is this the only case where this

16  motion hasn't already been decided by a judge?

17           MS. ROSEN:  No, Judge.  Some of the newer case -- so,

18  you know, obviously these cases have been filed over time --

19           THE COURT:  Right.

20           MS. ROSEN:  -- so the ones that are further along are

21  the ones where the motions have been filed.  There's some

22  that, where we're still in the midst of initial written

23  discovery --

24           THE COURT:  Uh-huh.

25           MS. ROSEN:  -- that the motions haven't been filed,

1  but we are now filing them because of the other motion -- the
2  motion to prevent the defendants from taking duplicate
3  depositions so that we can get the two issues considered.
4       THE COURT:  So basically this is another motion
5  that's going to be filed by the City across the series of
6  cases.
7       MS. ROSEN:  Yeah, but it's only a couple.  It's not
8  as many because --
9       THE COURT:  Uh-huh.
10      MS. ROSEN:  -- the courts have -- most -- I won't say
11  most, I don't have a tally in front of me, but there are
12  multiple cases where it's already been resolved.
13      THE COURT:  Right.  It's been resolved in just
14  about -- I don't know a case where a court has ruled
15  differently.
16      MS. ROSEN:  That is correct.  I also don't know of a
17  case where a court has ruled differently.
18      THE COURT:  Right.  There's no -- I mean, the
19  authority that I relied on was that of my colleagues, and
20  there's not one -- there's not one court that's looked at this
21  issue that said, sure, you know, do as many 404(b) witnesses
22  as you want.
23      And, you know, it seems to me that if the courts
24  collectively decide that one deposition for all of the cases
25  for a 404(b) witness should be the rule, right, then the

1  number of 404(b) witnesses, you know, could increase slightly.
2  You know what I mean?  Because you're not talking about
3  deposition after deposition after deposition.  You're talking
4  about one deposition that will hold true for all of the cases,
5  then the burden on the defendant is somewhat less.

6  But I still don't see why this -- I should treat this
7  case any differently than I treated the other case.  I don't
8  know that the plaintiff, you haven't really -- you haven't
9  really set forth any factors that distinguish this case in
10  terms of the limitation than the other cases.  And so I'm
11  just -- and, you know, briefing it sounds great, but it's
12  just -- you know, I don't know that -- I don't know what you
13  would say that would cause me to change my mind on this.  I
14  mean, you haven't really said why this case is different than
15  the other cases.

16  MS. BROWN:  Your Honor, if I could speak to that real
17  briefly.

18  You know, I think No. 1 is the number of tactics that
19  are at play.  We could set that out for you in a very brief
20  response if it would be helpful.

21  And then No. 2 is that this is a case in which, you
22  know, we are not looking to just do 404(b) evidence against
23  Guevara and Halvorsen but also against Officers Pergande and
24  Maher.  And so if we're talking about four officers, you know,
25  something in the range of 6 to 10 different tactics that 10

1    404(b) witnesses, you know, is not going to allow us to

2    present the case that we need.

3           THE COURT:  And how many do you think your trial

4    judge is going to allow to testify at trial?  You know, I

5    just -- I -- you know, I hear -- I hear what you're saying,

6    but what's your proposal?  What are you -- I mean, they're

7    asking -- they're asking me to limit it, as I have done and as

8    others have done, to 10, you know, which in some ways is an

9    arbitrary number, of course, right?  So it's a number that

10   sounds reasonable and so the courts have said yes, 10 sounds

11   good.

12          You know, 8 or 12 could equally, you know, depending

13   on the case, but what's your proposal in this case?  What are

14   you proposing?

15          MS. BROWN:  Well --

16          THE COURT:  Because I'm not going to -- because I'm

17   not ruling that there's no limitation, right?  I'm not going

18   to say, yeah, go forth and do whatever you want in this case

19   that you think may help you because that's just not going to

20   fly, so what are you -- what specifically are you proposing to

21   do here --

22          MS. BROWN:  All right.  Just to be --

23          THE COURT:  -- in terms of numbers of witnesses?

24          MS. BROWN:  I'm prepared to provide that.  Just to be

25   clear, you know, as you know, and I understand that the Court

1  doesn't agree with the position, but as you know, our position
2  is that there shouldn't be any limitation.  However --
3            THE COURT:  You know --
4            MS. BROWN:  -- the worst --
5            THE COURT:  -- could you just answer my question?  I
6  understand that that's your position, and your position has
7  been uniformly rejected by every judge who has looked at it in
8  these cases.  So I don't know why you want to go back around
9  to that.
10           Tell me what, because I don't have, you know,
11  unlimited time to hear this.  I have other folks waiting to be
12  heard.  So why don't you tell me specifically what your
13  position is because no limitations isn't going to fly.
14           MS. BROWN:  The alternate proposal, your Honor, would
15  be 10 404(b) witnesses and 10 alternative because one thing
16  that we are finding is that 404(b) witnesses are not always
17  available.
18           So we'd like to have 10, but then the ability to slot
19  in an additional 10 if the original witnesses are unavailable.
20           THE COURT:  On the same -- on the same topic?  On the
21  same topic?
22           Well, here's what I'm going to do -- okay, here's
23  what I'm going to do because I just -- we have to move on.
24  Make your proposal to the City and tell them why it is -- or
25  the defendants, rather.  Tell them why this case is different

1 and exactly what you're proposing to do, okay?

2 And then -- and then we'll take up the matter again.

3 I have to move on to the rest of my cases.

4 Because -- and I'm just not understanding why this

5 case is different than all the other cases. I mean, it sounds

6 like you want alter- -- if the argument is, for example, the

7 one you just made, which is sometimes 404(b) witnesses aren't

8 available so we're going to need 10 more to fill in the slots

9 in case some of our first 10 can't make it, that's true in

10 every single case, counsel. That's not unique to this case.

11 That's true in every case that you have. There are

12 going to be people that you want to call as witnesses, you

13 want to find that can say things that you think are pertinent

14 and relevant to this case, you're not going to be able to find

15 them or they're not going to be available or they moved or

16 what have you. How does that make this -- that's just a way

17 around the limitation, a different -- it's another way around

18 the same limitation.

19 It's not an argument specific to this case. These

20 witnesses are no more or less likely -- I mean, I think you

21 should at least try to negotiate this yourselves at least on a

22 first pass, and we'll enter and continue the motion for two

23 weeks to allow you to do that, and you can update the Court

24 where you are, like, four days before the date that we set for

25 a further hearing, but I can't -- I have to go further now, so

1  that's what the order will say, okay?

2          MR. ENGQUIST:  Yes, your Honor.

3          MS. BROWN:  Yes, your Honor.

4          THE COURT:  All right.  Thank you.

5          MS. McGRATH:  Thank you, your Honor.

6          THE COURT:  You're welcome.

7          MS. ROSEN:  Thanks, Judge.

8          THE COURT:  Thanks.

9          MR. O'CALLAGHAN:  Thank you, your Honor.

10      (Which were all the proceedings heard.)

11                    CERTIFICATE

12      I certify that the foregoing is a correct transcript from

13  the digital recording of proceedings in the above-entitled

14  matter to the best of my ability, given the limitations of

15  using a digital-recording system.

16

17  */s/Kathleen M. Fennell*                    *January 6, 2022*

18  Kathleen M. Fennell                    Date
    Official Court Reporter

19

20

21

22

23

24

25