```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3   ROBERT BOUTO,                    )
                                      )
 4             Plaintiff,             )
                                      )
 5     v.                             )  No. 19 cv 2441
                                      )
 6   CHICAGO POLICE OFFICERS REYNALDO)
     GUEVARA, JOANN HALVORSEN, as     )
 7   SPECIAL REPRESENTATIVE for       )
     ERNEST HALVORSEN, EDWARD MINGEY,)
 8   KENNETH PANG, ALAN PERGANDE,     )
     RICHARD MAHER, L. MARRON, and    )
 9   UNKNOWN OFFICERS; KEVIN HUGHES; )
     CITY OF CHICAGO; and COOK        )
10   COUNTY,                          )  Chicago, Illinois
                                      )  September 21, 2021
11             Defendants.            )  10:45 a.m.

12       TRANSCRIPT OF PROCEEDINGS - TELEPHONIC MOTION HEARING
                BEFORE THE HONORABLE JOHN F. KNESS
13
     APPEARED TELEPHONICALLY:
14
     For the Plaintiff:        LOEVY & LOEVY
15                             BY:  MR. RUSSELL R. AINSWORTH
                               311 North Aberdeen Street
16                             3rd Floor
                               Chicago, Illinois  60607
17                             (312) 243-5900

18   For Defendant Guevara:    LEINENWEBER BARONE & DAFFADA, LTD
                               BY:  MS. MEGAN KELLY McGRATH
19                             120 North LaSalle Street
                               Suite 2000
20                             Chicago, Illinois  60602
                               (866) 786-3705
21
     For Certain Individual    THE SOTOS LAW FIRM, P.C.
22   Defendant Officers:       BY:  MR. DAVID ANDREW BRUEGGEN
                               141 West Jackson Boulevard
23                             Suite 1240A
                               Chicago, Illinois  60604
24                             (630) 735-3300

25
```

Nancy C. LaBella, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1728
Chicago, Illinois  60604
(312) 435-6890
NLaBella.ilnd@gmail.com

1   APPEARANCES (Continued):

2   For Defendants Hughes        O'MARA & O'CALLAGHAN, LLC
    and Cook County:             BY:  MR. SEAN JOSEPH O'CALLAGHAN
3                                230 West Monroe Street
                                 Suite 2620
4                                Chicago, Illinois 60606
                                 (312) 600-5588
5
    For Defendant City of        ROCK FUSCO & CONNELLY, LLC
6   Chicago:                     BY:  MS. EILEEN ELLEN ROSEN
                                 321 North Clark Street
7                                Suite 2200
                                 Chicago, Illinois  60654
8                                (312) 474-1000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings held remotely, via telephone conference:)

2           THE CLERK:  19 cv 2441, Bouto v. Guevara.

3           THE COURT:  Good morning, everyone.  This is the

4      judge.  Before we get to having everyone announce their

5      presence, I understand we had a little bit of a challenge with

6      the technology today.  I'm sorry about that.  I'm not sure why

7      we had to enter our codes twice, but so it goes.  We are here

8      and let's get started.

9           Who is appearing on behalf of the plaintiff, Robert

10     Bouto?

11          MR. AINSWORTH:  Good morning, your Honor.  This is

12     Russell Ainsworth appearing on behalf of the plaintiff.

13          THE COURT:  Good morning, Mr. Ainsworth.  Am I

14     pronouncing the plaintiff's name correctly?

15          MR. AINSWORTH:  Yes, your Honor.

16          THE COURT:  Thank you.

17          And then who is appearing on behalf of defendant

18     Reynaldo Guevara and perhaps other defendants?

19          MS. McGRATH:  Good morning, your Honor.  Megan

20     McGrath just on behalf of defendant Reynaldo Guevara.

21          THE COURT:  Good morning to you, Ms. McGrath.

22          And then who is appearing on behalf of defendant

23     Ernest Halvorsen and perhaps other defendants?

24          MR. BRUEGGEN:  Good morning, Judge.  Dave Brueggen on

25     behalf of defendant Halvorsen, who is deceased so his wife now

 1    is included as a representative for him, as well as the other

 2    CPD officers who are sued.

 3         THE COURT:  Let me make sure I have that list

 4    correct, please.  So if you could just give me everyone you

 5    are representing here today, I would appreciate that.

 6         MR. BRUEGGEN:  Of course, Judge.  So I represent --

 7    it's JoAnn Halvorsen as representative of Ernest Halvorsen.  I

 8    represent Alan Pergande.  I represent Officer Pang.  I

 9    represent Officer Mingey, Officer Marron, and Detective Maher.

10         THE COURT:  Thank you.

11         And then who is appearing on behalf of defendant

12    Kevin Hughes?

13         MR. O'CALLAGHAN:  Good morning, your Honor.  Sean

14    O'Callaghan on behalf of Kevin Hughes and Cook County.

15         THE COURT:  And good morning to you, Mr. O'Callaghan.

16         Finally, who is appearing -- well, not finally.  Who

17    is appearing on behalf of City of Chicago?

18         MS. ROSEN:  Good morning, your Honor.  Eileen Rosen

19    on behalf of defendant City of Chicago.

20         THE COURT:  Good morning to you, Ms. Rosen.

21         Finally, do we have the counsel on behalf of the

22    putative intervenor Armando Serrano?

23      (Brief pause.)

24         MR. AINSWORTH:  I don't believe that we do, your

25    Honor.  This is Russell Ainsworth speaking.

1            THE COURT:  Thank you, Mr. Ainsworth.

2            Let me deal with that issue first.  Let me ask one

3      more time.  Do we have Jennifer Bonjean on behalf of putative

4      intervenor Armando Serrano?

5         (Brief pause.)

6            THE COURT:  I hear no answer.  The record will

7      reflect that Ms. Bonjean has not appeared.  That may be

8      because the motion to intervene has become moot.  But I'll ask

9      you, Mr. Ainsworth, did the deposition of Mr. Vicente go

10     forward such that the motion to intervene at docket 172 is no

11     longer live?

12           MR. AINSWORTH:  No, your Honor, it has not proceeded

13     yet.

14           THE COURT:  Do you have any information you could

15     share with me as to why Ms. Bonjean is not here?

16           MR. AINSWORTH:  I do not, only my supposition is that

17     she may not have anticipated that the motion would be

18     addressed this morning.

19           THE COURT:  Okay.  Thank you.  Well, I'm denying the

20     motion.  I'm not going to get into a lot of reasons since Ms.

21     Bonjean is not here.  But the docket was clear that we were

22     supposed to address a number of matters today.  Maybe it

23     wasn't as clear as it could have been, but she's not here.

24     And, in any event, I'm not going to allow the motion to

25     intervene.  I'll give a couple of reasons why.

1       Under Rule 24, I must permit an individual to

2   intervene in a deposition if, for example, Mr. Serrano could

3   claim an interest relating to the transaction that is the

4   subject of the action and that disposing of this deposition --

5   or this action, rather -- would impair or impede Mr. Serrano's

6   ability to protect his interest while existing parties

7   adequately represent that interest.

8       I don't see that mandatory intervention is required.

9   I'm a little puzzled by the motion, frankly.  I don't see that

10  Mr. Serrano has provided any explanation why Mr. Vicente's

11  deposition in this case would be used in his case.  Even if

12  that was the case, I think that Mr. Bouto's counsel, who is

13  also the counsel for the plaintiff in Mr. Serrano's --

14  Montanez -- companion case, I think counsel here adequately

15  protects Mr. Serrano's limited interest.

16      I'm also not going to grant permissive intervention.

17  I don't see that there's a significantly or sufficiently close

18  question of law or fact in this action to allow someone to sit

19  in and join as the functional fifth wheel on the wagon in a

20  deposition here.  I just don't see that there's any value in

21  allowing Mr. Serrano to sit in and participate in this case as

22  if he has an interest in this case.

23      I understand the practical interest.  I don't see

24  that it's a legal interest here.  And I have discretion on

25  this, and my discretion tells me that -- my view of it at

least -- tells me that there's more harm than good that can
come out of having another party sit in in this deposition.
Accordingly, and given that Mr. Serrano is not here to argue
this motion, the motion to intervene is denied.  That's docket
172.

Let's turn now to the issue of the motion for leave
to amend, which is docket 204.

Before I turn there, let me just tell everybody, I
understand that there's been some delay on my end in dealing
with these motions, and I thank the parties for their patience
on this.  I'm not going to offer any reasons that would just
not persuade you anyway, but here we are.  So my intent today
is to resolve the motion for leave to amend at docket 204, as
well as the Rule 72 objection at docket 172 concerning
Magistrate Judge Cox's decision on the Monell discovery issue.

So I'm going to give you my reasons for these
decisions, and I'll give them concisely.  I may ask a few
questions of counsel.

Turning first to the motion for leave to amend,
Mr. Ainsworth, I assume you're still seeking leave to amend?

MR. AINSWORTH:  We are, Judge.

THE COURT:  And who is the -- I assume everyone --
stand by for one moment, please.  I see that we are having an
incoming call from Mr. Tully, who I believe has perhaps an
appearance on file here.  Maybe I'm confusing that with the

1   last case.

2        (Brief pause.)

3        THE COURT:  You can disregard what I just said.  We

4   are having many technical difficulties today, and it's beyond

5   frustrating for everyone.  But we'll move forward here.

6        Does any defendant wish to be heard briefly on the

7   issue of the motion for leave to amend?

8        MR. BRUEGGEN:  Judge, this is Dave Brueggen on behalf

9   of the defendant officers, other than Guevara.

10       And I would say that we laid out everything in our

11  response to the motion for leave to amend; that it's futile to

12  amend, in that plaintiff delayed in amending after a year and

13  a half of litigation before moving forward to amend when he

14  had all the information he needed to bring those claims

15  earlier.

16       THE COURT:  So the plaintiff says that the prompt for

17  the motion to amend was the production of the CR file a couple

18  of months before -- or not very long before plaintiff filed

19  the motion to amend.  Your position is that they actually had

20  this information long before and should have moved then; is

21  that right?

22       MR. BRUEGGEN:  That is correct, Judge.  Our position

23  is they had that information all the way -- going all the way

24  back to the criminal trial back in the 1990s.

25       THE COURT:  Thank you.

1        I have reviewed the briefing on this matter.  And

2   although I understand the defendants' objections and I'm

3   mindful both of the delay in this case in general -- or the

4   risk of delay of allowing amendment, as well as the fact that

5   I myself have delayed dealing with the leave to amend issue, I

6   still think that under the very liberal standard of Rule 15 of

7   the Federal Rules -- which of course says that leave to amend

8   should be freely given when justice so requires and only if I

9   find that there is actual or apparent undue delay, bad faith,

10  or dilatory motive or undue prejudice should I not allow

11  amendment -- I think that the scale tips in plaintiff's favor

12  on this.

13       I understand the defendants' argument about this

14  information being in front of them.  But the CR file was

15  produced at a given time, and the plaintiff moved promptly to

16  amend the complaint at that point.  I think that -- I can't

17  see anything in the record that would suggest some sort of

18  sandbagging or bait and switch on the part of the plaintiff

19  such that I should look at the "freely given" language of

20  Rule 15 and find that it's overcome.

21       I think that we're still early enough in the case.

22  Fact discovery hasn't closed.  Magistrate Judge Cox is keeping

23  a very close eye on discovery here and will adjust schedules

24  as necessary.  That's within her discretion.  So I don't see

25  that the freely given standard is overcome here.  Thus, I'm

1  going to permit the motion for leave to amend.  So I'm

2  granting docket 204.

3       I assume the defendants will want to tee up again

4  their motions to dismiss; and that, of course, is your right.

5  I'm assuming that 28 days from -- I would give you 28 days

6  from the date of filing the amended complaint on the docket to

7  file any motions to dismiss.

8       Does any defendant have any objection to that timing

9  or a request for a different time frame?

10       MR. O'CALLAGHAN:  Your Honor, on behalf of Kevin

11  Hughes, no, we have no objection.

12       MR. BRUEGGEN:  And, Judge, Dave Brueggen for the

13  defendant officers.  We have no objection to 28 days after the

14  filing of the amended complaint to file our responsive

15  pleading.

16       THE COURT:  Very well.

17       MS. McGRATH:  And --

18       THE COURT:  Mr. Ainsworth, any objection to that time

19  frame?

20       MR. AINSWORTH:  Nothing, your Honor.

21       THE COURT:  Ms. Rosen, I think that was you speaking.

22  Did I talk over you?

23       MS. ROSEN:  It was not me, but thank you.  And I

24  don't have any objection.

25       THE COURT:  Thank you.  And who did speak?  Who did I

1   talk over there?

2          MS. McGRATH:  Your Honor, this is Megan McGrath on

3   behalf of defendant Guevara.  And we don't have any objection.

4          THE COURT:  Thank you, Ms. McGrath.  And my apologies

5   for talking over you.  It's how things go on phone calls.

6          Let's turn now to the Rule 72 objection on the

7   objection to Judge Cox's decision on the motion to compel.

8   Her opinion is at docket 153.  I reviewed the filings on this.

9   I have a couple of questions, especially given the

10  supplemental authority filings that came in just this month.

11  I'm looking at docket 249, which is plaintiff's motion for

12  leave to file additional supplemental authority and then the

13  City of Chicago's response to that.  And I'm well aware of the

14  contentious -- it's professional but the contentious nature of

15  this issue.

16         And so I really -- I guess I would turn to Ms. Rosen

17  and ask you to summarize again why you think the decisions

18  that were cited by the plaintiff are sufficient to support the

19  standard for me reversing Judge Cox's decision.

20         MS. ROSEN:  So, Judge, to put it succinctly -- and

21  the City appreciates obviously the high standard based on

22  Rule 72 to overrule Magistrate Judge Cox's opinion.  However,

23  as we set forth in our previous briefing when we first briefed

24  the Rule 72, and then also taking into account what has

25  transpired since, the magistrate judge erred in not

1   considering the relevance of the particular Monell discovery

2   that we are objecting to.

3          So to be clear, the City did not file a Rule 72

4   objection on the order that ordered the City to produce

5   complaint register files that would support plaintiff's

6   alleged Monell claims.  Those files -- it's the City's

7   understanding based on past experience in other cases, that

8   plaintiff would utilize those files to support a -- what is

9   generally referred to as a failure to supervise, failure to

10  discipline claim that plaintiffs in these types of cases argue

11  was the moving force behind various constitutional violations,

12  particularly that Mr. Bouto alleged happened to him.

13         The City's quarrel is with the order that ordered it

14  to produce -- the City to produce its, what's generally

15  referred to as, homicide files, which comprises both

16  investigative files, which are the files that the detectives

17  create, and the records division files, which are the files

18  that are maintained at the records division, because that type

19  of claim is used to support what the parties commonly refer to

20  as the street files claim but what is in reality a Brady

21  claim.  And the Brady claim is that the City's policies and

22  practices prevent criminal defendants from obtaining all of

23  the documents created by Chicago Police Department personnel

24  during the course of any given investigation.

25         And the theory is that -- the way that it plays out

1    and has been playing out in the other Guevara cases, which is

2    what prompted the City to file the motion for a protective

3    order, which was part of what we referred to in our recent

4    filing -- the way it plays out is that plaintiffs obtain the

5    files from the City and then they go forward and obtain

6    files -- or attempt to obtain files via subpoena to the Cook

7    County Public Defender's Office.  And then the City in kind

8    looks for companion files from the Cook County State's

9    Attorney's Office.

10          That obviously, everybody will agree I think, even

11   plaintiff, is a large task.  And as it's been playing out in

12   the other cases that are further along, it bogs down the

13   discovery and it costs an inordinate amount of money and it

14   puts an incredible burden on the Cook County Public Defender's

15   Office and the Cook County State's Attorney's Office.  This

16   relates back to the Rule 72 --

17          THE COURT:  Ms. Rosen, I'm sorry to interrupt you.

18   Let me just ask a question before I forget to do so.

19          MS. ROSEN:  Sure.

20          THE COURT:  And what you just said prompted me on

21   that.

22          What is your standing to argue burden relating to the

23   Cook County Public Defender's Office and the State's Attorney?

24   You don't represent them.  And I'm not being flippant here.

25   Just please take my question in good faith.  But I can

1   understand there may be some public burden there, but you

2   represent the City of Chicago.  So why should the burden on

3   those entities be channeled through you as their spokesperson?

4        MS. ROSEN:  Sure.  And I can answer that in, I guess,

5   two ways.  The first is that the point of the City discussing

6   the burden on -- in its motion for protective order on the

7   other public entities is to explain that the discovery itself

8   is not proportional to the needs of the case.  And when what

9   we're talking about is a case where Mr. Bouto himself cannot

10  identify any documents that were withheld from the police

11  files related to his particular case, then there is no reason

12  to embark on Monell discovery that is not tethered to the

13  claim that Mr. Bouto is making.  And so based on what we know

14  in discovery to date, Mr. Bouto cannot establish that any

15  piece of paper that was in any of the CPD files was withheld

16  from him during his criminal prosecution.

17       And so the point of the burden argument -- and I will

18  say, in some of the other cases, once the subpoenas have

19  issued to either the Cook County Public Defender or the Cook

20  County State's Attorney's Office, they have come in and filed

21  motions to quash.  Yesterday Magistrate Judge Weisman granted

22  the Cook County Public Defender's motion to quash the subpoena

23  to the Cook County Public Defender for something like 500

24  files in the Sierra case.

25       And so if, at the end of the day, the burden on

1   either the Cook County Public Defender's Office or the Cook

2   County State's Attorney's Office is too great, then the reason

3   for the City to produce the files in the first instance, when

4   you combine that with the idea that there is no constitutional

5   claim in this case that plaintiff can establish that he did

6   not receive documents that are currently in the investigative

7   file or the RD file, then embarking on this type of Monell

8   discovery is not proportional to the needs of the case.

9           Additionally, with respect to Judge Cox's --

10          THE COURT:  Let me --

11          MS. ROSEN:  -- order, she also -- I'm sorry, Judge.

12  Go ahead.

13          THE COURT:  No.  I'm sorry.  Finish that thought and

14  then I have another question for you, please.

15          MS. ROSEN:  Additionally, Judge Cox in this case

16  ordered that the City produce open files.  So open files are

17  files where the crime has not been solved ever.  So we're

18  talking about 25- to 30-year-old homicide files where nobody

19  was charged.

20          And the City has argued successfully in every other

21  case that it has been litigating this type of Monell claim --

22  it has never been ordered to produce open files.  There's

23  legitimate law enforcement concerns about it.  There are

24  still -- some of these cases are still being actively

25  investigated.  And there's no way to establish a Monell claim

1  if nobody has been charged, right, because there's no criminal

2  defendant who could also say he didn't get documents or things

3  in connection with his criminal case.

4          So that's the two main attacks on the Rule 72

5  order -- I mean based on the Rule 72 petition.  Sorry.

6          THE COURT:  That's okay.  I got your point.  Thank

7  you.

8          Let me go in reverse order here.  You talked about

9  the open files.  I'm aware of that issue.  But Judge Cox did

10 give her reasoning as to why she thought the open files should

11 be allowed, correct?

12         MS. ROSEN:  She did.  And I can pull it right back up

13 again and --

14         THE COURT:  That's okay.  I read it.

15         MS. ROSEN:  Okay.

16         THE COURT:  But I just wanted to make sure that we're

17 in agreement that she did provide reasoning, recognizing that

18 you disagree with it.

19         With respect to that example you gave of Magistrate

20 Judge Weisman granting a protective order -- I believe it was

21 for the Cook County Public Defender's Office -- is it your

22 view that Magistrate Judge Weisman's ruling on that was the

23 only permissible ruling?  Or could he have gone the other way?

24         MS. ROSEN:  Well, I suppose he could have gone the

25 other way.

1        Magistrate Judge Harjani also has dealt with this

2    issue.  And the way he's dealt with it, in another set of

3    Guevara cases, is to order plaintiff's counsel to consult with

4    a statistical expert to provide opinion testimony regarding

5    what a statistically significant sample size would be so as to

6    reduce the burden.  And that was how he dealt with it.

7        You know, as we say in our -- in the motion for

8    protective order, the issue that is being faced by not only

9    the City of Chicago in these groupings of Guevara cases but

10   also eventually by the Public Defender and the Cook County

11   State's Attorney's Offices is these cases are going to end up

12   spanning -- right now they span a 12-year time frame.  And so

13   based -- you know, when you piggyback each of the cases on

14   each other, the City will end up, if all of -- if each of the

15   courts orders the City to do what plaintiffs are requesting in

16   each of the cases, the City will be ordered, at the end of the

17   day, with the pending cases, to produce files from Area 5 from

18   1987 to 1998, which the City estimates to be approximately

19   1100 homicides.

20       And then we expect, obviously, the discovery to

21   follow suit and then that would require subpoenaing the Cook

22   County Public Defender's Office for their companion files.

23   And I can tell you that it has taken them, in the Solache/

24   Reyes case -- I believe the subpoena was issued on -- in March

25   of this year, 2021 -- they've just now scanned the sample size

1  that was ordered for them to produce, which was something like

2  a hundred files.  And they still have to conduct a privilege

3  review, and currently -- the current deadline is that

4  production is supposed to happen by October 15th.  So --

5        THE COURT:  Okay.

6        MS. ROSEN:  -- it's taken them seven months to do a

7  hundred files.  So that's part of the proportionality portion

8  of it globally.

9        THE COURT:  Thank you for that information.  That is

10 helpful.  I don't think anyone doubts that there's burden

11 here.  The question really is whether the burden is undue.

12 And I know you referred earlier to some other cases in which

13 production of homicide files is ongoing and you referred to

14 the great number of documents and the great burden, and I

15 understand that; and I'm being sincerely respectful of that.

16 But I guess that begs the question, even with the burden, it's

17 ongoing, correct?  The production is ongoing, right?

18       MS. ROSEN:  Well, it's not -- it's -- it's ongoing in

19 the sense that so far the City has produced --

20       THE COURT:  My point, Ms. Rosen, is that, even with

21 the burden, other judges have allowed this discovery to go

22 forward.  And that gets to my real issue here, which is --

23 that's why I asked you about the ruling that Magistrate Judge

24 Weisman did, which is what it is.  I neither agree nor

25 disagree with it.  It's not a case in front of me.  But my

1    point in asking about that -- and you seem to suggest that he

2    could have gone either way with it -- is that the standard as

3    I view it -- it's a quasi or ersatz appellate standard here --

4    is under the clearly erroneous standard, if there are two

5    permissible views of an issue, a reviewing court shouldn't

6    overturn a decision because it merely because it would have

7    taken the other view.

8          Now, in the first instance, I might have agreed with

9    you on some of your arguments regarding Monell in this case.

10   I can't say that I would, but I very well might have.  But

11   that's not the standard.  The standard is whether there is no

12   way that what Magistrate Judge Cox did is permissible.  And I

13   get your arguments on that.

14         Let me give Mr. Ainsworth a chance to respond briefly

15   if he feels it necessary.

16         MR. AINSWORTH:  Thank you, your Honor.

17         It's important to recognize that whenever we talk

18   about burden, such as Ms. Rosen talked about the 12-year

19   homicide files the City might be forced to produce, we have to

20   recognize that in each instance, the plaintiff in these cases

21   has come to the City and said, would you please agree to a

22   sample; would you please -- we can sit down with a

23   statistician; we can, you know, define whatever parameters you

24   want; we don't need to have all these files.  If you look

25   (unintelligible) --

1        THE COURT:  Mr. Ainsworth --

2        MR. AINSWORTH:  -- whatever sample you provide is

3   statistically relevant and admissible in this case and --

4        THE COURT:  Mr. Ainsworth --

5        MR. AINSWORTH:  -- is -- yes, sir?

6        THE COURT:  I'm sorry to interrupt you.  You've been

7   cutting out a little bit.  I don't know whether that's you or

8   us.  But, in summary, what I understood you to be saying was

9   that plaintiffs in these cases have gone to the City and asked

10  the City to sit down and agree to a sample, work with a

11  statistician, and try to come up with parameters.  Is that

12  basically what you said?

13       MR. AINSWORTH:  Precisely.  And so for the City to

14  turn around and say that the City -- the burden to them

15  (unintelligible) is great when they're refusing an eminently

16  reasonable means of reducing that burden I think is uncalled

17  for.

18       And, here, we have a situation where, you know, we're

19  requesting these homicide files because the City is unwilling

20  to participate in a negotiation to, you know, reduce its own

21  burden.  And the -- and we have a situation in the Sierra and

22  the Maysonet cases, the City is producing virtually all of the

23  documents that we're requesting in this case.

24       And I think the Court has hit the nail on the head

25  with the Rule 72 standard.  This is not a case of first

1  impression for the Court, but it's, you know, was Judge Cox's

2  decision clearly erroneous, given the history of the City's

3  refusal to reduce the burden to itself and the fact that it's

4  being -- you know, that it's producing the documents in other

5  cases.

6         And then the -- Judge Cox also squarely addressed the

7  notion that the files are not relevant by, you know, pointing

8  out that they're relevant to a number of plaintiff's theories

9  in this case: plaintiff's fabrication claim, plaintiff's

10  suggestive lineup claim, and plaintiff's Brady claim; and that

11  the City might argue that ultimately we're not going to

12  prevail is not a reason to block discovery under the standard

13  that the Court is applying with Rule 26.

14         And I haven't heard anything from Ms. Rosen that

15  would cause the Court to have to take the extraordinary step

16  of finding Judge Cox's reasoning to be clearly erroneous.  And

17  so I'll leave it at that.

18         THE COURT:  Thank you.

19         I have reviewed the briefing in this.  I have

20  reviewed the relevant standard.  And I have reviewed Judge

21  Cox's memorandum opinion and order at docket 153.  And I'm

22  going to overrule the objection and affirm Magistrate Judge

23  Cox's ruling.  Let me tell you briefly why.

24         Ms. Rosen has made very good and cogent, well-stated

25  arguments both in writing and orally here today that if the

1    standard of Rule 72 was not in place, it might very well

2    persuade me.  But I cannot ignore the governing standard, the

3    clearly erroneous standard, which, for me, is determinative

4    here.

5         The case was referred to Magistrate Judge Cox for

6    supervision of discovery by the previously assigned judge.

7    And Magistrate Judge Cox has had the case in front of her for

8    a lot longer and much more time than I have or, frankly, that

9    the previously assigned judge had.  I think she has a good

10   feel on the ground for what is needed and what isn't.

11        Just so we're clear, again, the Rule 72 standard is

12   that -- and I'll cite a case here -- under clearly erroneous

13   review, if there are two permissible views, the reviewing

14   court should not overturn the decision solely because it would

15   have chosen the other view.

16        And put another way, the district court can overturn

17   the magistrate judge's ruling only if the district court is

18   left with the definite and firm conviction that a mistake has

19   been made.  For that I'm citing Weeks, W-e-e-k-s v. Samsung

20   Heavy Industries, 126 F.3d 926 at page 943.  It's a Seventh

21   Circuit case from 1997.

22        And the objecting party bears the burden of

23   establishing clear error.

24        I don't find that Magistrate Judge Cox's decision was

25   clearly erroneous.  I think that one of the key issues here --

1    there's really two key issues.  One is relevance.  I think

2    that in her ruling, Judge Cox explained pretty clearly why she

3    thought this information -- the homicide files that is -- are

4    relevant to this case.  She cited another decision in which

5    that judge reasoned that the homicide files could contain

6    evidence supporting allegations of coercion; for example,

7    arrest reports indicating when the individual was arrested,

8    when the individual gave a statement, information about the

9    length of the interrogation, participants in the

10   interrogation, a copy of the handwritten confessions.  And I'm

11   paraphrasing not quoting there.

12         But I think that each of those facts by themselves

13   could present circumstantial evidence at least of impropriety;

14   and when combined with external or other evidence, like

15   witness statements, could tend to show -- won't necessarily

16   show -- but could tend to show or suggest coercive tactics.

17   And that's relevant to the plaintiff's claim that there was a

18   policy by the City of Chicago that encouraged officers, the

19   defendant officers in this case, to engage in improper

20   interrogation tactics.

21         So I think Judge Cox has made a reasonable finding on

22   relevance.  I'm not saying that I would have come up with that

23   finding myself.  It's irrelevant to this.  It's only if I find

24   that the only conclusion would be to the contrary could I

25   overturn Judge Cox, and I don't find that here.

1        Same reasoning effectively on the burden issue.  I

2  think that Judge Cox looked closely at the burden arguments

3  presented by the City.  She's aware of them.  She took them

4  into account in narrowing the scope and the years that are

5  sought by the plaintiff, and she found that the burden was not

6  undue.  And, again, I can't find anything in her ruling that I

7  can say is clearly erroneous.

8        So, again, I think the City has made a good argument.

9  I'm very aware of the burden issue, but I don't think that the

10 City has met its burden of showing that Judge Cox's ruling was

11 clearly erroneous.  So for that reason, I'm overruling the

12 objection under Rule 72.

13       I would say that to the extent that burden issues

14 continue to arise, and maybe there's more gloss that could be

15 put on the issue of burden, I am quite certain that Magistrate

16 Judge Cox would entertain ongoing arguments from the City

17 about further narrowing or further steps that can be taken to

18 alleviate the burden.  But that will have to be presented to

19 Judge Cox.

20       Recognizing that you preserved your objection,

21 Ms. Rosen, and that I haven't ruled the way you wanted me to,

22 is there anything that you feel I've completely overlooked in

23 your argument?

24       MS. ROSEN:  No, Judge.

25       THE COURT:  Thank you.

1          So that's where we are with those rulings.  As I

2    said, the motion to intervene, docket 172, is denied.  The

3    motion for leave to amend, docket 204, is granted.  The

4    objection at docket 162 is overruled.  And Magistrate Judge

5    Cox's decision is affirmed.

6          I will probably terminate as moot the motions to

7    dismiss that are pending and will await, on the time frame

8    that we discussed, the anticipated renewed motions to dismiss.

9          On behalf of the plaintiff, is there anything further

10   that needs to be covered in front of me here today?

11          MR. AINSWORTH:  No, your Honor.

12          THE COURT:  On behalf of any defendant -- do try to

13   go in docket order, but we'll do our best here -- any other

14   defendant have anything that needs to be covered in front of

15   me here today?

16      (Brief pause.)

17          THE COURT:  I hear no response.

18          I thank you all for your time.  I sincerely thank you

19   for your patience in the delay in getting to these motions.  I

20   will do my best not to have further delay, especially with

21   respect to the anticipated new motions to dismiss.  We will

22   address those as quickly as possible, hopefully within a

23   matter of just a few weeks.  So if there's nothing further, I

24   wish everyone a good week.  This concludes the hearing in 19 C

25   2441.  Thank you very much.

1          MS. ROSEN:  Thanks, Judge.

2          MS. McGRATH:  Thank you, your Honor.

3          MR. BRUEGGEN:  Thank you, your Honor.

4          MR. O'CALLAGHAN:  Thank you, Judge.

5          MR. AINSWORTH:  Thank you.

6          THE COURT:  Thank you.

7      (Which were all the proceedings held.)

8                    *    *    *    *    *

9

10  I certify that the foregoing is a correct transcript from the
    record of proceedings, held telephonically, in the
11  above-entitled matter.

12

13  /s/ Nancy C. LaBella                    12/22/21
    Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25