## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROBERT BOUTO,

               Plaintiff,

      v.

REYNALDO GUEVARA, *et al.*,

               Defendants.

No. 19-cv-02441

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

This case arises out of the 1993 murder of Salvador Ruvalcaba and the ensuing prosecution of Plaintiff Robert Bouto for the murder. Plaintiff spent nearly 23 years incarcerated for Ruvalcaba's murder but the conviction was eventually vacated and dismissed, and Plaintiff received a Certificate of Innocence. Plaintiff now brings the present suit against: (1) Reynaldo Guevara, Edward Mingey, Kenneth Pang, Alan Pergande, Richard Maher, Louis Marron, JoAnn Halvorsen, as Special Administrator for Ernest Halvorsen (deceased), and other unknown law enforcement officers (collectively, "Defendant Officers"); (2) the City of Chicago (the "City"); (3) former Assistant State's Attorney Kevin Hughes ("Defendant Hughes"); and (4) Cook County (the "County"). Plaintiff alleges that the investigation and municipal policies that led to his wrongful conviction were constitutionally flawed, entitling Plaintiff to a significant damages award.

Before the Court are the Defendants' motions to dismiss Plaintiff's complaint. (Dkts. 270–71.) For the reasons that follow: (1) the Defendant Officers and the City's partial motion (Dkt. 270) to dismiss is granted in part and denied in part; and (2) the County and Defendant Hughes' motion (Dkt. 271) to dismiss is granted in part and denied in part.

## I.  BACKGROUND

As alleged in the Third Amended Complaint ("TAC"), this suit arises out of the 1993 murder of Salvador Ruvalcaba and the ensuing prosecution of Plaintiff Robert Bouto ("Plaintiff"). (Dkt. 256 ¶ 1.) On May 14, 1993, Salvador Ruvalcaba was walking with members of the Spanish Cobras street gang when he was shot and killed near Roosevelt High School in Chicago. (*Id.* ¶¶ 20–21.) In the immediate aftermath of the shooting, police officers interviewed associated gang members who were present, as well as several neighborhood witnesses. (*Id.* ¶ 28.) Some witnesses described the shooter as "a 16- to 17-year-old Hispanic" rival gang member with a ponytail, about 5'7" tall and 140 pounds, and that he wore a blue hoodie, long black shorts, and white shoes. (*Id.* ¶ 29.) Other witnesses described the offender similarly, with the only difference being height (5'5"), weight (120 pounds), shirt color (black t-shirt), and the added detail that the suspect was clean-shaven. (*Id.* ¶ 30.) But no witness was able to identify the shooter by name, and at least two witnesses (acquainted with Plaintiff) did not identify Plaintiff as the shooter. (*Id.* ¶ 22.)

Police officers searched for potential suspects near the school. (*Id.* ¶¶ 33–35.) As officers looked for suspects, Plaintiff was found and detained about four blocks

from the scene by Defendant Officers Pergande and Pang, and he was "ordered" into a police car. (*Id.* ¶¶ 36–37.) Defendant Officer Pergande informed Plaintiff that he was being taken into custody because he matched the shooter's description. (*Id.* ¶¶ 38–45.)

After his arrest, Plaintiff was driven to the crime scene along with other potential suspects to be identified by witnesses at a "show-up." (*Id.* ¶ 57.) Plaintiff alleges that he was the only detainee who "bore any resemblance to the descriptions of the shooter," and that these similarities were "minimal" as he had no ponytail, was significantly taller than the shooter (5'10"), did not have on white shoes, and was not "clean shaven." (*Id.* ¶¶ 40–45.) Rather, Plaintiff contends that he did not fit the description "other than wearing a blue hooded shirt and dark ¾-length shorts." (*Id.* ¶¶ 39, 65–66.)

As the Defendant Officers presented a handcuffed Plaintiff to witnesses at this "show-up," Defendant Officers Pergande, Pang, Guevara, and Halvorsen advised the witnesses that the presented suspects contained the "murderer," and that the "offender was in custody." (*Id.* ¶¶ 60–64.) After these instructions, Plaintiff was identified by two witnesses: Carl Richmond (Richmond) and Rey Lozada (Lozada). (*Id.* ¶ 66.)

Plaintiff was then transported to the police station and placed in a line-up, where Defendant Officers Guevara and Halvorsen showed other witnesses photographs of Plaintiff and allegedly instructed witnesses to select Plaintiff as the shooter. (*Id.* ¶¶ 72–73.) Plaintiff alleges that he was the only one in the line-up

wearing clothes matching the shooter's description and that Defendant Officers instructed witnesses Margaret and Michael Fleming to identify the shooter solely by his clothing. (*Id.* ¶¶ 75, 79–81.) Plaintiff was then identified by four witnesses at the line-up: Richmond, Lozada, Margaret Fleming, and Michael Fleming. (*Id.* ¶¶ 76, 85.)

Assistant State's Attorney Sally Bray initially declined to approve charges against Plaintiff after reviewing the available evidence and determining that the evidence collected at that point was insufficient. (*Id.* ¶¶ 108–13.) Undeterred, the Defendant Officers allegedly manufactured additional evidence to facilitate the approval of charges against Plaintiff. (*Id.* ¶¶ 115–39.) Part of the ruse included a purported "jailhouse confession," in which Plaintiff supposedly confessed to the murder to two other detainees, Francisco Vicente (Vicente) and Edwin Maldonado (Maldonado). (*Id.* ¶ 120.) Plaintiff contends that Vicente—a heroin addict facing up to one hundred years of incarceration on robbery charges—was detained by Defendant Officers Guevara and/or Halvorsen for hours, threatened, had force used against him, and was promised assistance with his charges. (*Id.* ¶ 130.) So that Vicente's false narrative would appear more credible, Plaintiff alleges that Defendant Officers Guevara and/or Halvorsen gave Vicente details regarding the Ruvalcaba shooting, as well as a handwritten statement with Plaintiff's sham confession. (*Id.* ¶¶ 131–32.)

Plaintiff further asserts that Defendant Officers Guevara and/or Halvorsen conspired with Defendant Assistant State's Attorney Kevin Hughes (Defendant Hughes) to record Vicente's false statements, as Defendant Hughes documented that

Vicente himself provided the contents of the statement. (*Id.* ¶¶ 133–38.) Defendant Hughes then approved charges against Plaintiff based on the fabricated confession. (*Id.* ¶¶ 141–44.)

Based generally on the foregoing evidence, including the witnesses' identification of Plaintiff as the shooter from the show- and line-ups, Plaintiff was convicted and sentenced to forty-five years of imprisonment. (*Id.* ¶¶ 221–25.) But due to continued allegations of Defendant Officer Guevara's misconduct, the City of Chicago commissioned Sidley Austin to conduct an independent investigation evaluating the credibility of Plaintiff's conviction, which concluded that Plaintiff had been wrongfully convicted. (*Id.* ¶¶ 227–29.) In 2018, the Cook County Circuit Court vacated Plaintiff's 1996 conviction for Ruvalcaba's murder and the City dismissed the charges. (*Id.* ¶¶ 233–35.) Plaintiff received a Certificate of Innocence in 2019. (*Id.* ¶ 235.)

After receiving his Certificate, Plaintiff filed the present suit alleging that the investigation and municipal policies that led to his wrongful conviction were constitutionally flawed (*see* Dkt. 256 at 55) against: (1) Reynaldo Guevara, Edward Mingey, Kenneth Pang, Alan Pergande, Richard Maher, Louis Marron, JoAnn Halvorsen, as Special Administrator for Ernest Halvorsen (deceased), and other unknown law enforcement officers (collectively, "Defendant Officers"); (2) the City of Chicago (the "City"); (3) former Assistant State's Attorney Kevin Hughes ("Defendant Hughes"); and (4) Cook County (the "County"). (*See* Dkt. 1.)

Plaintiff brings eight-counts of 42 U.S.C. § 1983 violations, as well as five state law counts for intentional infliction of emotional distress, malicious prosecution, *respondeat superior*, civil conspiracy, and indemnification. The Defendants move to dismiss. (*See* Dkts. 270–71.)

## II.   STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Plaintiffs "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). A plaintiff can plead himself or herself out of court on a statute of limitation basis, however, if

the face of the complaint reveals that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010). A motion to dismiss based on failure to comply with the statute of limitations should be granted "only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (cleaned up). If there is any set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If, however, the "allegations of the complaint itself set forth everything necessary" to determine the timeliness of Plaintiff's claims, the statute of limitations defense may be raised and decided on a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

## III. DISCUSSION

Defendants contend that the TAC must be dismissed. (*See generally* Dkts. 270–71.) Defendants, however, were not entirely pellucid when presenting their dismissal arguments. For some counts, *all* Defendant Officers seemingly challenge the given count.[1] Some counts are not challenged at all.[2] For other counts, however, only a

---

[1] (*See, e.g.*, Dkt. 270 at 13 ("Plaintiff Fails to State a *Brady* Violation (Count II) Against All Defendant Officers."); *id.* at 17 ("Plaintiff's Destruction of Evidence Claim (Count III) Is Not Plausible And Must Be Dismissed.").)

[2] For instance, Defendant Officers and the City do not challenge Count VII (*see* Dkt. 270 at 27) or Count XI (*see id.*), so the Court does not address these Counts.

select subset of Defendants pursue dismissal.[3] This opinion, therefore, approaches the motions as follows: where Defendant Officers and the City use general language, dismissal is construed as being sought by all Defendants. Where only select Defendants seek dismissal, the Court construes this as a concession that the claim is viable against the Defendants not identified as challenging the relevant count.

## A. Fabrication of Evidence against Defendant Officers (Count I)

In Count I, Plaintiff alleges that the Defendants violated the Due Process Clause of the Fourteenth Amendment by depriving him of "his constitutional right to a fair trial" by fabricating evidence. (Dkt. 256 at 56.) The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This provision protects "criminal defendants from being deprived of their liberty based on various kinds of police misconduct." *Fletcher v. Bogucki*, 2021 WL 4477968, at * 3 (N.D. Ill. Sept. 30, 2021). Violative conduct includes a police officer who "manufactures false evidence against a criminal defendant," if that evidence is later used to deprive the defendant of his liberty in some way. *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). As a result, to establish a claim for evidence fabrication, the claimant must

---

[3] (*See, e.g.*, *id.* at 20 ("Plaintiff's *Manuel* Pre-trial Detention Claim (Count IV) against Maher and Marron should be dismissed."); *id.* at 23 ("Plaintiff Has Failed to State an IIED Claim Against Defendants Marron and Maher."); *id.* at 24 ("Plaintiff Does Not Sufficiently Plead a Malicious Prosecution Claim Against Defendant Mingey.").) Defendant Officers and the City attempt to explain its rationale for the approach it took, (*see* Dkt. 294 at 7), but the explanation provided is unhelpful because it does not clarify whether the allegations in the TAC are all or partially viable for the unnamed Defendants (*see* Dkt. 294 at 7, Dkt. 270 at 27.)

be "convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020).

Plaintiff alleges that the Defendants violated his due process rights because of the following fabrications: (1) witnesses Vicente and Maldonado's statements inculpating Plaintiff; (2) the Spanish Cobra witnesses' identification of Plaintiff; (3) the neighborhood witnesses' identification of Plaintiff's clothes; and (4) police reports. (Dkt. 256 at 56–57.) Plaintiff also alleges that Defendants: (1) used suggestive identification procedures to falsify evidence; (2) obtained Plaintiff's charge and conviction by using that false evidence; (3) failed to correct fabricated evidence; and (4) knew that the false evidence was used. (*Id.* at 56.)

Defendant Officers first contend that Count I must be dismissed because neither Vicente nor Maldonado testified at trial. (Dkt. 270 at 11.) Although evidence fabrication claims generally arise from the use of fabricated evidence at trial, falsified evidence need not be presented at trial to state an actionable claim. *See Armstrong v. Daily*, 786 F.3d 529, 551 (7th Cir. 2015). Evidence fabrication claims may also be based on pre-trial detention resulting from the use of fabricated evidence to secure an indictment. *See Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014) (*Fields II*) ("[T]he fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him."). Plaintiff alleges the fabrication of evidence claim based in part on his pretrial detention, not just misconduct at trial. (*See* Dkt. 256 at 16–17, 23–24, 56–57.) This is sufficient for purposes of a motion to

dismiss. As a result, the Court declines to dismiss the due process claim in Count I with respect to Vicente and Maldonado's statements.

Defendant Officers Maher and Marron contend that since they are alleged to have interacted with only Vicente, Count I fails against them in its entirety. (Dkt. 270 at 12; *see also* Dkt. 271 at 8–10.) This argument is unpersuasive because Plaintiff alleges Officers Maher and Marron were involved directly with the conjuring false statements from Vicente and Maldonado. The Court declines to dismiss Count I against Defendant Officers Maher and Marron.

In addition, Defendant Hughes and the County argue that Defendant Hughes is entitled to absolute immunity because his conduct was prosecutorial in nature. (Dkt. 271 at 5, 10.) Whether Defendant Hughes enjoys absolute immunity against Plaintiff's claims is a close call. Prosecutors are "absolutely immune from suit for all actions and decisions undertaken in furtherance of [their] prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (*Fields I*). Put another way, absolute prosecutorial immunity encompasses prosecutorial conduct that is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler* v. *Pachtman*, 424 U.S. 409, 430 (1976)); *see also Fields I*, 672 F.3d at 510 (absolute immunity covers "any action directly relevant to a prosecutor's ability to conduct a trial."). But this immunity does not extend to "job responsibilities that are not prosecutorial in nature." *Fields I*, 672 F.3d at 511. Accordingly, the immunity's reach recognizes "a difference between the advocate's role in evaluating evidence and interviewing witnesses" while preparing

for trial, "and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273. As a result, the degree of immunity prosecutors are afforded "depends on their activity in a particular case." *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) (quoting *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000)).

Whether an action taken by a prosecutor "falls within the scope of his prosecutorial duties depends upon its function." *Fields I*, 672 F.3d at 510. Courts must consider whether "the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Id.* Where the "prosecutor performs the investigative functions normally performed by a detective or police officer," absolute prosecutorial immunity is no shield to liability, although qualified immunity might be. *Buckley*, 509 U.S. at 273.

Defendant Hughes analogizes Plaintiff's TAC to *Hunt v. Jaglowski*, wherein the Seventh Circuit found that absolute immunity barred the claimant's Section 1983 count against a prosecutor. 926 F.2d 689 (7th Cir. 1991); (Dkt. 271 at 6–7; Dkt. 291 at 3–4.) In *Hunt*, the plaintiff alleged that the prosecutor assigned to his case assisted the police in obtaining a false confession for an armed robbery and murder. *Hunt*, 926 F.2d at 691. The police allegedly interrogated and beat the plaintiff and deprived him of sleep for over thirty hours. *Id.* at 693. At one point in his interrogation, the prosecutor left the room, and the plaintiff testified that one of his interrogators threatened to resume the beatings unless he gave his false confession to the

prosecutor. *Id.* at 691–92. Under duress, the plaintiff confessed. *Id.* The prosecutor then reentered the room and took the plaintiff's confession.

The Seventh Circuit determined that the prosecutor was entitled to absolute immunity from the plaintiff's resulting lawsuit because he:

> was not present at the time Hunt was arrested and taken to Area 5; [he] was not present during the polygraph test nor the lineup; [he] was not present when Hunt claims he was beaten; and [he] was not present at the particular time Hunt alleges he gave his coerced confession.

*Id.* at 693. The Seventh Circuit found that such an act was one toward "initiating a prosecution and in presenting the State's case," so the prosecutor was entitled to absolute immunity. *Id.* (cleaned up).

At this stage, Plaintiff's allegations are enough to survive a motion to dismiss because the Defendant Officers allegedly *were* present or involved with Defendant Hughes. In other words, Plaintiff alleges that Defendant Hughes "conspired with the Defendant Officers . . . to conceal and fabricate evidence, manipulate witness testimony, and maliciously prosecute Plaintiff for Salvador Ruvalcaba's murder." (Dkt. 256 at 4.) Plaintiff also contends that Defendant Hughes conspired with Defendant Officers "to record a false statement on Vicente's behalf." (*Id.* at 18.) In addition, Plaintiff asserts that Defendant Hughes "purposefully allowed Defendants Guevara and/or Halvorsen to dictate Vicente's statement and recorded Guevara and/or Halvorsen's account of Vicente's statement." (*Id.* at 19.) Plaintiff alleges that Defendant Hughes then created a document he knew was false, to credibly support the future charges against Plaintiff, which he approved himself. (*Id.*) Throughout the TAC, Plaintiff's allegations raise an inference that Defendant Hughes was acting in

an investigatory, rather than prosecutorial, function, and therefore is not protected by absolute prosecutorial immunity. *See Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1045–46 (N.D. Ill. 2016) (distinguishing *Hunt* on the basis that the plaintiff alleged that the prosecutor was present during, and helped police officer obtain, a coerced confession). If the evidence produced in discovery shows, however, that Defendant Hughes did not actually participate in the alleged conduct but instead was present only to a statement from a witness, he may be entitled to summary judgment on grounds of absolute immunity. *See Tillman v. Burge*, 813 F. Supp. 2d 946, 973–94 (N.D. Ill. 2011) (citing *Hunt*, 926 F.2d at 693). As a result, the Court declines to find at this stage that Defendant Hughes is entitled to absolute prosecutorial immunity.

## B. *Brady* Violations against Defendant Officers (Count II)

In Count II, Plaintiff alleges that Defendant Officers committed *Brady* violations by deliberately withholding exculpatory evidence from Plaintiff and the prosecutors, "thereby misleading and misdirecting the criminal prosecution of Plaintiff." *Brady v. Maryland*, 373 U.S. 83 (1963); (Dkt. 256 at 57–58.) For instance, Plaintiff pleads that Defendants failed to conduct either a gunshot residue or a polygraph test, failed to document Plaintiff's requests for testing, withheld and suppressed documentation of exculpatory witness statements and an excessive force complaint, and intentionally erased a the memory of Plaintiff's pager. (*Id.* at 13–17.)

A *Brady* violation may provide the basis for a due process claim when officers fail to disclose exculpatory evidence that the plaintiff needs to impeach fabricated evidence at trial. *See Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017).

13

This is so even if the plaintiff knew that the evidence was fabricated. That the plaintiff knew evidence was fabricated at the time does not preclude a *Brady*-based due process claim if the officers failed to disclose circumstances pertaining to the fabrication that would have enabled the plaintiff to challenge the validity of the evidence at trial. *Id.*

A plaintiff must show three elements "in order to prove a *Brady* violation: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning there is a reasonable probability that the result of the proceeding would have been different." *Beaman v. Freesmeyer*, 776 F.3d 500, 506 (7th Cir. 2015). Under the last element, a plaintiff "need only show that the new evidence undermines the confidence of the verdict." *Id.* (citation omitted); *see also Wearry v. Cain*, 577 U.S. 385, 392 (2016) (per curiam) (petitioner "must show only that the new evidence is sufficient to 'undermine confidence' in the verdict.").

Defendant Officers first contend that Plaintiff's *Brady* claim related to witness interviews is foreclosed by the Seventh Circuit's decision in *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), because Plaintiff bases his *Brady* claim on Defendant Officers' suppressing "information about their coercion of witnesses through manipulation and suggestion that resulted in fabricated statements." (Dkt. 270 at 14, 16.) Defendant Officers also contend that "erasing" Plaintiff's alibi witnesses' phone number from Plaintiff's pager is not a Brady violation because the phone number was

not exculpatory evidence. (Dkt. 270 at 14–15.) Defendant Officers further contend that Plaintiff cannot support a *Brady* violation because he was fully aware of the suppressed evidence and had the ability to contact her. (*Id.* at 15 (citing *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) (there is no Brady violation where Plaintiff knows of the evidence) (overruled in part on other grounds by *Wallace v. City of Chicago*, 440 F.3d 421, 423 (7th Cir. 2006)).) Finally, Defendant Officers contend that the excessive force complaint in which Plaintiff was a witness could not be suppressed in violation of *Brady* because Plaintiff and his attorneys had the information about the excessive force complaint, and used this information to question a witness. (Dkt. 270 at 16–17.)

Plaintiff's allegations in the TAC are sufficient to state a plausible *Brady* claim. As an initial matter, *Brady* evidence is assessed cumulatively, not in the piecemeal episodes presented by Defendants. *See Goudy v. Basinger*, 604 F.3d 394, 400–01 (7th Cir. 2010). For instance, in the context of police officers' failure to disclose the methods of an interview, the Seventh Circuit in *Saunders–El* explained:

> In the end, Saunders–El seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution. Accordingly, Saunders–El's *Brady* claim is more appropriately characterized as a claim for malicious prosecution—that is, a claim that the officers commenced his prosecution without probable cause—which cannot form the basis of a constitutional tort.

*Id.* at 562 (emphasis in original). The Seventh Circuit in *Saunders–El* relied on earlier Seventh Circuit cases, including *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029

15

(7th Cir. 2006), in which the Seventh Circuit concluded that *Brady* cannot be a basis for a claim against police officers who fail to disclose the circumstances of a plaintiff's interrogation. *Id.* The Seventh Circuit also relied on *Gauger*, 349 F.3d at 360, where a panel of the court rejected "the plaintiff's argument that *Brady* requires police to disclose truthful versions of statements made during interrogations." *Id.*

But here, Plaintiff's *Brady* claim is based on more than just the Defendant Officers' failure to disclose their unlawful interrogation tactics. In addition to this failure, Plaintiff alleges that Defendant Officers suppressed information in Plaintiff's pager regarding contact with his alibi witness. (Dkt. 256 at 14, 57–58.) Plaintiff also claims that Defendant Officers suppressed the implements of their coercion, such as inducing a witness to lie through physical force, threats, and undisclosed promises. (*Id.* at 17–20, 57–58.) Plaintiff also alleges that Defendant Officers engaged in unconstitutional practices, such as showing photographs of Plaintiff to eyewitnesses before lineups and instructing them that Plaintiff was the shooter. (*Id.* at 11, 57–58.) Plaintiff further alleges that Defendant Officers suppressed evidence that Plaintiff's hands were free of gunshot residue when he was arrested shortly after the murder, and that Plaintiff had requested a gunshot residue test and was denied, even though such a test was easily available. (*Id.* at 14–15, 57–58.)

Plaintiff's allegations are not merely allegations that Defendants *withheld* information about their improper tactics, but rather that they *created* notes and/or reports documenting exculpatory witness statements and their own misconduct, which they then suppressed. Moreover, Plaintiff alleges that Defendant Officers

suppressed documentation that they knew Plaintiff was a witness to a misconduct investigation against some of them, and suppressed documentation that the arresting officers on the murder Plaintiff was convicted of learned about that investigation two days before Plaintiff was arrested. (*Id.* at 8, 13.)

Courts in this district have concluded that similar allegations state a *Brady* claim based on events that transpired outside of the interrogation room. *See, e.g.*, *Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768, at *16 (N.D. Ill. Oct. 26, 2016) (allegations of "pattern of misconduct and obstruction of justice" was sufficient *Brady* claim); *Tillman*, 813 F. Supp. 2d at 962 (allegations of " 'suppressing, destroying, and preventing the discovery' of exculpatory evidence, including that of 'the instruments of torture,' " and "obstructing and improperly influencing investigations" are "circumstances that substantially exceed what Tillman was aware of based on his presence at the interrogation"); *Cannon v. Burge*, 2006 WL 273544, at *12 (N.D. Ill. Feb. 2, 2006) ("Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady* violation."); *Patterson v. Burge*, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004) ("[I]n addition to charging defendants with hiding the fact that his confession was coerced and fabricated . . . Patterson accuses defendants of obstructing justice and violating his right to a fair trial through actions they took outside the interrogation room.").

Viewing Plaintiff's allegations and all reasonable inferences in his favor, the allegations plausibly allege that Defendant Officers conduct was "so egregious that no reasonable person could have believed that it would not violate established rights." *Beaman*, 776 F.3d at 508–09. As a result, individually, and cumulatively, Plaintiff states a plausible *Brady* claim. Defendant Officers' motion to dismiss Count II is denied.

### C. Destruction of Evidence Claim against Defendant Officers (Count III)

In Count III, Plaintiff alleges that Defendant Officers deprived Plaintiff of his constitutional right to a fair trial by deliberately, and in bad faith, "causing the loss of and/or failing to preserve evidence that Plaintiff could have used to prove his innocence." (Dkt. 256 at 58–59.) Defendant Officers argue that Plaintiff fails to state a viable destruction of evidence claim because "the allegedly destroyed phone number was neither exculpatory nor of a character that Plaintiff could not obtain comparable evidence." (Dkt. 270 at 17–19.) Plaintiff counters that he has plausibly alleged a destruction of evidence claim against Defendant Officers. (*See* Dkt. 285 at 23–24.)

The suppression by the prosecution "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty of production extends to the executive branch, including the police. *See Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008); *see also Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) (police officers "they must turn over potentially exculpatory evidence when they turn over investigative files to the

18

prosecution"). In addition, the duty to refrain from "bad-faith *destruction* flows necessarily, and obviously, from [*Brady's*] familiar holding that *suppression* of material exculpatory evidence violates due process." *Armstrong*, 786 F.3d at 550.

A destruction of evidence claim has two essential elements: "(1) the defendant destroyed exculpatory evidence in bad faith or engaged in other misconduct (2) that caused a deprivation of the plaintiff's liberty." *Id.* at 551. Bad faith "requires more than carelessness, it requires a 'conscious effort to suppress exculpatory evidence.' " *United States v. Fletcher*, 634 F.3d 395, 408 (7th Cir. 2011) (quoting *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000)). Bad faith is sufficiently pled when the allegations paint the defendant as pursuing the plaintiff through any means necessary. *Armstrong*, 786 F.3d at 547. The alleged exculpatory value of the destroyed evidence need only be potential or apparent. *Id.* at 552; *see also id.* at 548–49 (plaintiff's inability to show that destroyed evidence was actually exculpatory did not defeat his due process claim). Moreover, a plaintiff's awareness of the destroyed evidence and their ability to obtain the information encompassed in that evidence from another source are irrelevant. *Id.* at 551.

Plaintiff states a viable destruction of evidence claim against Defendant Officers. Plaintiff alleges that Defendant Officers intentionally, and in bad faith, destroyed Plaintiff's pager, which contained the phone number of an alibi witness. (Dkt. 256 at 14, 58–59.) Plaintiff alleges that Defendants failed to preserve evidence of a lack of gunshot residue on Plaintiff's hands, even though it was "easily available

to them." (*Id.* at 14–15.) At this stage, Plaintiff's claim is plausible. As a result, Defendant Officers' motion to dismiss Count III is denied.

### D. Wrongful Pretrial Detention (Count IV)

In Count IV, Plaintiff alleges that he was wrongfully detained pretrial in violation "of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment." (Dkt. 256 at 59–61.) Defendant Officers argue that Plaintiff's claim is untimely. (Dkt. 270 at 19–20.) Plaintiff counters that the claim is timely because the "claim did not accrue until the wrongful deprivation of his liberty came to an end, *i.e.* after Plaintiff's wrongful conviction was vacated." (Dkt. 285 at 24–26.)

A claim of arrest without probable cause is one challenging an unlawful pretrial detention, and that claim accrues when the detention ceases. *See Lewis v. City of Chicago*, 914 F.3d 472, 476–78 (7th Cir. 2019). Plaintiff was convicted in May 1993, "which is as long as any 'pretrial' detention could have lasted." *Marshall v. Elgin Police Dep't & Detective Houghton*, 2023 WL 4102997, at *2 (7th Cir. June 21, 2023). Even if Plaintiff was in jail the entire time, his initial complaint filed in 2019—well more than two years after the date of conviction—is untimely. *See id.* Plaintiff's argument has squarely been rejected by the Seventh Circuit a number of times. *See id.* As a result, Defendant Officers' motion to dismiss the wrongful pretrial detention claim in Count IV is granted. Because the statute of limitations is a bar against all Defendants, the dismissal applies across the board. Because this flaw cannot be cured

by repleading, the dismissal is with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

### E. Conspiracy to Deprive Constitutional Rights and Failure to Intervene (Counts V and VI)

In Count V, Plaintiff alleges that Defendants "reached an agreement among themselves to frame Plaintiff for a crime he did not commit . . . by fabricating evidence that would be used to convict Plaintiff; and by withholding exculpatory information from Plaintiff's defense and the prosecution." (Dkt. 256 at 61–62.) In Count VI, Plaintiff alleges that during the violations alleged in the TAC, "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (*Id.* at 62.) Defendant Officers argue that the claims fail because Plaintiff fails to adequately plead an underlying constitutional violation against Defendant Officers Maher and Marron. (Dkt. 270 at 22–23.) In addition, Defendant Hughes and the County argue that the failure to intervene claim fails because Defendant Hughes is entitled to qualified immunity. (Dkt. 271 at 10–12.) Plaintiff counters that he plausibly alleged conspiracy and failure to intervene claims against Defendant Officers Maher and Marron. (*See* Dkt. 285 at 28.) In addition, Plaintiff counters that Defendant Hughes is not entitled to qualified immunity with respect to the failure to intervene claim. (*Id.* at 35–37.)

#### 1. Defendant Officers

A Section 1983 plaintiff may recover from a defendant who conspired to violate plaintiff's constitutional rights. To establish conspiracy liability under Section 1983,

a plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman*, 776 F.3d at 510 (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). In other words, a plaintiff must " 'show an underlying constitutional violation' and 'demonstrate that the defendants agreed to inflict the constitutional harm.' " *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018)).

A Section 1983 plaintiff may recover from a defendant who fails to intervene, and that failure renders them culpable. To prevail on a failure-to-intervene claim, a plaintiff must show that Defendants "(1) had a reason to know that a fellow officer committed a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the harm from occurring." *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 840 (N.D. Ill. 2020) (cleaned up). As discussed above, Plaintiff states a viable claim against Defendant Officers Maher and Marron, so Defendant Officers' premise that the TAC relies on deficient claims is incorrect, and the court declines to dismiss Counts V or VI with respect to the Defendant Officers.

### 2. *Defendant Hughes*

On the other hand, the Court finds that Defendant Hughes is entitled to qualified immunity with respect to Count VI. To reiterate, the doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (quotation marks omitted). Qualified immunity shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotations and citations omitted). The second question is whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson*, 555 U.S. at 232. The Court can decide to answer one question or both, and in which order. *Id.* at 242 ("[T]he judges of the district courts . . . are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

The Court begins with whether the right at issue was clearly established at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining what constitutes clearly established law, the Court first looks to Supreme Court precedent and then to the Seventh Circuit. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (quotations and citations omitted). When there

23

is no direct controlling authority, the Court may rely on decisions from other circuits to the extent that they constitute "a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quotations and citations omitted).

A plaintiff "can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the Defendants' conduct was unconstitutional or by presenting evidence that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010) (citations omitted).

Clearly established law comes from holdings, not dicta. *Cf. Woods v. Donald*, 575 U.S. 312, 315 (2015) (" '[C]learly established Federal law' for purposes of [28 U.S.C.] § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions."); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (a district court's "footnoted dictum" did not clearly establish the law for purposes of qualified immunity). Dictum is not law, and hence cannot be clearly established law.

It was "not clearly established in 1993"—the year of Plaintiff's allegations— that "prosecutors acting as investigators had a duty to intervene when their fellow officers committed constitutional wrongs." *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1038 (N.D. Ill. 2018). None of the cases cited by Plaintiff stand to the contrary.

To be sure, the Seventh Circuit has long-established that *police officers* have a duty to intervene against their fellow officers who violated the constitutional rights

of third parties. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[O]ne who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). And in *Whitlock v. Brueggemann*, the Seventh Circuit established that a prosecutor acting as an investigator would be held to the same standard as a police officer. 682 F.3d at 583 ("[A] prosecutor whose investigatory conduct is the proximate cause of the due process violation that occurs when the false evidence is introduced at trial is held to the same standard of liability as a police officer who does the same thing."). But this decision is from 2012, "so it had no impact on the notice available to prosecutors in 1993." *Serrano*, 315 F. Supp.3d at 1039. Defendant Hughes cannot be held to a standard that became clearly established decades after his alleged wrongdoing.

Because Plaintiff has failed to identify any controlling precedent (or persuasive noncontrolling authority) rendering it "beyond debate" that any reasonable prosecutor would know that their inactions violated the constitutional rights of a third party, Defendant Hughes is entitled to qualified immunity. *See al-Kidd*, 563 U.S. at 741. Count VI is dismissed. Because the dismissal is based on qualified immunity, the dismissal is with prejudice. *See Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993).

### F.    Intentional Infliction of Emotional Distress (Count VIII)

In Count VIII, Plaintiff alleges a claim for intentional infliction of emotional distress ("IIED") against Defendants. (Dkt. 256 at 64–65.) Plaintiff alleges that

Defendants engaged in extreme and outrageous conduct that they either intended "would cause severe emotional distress to Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff." (*Id.* at 64–65.) Defendant Officers argue that the claim fails against Defendant Officers Marron and Maher because it is untimely. (Dkt. 270 at 23–24.) In addition, Defendant Hughes and the County also argue that the claim fails because it is untimely. (Dkt. 271 at 12–13.) Defendant Hughes and the County also contend that the claim fails on the merits, as Defendant Hughes, is only alleged to have fabricated the witnesses' statement, and he did not testify at trial. (*Id.* at 12–13.) Plaintiff counters that *Heck v. Humphrey*'s delayed accrual rule applies to his IIED claim, thus making it timely against all Defendants. 512 U.S. 477 (1994); (*see* Dkt. 285 at 28–31.)

A cause of action for "intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). A wrongful conviction can be the source of the extreme emotional distress required for an IIED claim. *See Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010). That said, there is a split in authority among district courts in this Circuit as to whether Illinois recognizes the delayed accrual rule for IIED claims. A number of cases hold they do not. *See, e.g.*, *Batchelor v. City of Chicago*, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020). In contrast, a number of courts have held that they do recognize it. *See, e.g.*, *Treadwell v. Salgado*, 2021 WL 3129290, at *4 (N.D. Ill. July 23, 2021) (collecting cases). One judge of the Seventh Circuit has described Illinois courts as "embrac[ing]" *Heck's* delayed accrual rule. *See Northfield*

*Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring). The reasoning is that when an IIED claim is based on the same misconduct that procured the plaintiff's conviction, the statute of limitations does not begin to run until the wrongful conviction has been overturned. *See, e.g.*, *Hill v. City of Chicago*, 2020 WL 509031, at *5 (N.D. Ill. Jan. 31, 2020).

Plaintiff makes such allegations. As alleged in the TAC, Plaintiff's IIED claims are based on the same conduct that led to his conviction. (*See, e.g.*, Dkt. 256 at 16–19, 22–24, 56.) Alleging those facts before his conviction was vacated would have directly attacked the validity of the convictions—in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994). Courts in this District have found similar IIED allegations, which attack the validity of convictions, to be subject to *Heck's* delayed accrual rule. *See, e.g.*, *Smith v. Burge*, 222 F. Supp. 3d 669, 693 (N.D. Ill. 2016) (plaintiff's claims accrued when his conviction was set aside because "[p]laintiff base[d] his IIED claim on [d]efendants coercing his confession by torture, constructing and fabricating his confession, and procuring his prosecution, conviction, and imprisonment via his coerced and fabricated confession"). Accordingly, the Court joins the other decisions in this District that have found, under similar circumstances, that a plaintiff cannot bring an IIED claim based on conduct that led to a conviction until that conviction has been overturned. *See, e.g.*, *Andersen v. City of Chicago*, 2019 WL 6327226, at *6 (N.D. Ill. Nov. 26, 2019). The Court declines to dismiss Count VIII against Defendants.

### G. State Law Malicious Prosecution (Count IX)

In Count IX, Plaintiff alleges that all of the "individual Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause, [and these] judicial proceedings were instituted and continued with malice and resulted in injury to Plaintiff." (Dkt. 256 at 65–66.) Defendant Officers argue that the claim fails because Plaintiff fails to adequately plead a malicious prosecution claim against Defendant Officer Mingey because there are no allegations that he was involved in commencing or continuing the prosecution. (Dkt. 270 at 24–25.) In addition, Defendant Hughes and the County also argue that the Court should decline to exercise supplemental jurisdiction over this claim (assuming their other arguments were successful). (Dkt. 271 at 14–15.) Plaintiff counters that he has plausibly alleged that Defendant Officer Mingey was involved in "the commencement or continuation of a criminal proceeding." (Dkt. 285 at 31.) In addition, Plaintiff contends that the Court should exercise supplemental jurisdiction with respect to Defendant Hughes since federal claims survive against him. (*Id.* at 37.)

To state a claim for malicious prosecution under Illinois law, "a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Sneed v. Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998) (cleaned up); *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). If any element is missing, the claim fails. *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006).

Plaintiff's malicious prosecution allegations are sufficient. An individual can be liable for "commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive[s] prosecutors." *Beaman v. Freesmeyer*, 131 N.E.3d 488, 499 (Ill. 2019). The presumption of prosecutorial independence "can be overcome by showing that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." *Id.*; *see also Johnson v. Winstead*, 447 F. Supp. 3d 715, 721 (N.D. Ill. 2019).

Plaintiff alleges that Defendant Officer Mingey supervised other Defendant Officers "at all relevant times" and "facilitated, condoned and approved the constitutional violations committed by" them. (Dkt. 256 at 4.) Plaintiff alleges that Defendant Officer Mingey not only supervised the identification procedures, but he also approved of them and facilitated their occurrences. (*Id.* at 4, 11, 13.) Plaintiff alleges that Defendant Officer Mingey participated in nefarious scheme with the witness Vicente. (*Id.* at 27–28.) And Plaintiff also alleges that Defendant Officer Mingey was the watch commander for the department on the day of the murder investigation. (*Id.* at 13.) In sum, Plaintiff alleges facts that suggest actions or statements made or undertaken by Defendant Officer Mingey reflected that he exerted influence over commencing or continuing the criminal proceedings against Plaintiff. At this stage, this is more than sufficient. As a result, the Court declines to dismiss Count IX against Defendant Officer Mingey, as Plaintiff states a plausible

claim against Defendants. In addition, because Plaintiff has alleged sufficient federal claims, the Court will retain supplemental jurisdiction over this claim with respect to Defendant Hughes.

### H. *Respondeat Superior* and Indemnification (Counts X and XII)

In Count X, Plaintiff alleges a *respondeat superior* claim against the City and the County. (Dkt. 256 at 66.) In Count XII, Plaintiff alleges an indemnification claim against the City and the County. (Dkt. 256 at 67–68.) The City argues that the claims fail because they are derivative of claims against Defendant Officers that fail. (Dkt. 270 at 29.) In addition, the County argues that that the claims fail because they are derivative of claims against Defendant Hughes that. (Dkt. 271 at 13–14.) Given that claims against Defendant Officers and Defendant Hughes survive, the Court declines to dismiss Counts X and XII at this time.

### I. First Amendment Retaliation (Count XIII)

Finally, in Count XIII, Plaintiff alleges a First Amendment retaliation claim against Defendant Officers. (Dkt. 256 at 68–69.) Defendant Officers argue that the claim fails because it is untimely as well as fails to state a claim for relief because "failed to allege any of these Defendants were aware that Plaintiff was a witness to an excessive force complaint." (Dkt. 270 at 20–21.) Plaintiff counters that he has plausibly alleged a timely claim against Defendant Officers. (*See* Dkt. 285 at 26–28.)

As the Seventh Circuit has held, generally the statute of limitations clock begins to run on First Amendment retaliation claims "immediately after the retaliatory act occurred." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016).

Plaintiff contends that the Court should extend *Heck's* delayed accrual rule to First Amendment retaliation claims. (Dkt. 285 at 27.) The Court declines this invitation, particularly since the Seventh Circuit has squarely rejected this invitation, holding a First Amendment retaliation claim does not require a favorable termination of the underlying action. *See Towne v. Donnelly*, 44 F.4th 666, 673–74 (7th Cir. 2022) (First Amendment retaliatory prosecution claim accrued when charges that the plaintiff believed to be retaliatory were filed). To bring a retaliatory prosecution claim under the First Amendment, a plaintiff need only plead and prove an absence of probable cause for the underlying charge. *See Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) A plaintiff's allegations thus do not necessarily impugn or implicate the entire prosecution. In addition, a plaintiff need not assert or establish that he was confined or deprived of liberty as a result of the charges., *See, e.g.*, *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (setting forth elements of First Amendment retaliation claim). Indeed, in *Gekas*, the Seventh Circuit stated that "First Amendment retaliation claims and malicious prosecution claims are fundamentally different causes of action." *Gekas*, 814 F.3d at 894.

Charges were filed against Plaintiff in 1993. The applicable statute of limitations is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13–202 and *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007)). As a result, Defendant Officers' motion to dismiss Count XIII is granted. Because the statute of limitations is a bar against all Defendants, the dismissal

applies across the board. Because this flaw cannot be cured by repleading, the dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

## IV. CONCLUSION

Defendants' motions to dismiss (Dkts. 270–71) are granted in part and denied in part. Defendants' motions to dismiss Count I are denied. Defendant Officers' motion to dismiss Count II is denied. Defendant Officers' motion to dismiss Count III is denied. Defendant Officers' motion to dismiss the wrongful pretrial detention claim in Count IV is granted. Defendants' motions to dismiss Counts V and VI are granted in part and denied in part. The Court declines to dismiss Counts V or VI with respect to the Defendant Officers. Count VI, however, is dismissed with prejudice as to Defendant Hughes. Defendants' motions to dismiss Count VIII are denied. Defendant Officers' motion to dismiss Count IX is denied. Defendants' motions to dismiss Counts X and XII are denied. Defendant Officers' motion to dismiss Count XIII is granted SO ORDERED in No. 19-cv-02441.

Date: September 30, 2024

JOHN F. KNESS
United States District Judge