**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS SIERRA,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 18 C 3029<br><br>Hon. John Z. Lee<br>Hon. M. David Weisman |
| ARIEL GOMEZ,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 18 C 3335<br><br>Hon. Charles P. Kocoras |
| RICARDO RODRIGUEZ,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 18 C 7951<br><br>Hon. Mary M. Rowland<br>Hon. Susan E. Cox |
| ROBERT BOUTO,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 19 C 2441<br><br>Hon. John F. Kness<br>Hon. Susan E. Cox |

| | | |
|---|---|---|
| GERALDO IGLESIAS,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | ) | No. 19 C 6508<br><br>Hon. Franklin U. Valderrama<br>Hon. Maria Valdez |
| DEMETRIUS JOHNSON,<br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, *et al.*,<br>Defendants. | ) | No. 20 C 4156<br><br>Hon. Sara L. Ellis<br>Hon. Heather K. McShain |

**AMENDED NOTICE OF**
**RULE 30(b)(6) DEPOSITION OF CITY OF CHICAGO**

To: Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60602
*Counsel for City of Chicago*

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff will take the deposition of the City of Chicago before a Notary Public in and for the County of Cook and State of Illinois, on the dates and times noticed, all at Loevy & Loevy, 311 N. Aberdeen St., 3rd Floor, Chicago, Illinois 60607. The Instructions and Definitions set forth in Plaintiff's prior discovery requests to Defendant City of Chicago are hereby incorporated into this Notice as though fully set forth herein.

As to counsel of record for the City of Chicago, this is a demand upon you to designate and produce the person(s) who can provide binding testimony on behalf of the City of Chicago pursuant to FRCP 30(b)(6) on the following subjects:

1. The City's written and unwritten policies, practices, and customs in effect from 1986 through 1998, including for gang crimes specialists and officers, relating to the following:

a. Witness interrogations and interviews in homicide investigations, including interrogations and interviews of witnesses, eyewitnesses, criminal suspects and other witnesses. This request includes acceptable and prohibited techniques (*e.g.*, the use of force or coercion, threats, deception, etc.) during interrogations and interviews; the length of such interrogations and interviews; the ranks or titles of officers authorized to perform them; supervision of interrogations and interviews; documentation kept relating to such interviews and interrogations; and the administration of *Miranda* warnings and waivers.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIMES SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(a) FOR USE IN *SIERRA* AND *IGLESIAS*.**

b. Interrogations and interviews in homicide investigations of foreign language speaking witnesses, including witnesses, eyewitnesses, and criminal suspects. This request includes any differences in the treatment or tactics used against foreign language speaking witnesses; the presence of lawyers, counselors, or other individuals during police interactions with citizens of other countries; the use of translators in interviewing or interrogating foreign language speakers including who may serve as a translator and their role during interrogations and interviews; reliance on, and documentation of, foreign language speakers' statements in homicide investigations; and the presentation of such statements and foreign language speaking witnesses to Felony Review; and the administration of *Miranda* warnings and waivers.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THEPARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(b) FOR USE IN *SIERRA* AND *IGLESIAS*.**

c. The use and conduct of, documentation of, and supervision of identification procedures for actual or potential witnesses, such as show-ups, live/in person line-ups, photographic lineups/arrays, clothing line-ups, and single-photo identification procedures. This request includes but is not limited to the written and unwritten practices, procedures, customs, rules, and techniques for performing these identification procedures; inventorying of evidence resulting from an identification procedure; selection and use of live and photographic fillers; the minimum and maximum number of suspects and fillers; process for taking photographs used in a photo lineup; number of witnesses permitted to view a single lineup; instructions

given to participants subject to identification procedures, including communication of information about suspects or defendants; any other communications with witnesses subject to identification procedures; documentation of identification procedures and their results (including selection of suspects, fillers, or no identification); and creation and preservation of documentation relating to any of the foregoing subjects.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(c) FOR USE IN JOHNSON, IGLESIAS, BOUTO, SIERRA, GOMEZ, RODRIGUEZ**

d. The documentation and preservation of information learned during a homicide investigation. This request includes but is not limited to the use, storage, location and preservation of police reports, notes, witness statements, general offense reports, general progress reports, supplementary reports, lineup reports, evidence logs, inventory reports, and any other means of recording information learned during a homicide investigation. This request includes but is not limited to the City's 1982, 1983 and 1986 Special Orders, and any subsequent orders or directives through 1993, related to the street files practice discussed in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(d) FOR USE IN *SIERRA* AND *IGLESIAS*.**

e. The use, creation, contents of, storage, location, movement, and preservation of homicide investigative files kept at Chicago Police Department Detective Areas, including but not limited to so-called permanent retention/RD files, area files, investigative files, official files, unit files, street files, running files, clipboard files, Seraphine reports, and files kept by Gang Crimes Specialists at Gang Crimes North—including so-called activity logs or humper reports—and other Gang Crimes units. This request includes but is not limited to the different types of documents, notes, or other investigative information kept in each such type of file, as well as the storage, retention, duplication, or copying of each such type of file and the movement, storage, preservation or copying of such files to other divisions and sections of the Chicago Police Department—such as the Records Division, the Evidence and Recovered Property Section, and the Police Documents Section of the Chicago Police Department—and the timing of such movements in homicide investigations.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME**

**SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(e) FOR USE IN *SIERRA* AND *IGLESIAS*.**

f. Responding to subpoenas from criminal defendants requesting all records concerning a homicide investigation, including policies, practices and customs for ensuring that exculpatory information favorable to the accused in a criminal investigation, which would tend to show that the accused was not guilty of a crime or which would tend to undermine the credibility of any prosecution witness, is disclosed to suspects, criminal defendants, their attorneys, and prosecutors. This request includes but is not limited to the departments or personnel involved in processing such a subpoena request, the places within the Chicago Police Department from which documents, files, and information that would be produced in response to such a subpoena request; and the types of investigative documents that would be produced in response to such a subpoena request.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALIST, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(f) FOR USE IN *SIERRA* AND *IGLESIAS*.**

g. WITHDRAWN.

h. INTENTIONALLY LEFT BLANK

i. INTENTIONALLY LEFT BLANK

j. The use of confidential informants, anonymous calls, and confidential street sources, as those terms are used in the applicable police reports in these cases, by homicide detectives, including but not limited to any files, lists, databases, or any other Documents to document, track or store information about confidential informants, anonymous calls and confidential street sources, as those terms are used in the applicable police reports in these cases.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(j) FOR USE IN IGLESIAS, BOUTO, RODRIGUEZ.**

k. The use of gangbooks (i.e., albums/compilations of mugshots or other photos, also sometimes referred to as photobooks) and conduct of gangbook identification procedures in homicide investigations. This request includes but is not limited to the written and unwritten practices, procedures, customs, rules, and techniques for creating, selecting, or compiling photographs for inclusion in gangbooks, deciding what gangbooks to show witnesses, performing gangbook identifications, communication of information about suspects or defendants to witnesses who view gangbooks, any other communication with witnesses who view

gangbooks, reports written in connection with gangbooks, documentation of gangbook identification procedures, documentation of the selection of a suspect by a witness during a gangbook identification procedure, documentation of the selection of a filler by a witness during a gangbook identification procedure, documentation of the selection of no person by a witness during a gangbook identification procedure, and the preservation of gangbook photographs selected by a witness.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 1(k) FOR USE IN IGLESIAS, BOUTO, SIERRA, RODRIGUEZ.**

2. The training provided by the City to detectives, gang crimes specialists and officers, and other police officers from 1986 through 1998 on the following:

a. Witness and suspect interrogations and interviews in homicide investigations, including training on: acceptable and prohibited techniques (*e.g.*, the use of force or coercion, threats, deception, etc.) during interrogations and interviews; the length of such interrogations and interviews; the ranks or titles of officers authorized to perform them; the importance and requirement of documentation associated with such interviews or interrogations; and the administration of *Miranda* warnings and waivers.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIMES SPECALISISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(a) FOR USE IN *SIERRA* AND *IGLESIAS*.**

b. Interrogations and interviews of foreign language speaking suspects and witnesses, including training on: differences in the treatment or tactics used against foreign language speaking witnesses; the presence of lawyers, counselors, or other individuals during police interactions with citizens of other countries; the use of translators in interviewing or interrogating foreign language speakers, including who may serve as a translator and their role during interrogations and interviews; reliance on, and documentation of, foreign language speakers' statements in homicide investigations; the presentation of such statements and foreign language speaking witnesses to Felony Review; and the administration of *Miranda* warnings and waivers.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(b) FOR USE IN *SIERRA* AND *IGLESIAS*.**

c. The use and conduct of, documentation of, and supervision of identification procedures for witnesses such as show-ups, line-ups, photo arrays,

clothing line-ups, and single-photo identification procedures, including but not limited to training on techniques for performing these identification procedures; inventorying of evidence resulting from an identification procedure; selection and use of live and photographic fillers; the minimum and maximum number of suspects and fillers; process for taking photographs used in a photo lineup; number of witnesses permitted to view a single lineup; instructions given to participants subject to identification procedures, including communication of information about suspects or defendants; any other communications with witnesses subject to identification procedures; documentation of identification procedures and their results (including selection of suspects, fillers, no identification); and creation and preservation of documentation relating to any of the foregoing subjects.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(c) FOR USE IN JOHNSON, IGLESIAS, BOUTO, SIERRA, GOMEZ AND RODRIGUEZ**

d. The documentation and preservation of information learned during a homicide investigation, including but not limited to training on the use of police reports, notes, witness statements, general offense reports, general progress reports, supplementary reports, lineup reports, evidence logs, inventory reports, and any other means of recording information learned during a homicide investigation, as well as the importance and requirement of the use of such records.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(d) FOR USE IN *SIERRA* AND *IGLESIAS*.**

e. The use area files, official files, unit files, street files, running files, and clipboard files, permanent retention files, and homicide investigative files kept by Gang Crimes Specialists, including but not limited to training on the different types of documents, notes, or other investigative information kept in each such type of file and the different types of documents, notes, or other investigative information not kept in each such type of file, as well as the storage, retention, duplication, or copying of each such type of file and the movement of such files to other divisions and sections of the Chicago Police Department—such as the Records Division, the Evidence and Recovered Property Section, and the Police Documents Section of the Chicago Police Department—and the timing of such movements in homicide investigations

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALISTS, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(e) FOR USE IN *SIERRA* AND *IGLESIAS*.**

f. Obligations under *Brady v. Maryland*, including but not limited to training related to ensuring that exculpatory information favorable to the accused in a criminal investigation, which would tend to show that the accused was not guilty of a crime or which would tend to undermine the credibility of any prosecution witness, is disclosed to suspects, criminal defendants, their attorneys, and prosecutors

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALIST, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(f) FOR USE IN *SIERRA* AND *IGLESIAS*.**

g. The City's 1986 Special Orders, and any subsequent orders or directives through 1993, related to the street files practice set forth in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE. FOR GANG CRIME SPECIALIST, THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(g) FOR USE IN *SIERRA* AND *IGLESIAS*.**

h. WITHDRAWN.

i. INTENTIONALLY LEFT BLANK

j. INTENTIONALLY LEFT BLANK

k. The use of confidential informants, anonymous callers, or confidential street sources as those terms are used in the applicable police reports in these cases by homicide detectives or gang crimes specialists/officers, including but not limited to any files, lists, databases, or any other Documents to document, track or store information about confidential informants, anonymous callers, or confidential street sources as those terms are used in the applicable police reports in these cases.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(k) FOR USE IN IGLESIAS, BOUTO, RODRIGUEZ.**

l. The use of gangbooks (i.e., albums/compilations of mugshots or other photos, also sometimes referred to as photobooks) and conduct of gangbook identification procedures in homicide investigations. This request includes but is not limited to the written and unwritten practices, procedures, customs, rules, and techniques for creating, selecting, or compiling photographs for inclusion in gangbooks, deciding what gangbooks to show witnesses, performing gangbook

identifications, communication of information about suspects or defendants to witnesses who view gangbooks, any other communication with witnesses who view gangbooks, reports written in connection with gangbooks, documentation of gangbook identification procedures, documentation of the selection of a suspect by a witness during a gangbook identification procedure, documentation of the selection of a filler by a witness during a gangbook identification procedure, documentation of the selection of no person by a witness during a gangbook identification procedure, and the preservation of gangbook photographs selected by a witness.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR THE TOPICS IN 2(l) FOR USE IN IGLESIAS, BOUTO, SIERRA, RODRIGUEZ.**

3. For the period from 1986 through 1998, the policies, practices, and procedures of the Chicago Police Department relating to investigations regarding misconduct, including but not limited to the discipline of Chicago police officers who were found to have engaged in misconduct contrary to City of Chicago policies.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR TOPIC 3.**

4. Other than the policies, practices, and procedures identified in response to Request #3: for the period from 1986 through 1998, any investigations or audits by the City of Chicago to identify, investigate, or prevent any of the following types of misconduct—including but not limited to investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, or any other agency, firm, or organization retained by the City of Chicago—to identify, investigate, prevent, or impose discipline, related to any of the types of misconduct set forth below. This request assumes that the City's response to Request #3 will include the City's policies, practices, and procedures related to civilian complaints and CR investigations, and accordingly this request excludes CR investigations and does not request that the City count up CR investigations related to the categories below. Instead, this request seeks to identify any *other* investigations or audits the City conducted related to the categories above:

a. The use of force, coercion or other prohibited techniques to obtain incriminating statements from witnesses or suspects.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 4(a).**

b. Misconduct in the conduct of, documentation of, and supervision of identification procedures for witnesses such as show-ups, line-ups, photo arrays, clothing line-ups, and single-photo identification procedures. This includes, but is not

limited to misconduct in structuring, performing, or initiating such identification procedures; failing to properly document an identification procedure; failing to properly inventory evidence resulting from an identification procedure; misconduct in the selection and use of fillers; misconduct in the communication of information about suspects or defendants to witnesses participating in identification procedures; and the failure to create and preserve Documentation relating to any of the foregoing subjects.

**THE CITY AGREES TO DESIGNATE A 30(b)(6) WITNESS FOR USE IN JOHNSON, IGLESIAS, BOUTO, SIERRA, GOMEZ, RODRIGUEZ**

c. Fabrication of inculpatory evidence;

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 4(c).**

d. Failure to properly document or place *Brady* evidence in official police department files, or otherwise withholding material, exculpatory information from prosecutors, suspects, criminal defendants and their attorneys.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 4(d).**

e. Failure to comply with the 1986 Special Orders, or any subsequent orders or directives through 1993, related to the street files practice set forth in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 4(e).**

f. Failure to document investigative activities and information learned during a homicide investigation.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 4(f).**

g. WITHDRAWN.

5. For the period from 1986 through 1998, all efforts by the City of Chicago to identify, investigate, or prevent—including through investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, any other agency, firm, or organization retained by the City of Chicago, or

any other federal, state or local law enforcement agency—wrongful acts by Reynaldo Guevara.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 5.**

6. The City's written and unwritten policies, practices, and customs in effect from 1986 through 1998 relating to the method and manner by which supervisors monitor, report, and/or discipline subordinate Chicago police officers for potential violations of departmental rules or state/federal laws.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 6.**

7. WITHRAWN.

8. For the period from 1986 through 1998, the policies, practices, and procedures of the Chicago Police Department regarding evaluations of its police officers, including but not limited to any annual or periodic performance reviews or evaluations, standards for evaluating the work performed by Chicago police officers, how those standards are communicated to Chicago police officers, how the evaluations are used to improve officer performance and/or correct deficient performance.

**FOR DETECTIVES IN ALL CASES REFERENCED IN THE NOTICE THE PARTIES AGREE TO RELY ON REYES/SOLACHE FOR THE TOPICS IN 8.**

9. WITHDRAWN.

10. WITHDRAWN.

11. WITHDRAWN.

12. WITHDRAWN.

13. Any and all changes made between 1986 and 1993 to the written and unwritten policies, General Orders, practices, customs, rules, and techniques identified in Request No. 1(c), and for each such change, how Chicago Police Department detectives were made aware of the changes identified above, including but not limited to how they were informed of the new policies and the timeframe in which all steps were taken to inform the officers of the policy change.

**STILL NEEDED IN BOUTO.**

The person(s) designated pursuant to this Notice should produce, at least seven (7) days prior to the deposition, any and all documents related to the above topics within their possession, custody, or control, or, if the documents have already been produced in this litigation, identify those documents by bates number.

Dated: March 28, 2022

Respectfully Submitted,

By: /s/ Rachel Brady

Jon Loevy
Russell Ainsworth
Anand Swaminathan
Steve Art
Ruth Brown
Danielle Hamilton
Rachel Brady
Sean Starr
Bella Aguilar
LOEVY & LOEVY
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certify that on March 28, 2022, I served the foregoing on all counsel of record via electronic mail.

/s/ Rachel Brady
*One of Plaintiff's Attorneys*